**No. 24-7602**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

Blanton BANKS, II,

*Appellant-Appellant*,

v.

TRANS UNION, LLC, et al.,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Nevada
Case No. 2:21-cv-01580-CDS-EJY
Hon. Judge Cristina D. Silvia

---

## APPELLEE I.Q. DATA INTERNATIONAL INC.'S EXCERPTS OF RECORD

---

Sean P. Flynn (SBN: 15408)
**GORDON REES SCULLY MANSUKHANI**
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101
Telephone: (775) 467-2610
Email: sflynn@grsm.com

*Attorneys for Defendant-Appellee
I.Q. Data International, Inc.*

## INDEX OF EXCERPTS OF RECORD

| Document | File Date | USDC Dkt. No. | ER Page No. |
|---|---|---|---|
| Judgment in Favor of IQ Data International and Minute Order | July 8, 2024 | 227 and 226 | IQDataER-3 – 5 |
| Complaint | November 4, 2021 | 8 | IQDataER-6 – 19 |
| First Amended Complaint | December 29, 2021 | 12 | IQDataER-20 – 35 |
| Scheduling Order | April 14, 2022 | 48 | IQDataER-36 – 37 |
| Notice Regarding Intention to Dismiss | May 25, 2022 | 57 | IQDataER-38 |
| Proof of Service | June 27, 2023 | 152-2 | IQDataER-39 |
| IQ Data International's Motion to Dismiss Pursuant to FRCP 41(b) and 12(b)(6) | August 8, 2023 | 163 | IQDataER-40 – 49 |
| Plaintiff's Opposition to Defendant's FRCP 12(b)(6) Motion to Dismiss | August 22, 2023 | 167 | IQDataER-50 - 75 |
| Reply In Support Of Defendant IQ Data International, Inc.'s Motion to Dismiss Pursuant to FRCP 41(b) and 12(b)(6) | August 29, 2023 | 173 | IQDataER-76 – 83 |
| Omnibus Order Resolving Motions | February 1, 2024 | 194 | IQDataER-84 – 104 |
| Status Report Regarding Dismissal | March 25, 2024 | 202 | IQDataER-105 – 106 |
| Plaintiff's Response to Defendant's Status Report Request | April 2, 2024 | 204 | IQDataER-107 – 112 |
| Notice of Appeal | December 10, 2024 | 233 | IQDataER-113 - 115 |
| District Court Docket Sheet | n/a | n/a | IQDataER-116 -145 |

AO450 (NVD Rev. 2/18)  Judgment in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Blanton Banks, II

                           Plaintiff,

      v.

I.Q. Data International Inc

                     Defendant.

**JUDGMENT IN A CIVIL CASE**

Case Number: 2:21-cv-01580-CDS-EJY

\_\_\_   **Jury Verdict.**  This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

\_\_\_   **Decision by Court.**  This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

X   **Decision by Court.**  This action came for consideration before the Court. The issues have been considered and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED**

JUDGMENT in favor of I.Q. Data International Inc. and against Plaintiff Blanton Banks, II.

7/8/2024
—————————————
Date

    DEBRA K. KEMPI
—————————————
Clerk

    /s/ C. Harrington
—————————————
Deputy Clerk

**Sam Baker**

| | |
|---|---|
| **From:** | cmecf@nvd.uscourts.gov |
| **Sent:** | Monday, July 8, 2024 3:26 PM |
| **To:** | cmecfhelpdesk@nvd.uscourts.gov |
| **Subject:** | Activity in Case 2:21-cv-01580-CDS-EJY Banks v. Trans Union LLC et al Minute Order |

---

**External Email: STOP! LOOK! THINK! before you engage.**
This message came from outside GRSM.

---

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### United States District Court

### District of Nevada

### Notice of Electronic Filing

The following transaction was entered on 7/8/2024 at 3:26 PM PDT and filed on 7/8/2024
**Case Name:** Banks v. Trans Union LLC et al
**Case Number:** 2:21-cv-01580-CDS-EJY
**Filer:**
**Document Number:** 226(No document attached)

**Docket Text:**
MINUTE ORDER IN CHAMBERS of the Honorable Judge Cristina D. Silva on 7/8/2024.

On February 1, 2024, the court granted defendant I.Q. Data's motion to dismiss (ECF No. No. [163]) and dismissed the claims against I.Q. Data without prejudice and with leave to amend. ECF No. [194]. Plaintiff Blanton Banks, II had until February 22, 2024 to file an amended complaint, but did not. ECF No. [202]. Consequently, I dismiss I.Q. Data from this action and excuse its appearance at the July 18, 2024 settlement conference. The Clerk of Court is kindly instructed enter judgment accordingly and to terminate I.Q. Data.

(no image attached)(Copies have been distributed pursuant to the NEF - JLB)

**2:21-cv-01580-CDS-EJY Notice has been electronically mailed to:**

Kurt R. Bonds (Terminated)     nvefile@hallevans.com, bondsk@hallevans.com, knechta@hallevans.com, nagyo@hallevans.com, tugglet@hallevans.com

Jennifer L Braster     jbraster@naylorandbrasterlaw.com, hmennear@nblawnv.com, jnaylor@naylorandbrasterlaw.com

Sarai Leora Brown    sbrown@skanemills.com, agonzalez@qslwm.com, brigo@skanemills.com, espaur@skanemills.com, lgrad@skanemills.com, lingleberger@skanewilcox.com, pporooshani@skanemills.com

Armand Fried    armandfried@msn.com, legal@aargon.com

Elizabeth A Skane    eskane@skanemills.com, sbrown@skanemills.com, ylutes@skanemills.com

Sean Flynn    sflynn@grsm.com, lhandy@grsm.com, savants@grsm.com, sbaker@grsm.com

Mary E Bacon    mbacon@spencerfane.com, JHeiserman@spencerfane.com, amiller@spencerfane.com, mary-bacon-8083@ecf.pacerpro.com

Joel Edward Tasca    tasca@ballardspahr.com, LitDocket_West@ballardspahr.com, carltonm@ballardspahr.com, lvdocket@ballardspahr.com

Jennifer R. Brooks    jrbrooks@seyfarth.com, 3951805420@filings.docketbird.com, equifaxdocketing@seyfarth.com, s-equifaxdmins@seyfarth.com

Gia Marina    gmarina@clarkhill.com, julmer@clarkhill.com, ndimattei@clarkhill.com, tbain@clarkhill.com

Paige Christie    pchristie@jonesday.com, CourtAlert@jonesday.com, ECFIrvineNotifications@jonesday.com, docketpacificwest@jonesday.com

Jennifer Marie Wade    jwade@qslwm.com, agonzalez@qslwm.com

Blanton Banks, II    bbanks24@protonmail.com

**2:21-cv-01580-CDS-EJY Notice has been delivered by other means to:**

Benjamin Bradwell Gordon
Klinedinst PC
1180 N. Town Center Drive, #100, Las Vegas, Nevada 8914
100
89144
Las Vegas, NV 89144

Blanton Banks II
10130 Quilt Tree St
Las Vegas, NV, 89183
Phone: (313) 405-8321
E-mail: blantonb22@gmail.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LAS VEGAS DIVISION

**PRO SE**

**BLANTON BANKS, II**

Plaintiff,

v.

**TRANS UNION LLC,
EQUIFAX INFORMATION SERVICES
LLC, EXPERIAN INFORMATION
SOLUTIONS INC, CAPITAL ONE BANK
USA N, FIRST PREMIER BANK, US AUTO
CREDIT PURCHASE, I.Q. DATA
INTERNATIONAL INC, AD ASTRA
RECOVERY SERVICES INC,WELLS
FARGO BANK, KAPS & CO USA LLC,
TBOM/TOTAL CARD, I.C. SYSTEM INC,
CLIENT SERIVCES INC, ASSET RECOVERY
SOLUTIONS LLC, PORTFOLIO RECOVERY
ASSOCIATES, AARGON AGENCY INC,**

Defendants.

Case No.

2:21-cv-01580-APG-DJA

**COMPLAINT**

Fair Credit Reporting Act (15 U.S.C. §1681 et seq.)
Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.)
Truth In Lending Act (15 U.S.C. §1601 et seq.)
The Privacy Act (5 U.S.C. § 552a et seq.)
Violation of First Amendment (42 U.S.C. § 1983)
Violation of Fifth Amendment (42 U.S.C. § 1983)
Violation of Fourteenth Amendment (42 U.S.C. § 1983)
Freedom Of Information Act (5 USC § 552 et seq.)

**DEMAND FOR JURY TRIAL**

Plaintiff alleges that at all times material:

1.

This is a civil action brought pursuant to 42 U.S.C. § 1983, 15 U.S.C. § 1601 et seq., 15 U.S.C. § 1681 et seq., 15 U.S.C. § 1692 et seq., 5 U.S.C. § 552 et seq., and 5 USC § 552a et seq., against Defendants herein named and unnamed in their individual and official capacities for violations of Plaintiff's First, Fifth and Fourteenth Amendment Rights,

Page | 1- COMPLAINT

including but not limited to, the violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collections Practices Act ("FDCPA"), the Truth In Lending Act ("TILA"), the Freedom Of Information Act ("FOIA") and the Privacy Act and that said Defendants conspired to deprive Plaintiff of said rights, privileges and immunities. The Plaintiff invokes this Court's pendant jurisdiction over Nevada Revised Statutes, Administrative Regulations, 15 1601 et seq., 15 USC 1681 et seq., 15 USC 1692 et seq., 5 USC 552a et seq. and 42 USC 1983 that this court has authority to dispose of.

2.

Plaintiff Blanton Banks, II, ("plaintiff") is a natural person residing in the State of Nevada, as defined by the Fair Credit Reporting Act ("FCRA"), 15 USC § 1681a(c).

3.

Defendant I, Trans Union, LLC, ("Trans Union" or "Defendant I") residing at P.O. Box 2000, Chester, PA, 19016, under color of law, used or abused power that is possessed by virtue of state law and made possible only because he is clothed with authority of state law.

4.

Defendant II, Experian Information Solutions, INC, ("Experian" or "Defendant II") residing at P.O. Box 4500, Allen, TX, 75013, under color of law, acted the same as Defendant I.

5.

Defendant III, Equifax Information Services, LLC, ("Equifax" or "Defendant III") residing at P.O. Box 740256, Atlanta, GA, 30374, under color of law, acted the same as Defendants I and II.

6.

Defendant IV, Capital One Bank USA N, ("Capital One" or "Defendant IV") residing at 1680 Capital One Drive, McLean, VA, 22102, under color of law, acted the same as the above Defendants.

7.

Defendant V, Client Services, INC, ("Client Services" or "Defendant V") residing at 3451 Harry S. Truman Blvd, St. Charles, MO, 63301, under color of law, acted the same as the above Defendants.

8.

Defendant VI, First Premier Bank, ("First Premier" or "Defendant VI") residing at 601 S. Minnesota Ave., Sioux Falls, SD, 57104, under color of law, acted the same as the above Defendants.

9.

Defendant VII, Asset Recovery Solutions, LLC, ("Asset Recovery Solutions" or "Defendant VII") residing at 2200 E. Devon Ave., Suite 200, Des Plaines, IL, 60018, under color of law, acted the same as the above Defendants.

10.

Defendant VIII, Ad Astra Recovery Services, INC, ("Ad Astra" or "Defendant VIII") residing at 8918 W. 21ST Street N., Suite 200 PMB 303, Wichita, KS, 67205, under color of law, acted the same as the above Defendants.

Page | 2- COMPLAINT

11.

Defendant IX, Wells Fargo Bank, ("Wells Fargo" or "Defendant IX") residing at P.O. Box 14544, Des Moines, IA, 50306, under color of law, acted the same as the above Defendants.

12.

Defendant X, U.S. Auto Credit Purchasing Center, LLC, ("U.S. Auto Credit" or "Defendant X") residing at 8375 Dix Ellis Trl., Suite 3, Jacksonville, FL, 32256, under color of law, acted the same as the above Defendants.

13.

Defendant XI, I.Q. Data International, INC, ("I.Q. Data International" or "Defendant XI") residing at 21222 30TH Dr. SE, Suite 120, Bothell, WA, 98021, under color of law, acted the same as the above Defendants.

14.

Defendant XII, TBOM/Total Card, ("TBOM" or "Defendant XII") residing at P.O. Box 84930, Sioux Falls, SD, 57118, under color of law, acted the same as the above Defendants.

15.

Defendant XIII, KAPS & CO USA, LLC, ("KAPS & Co" or "Defendant XIII") residing at 2210 Plaza Dr., Suite 150, Rocklin, CA, 95765, under color of law, acted the same as the above Defendants.

16.

Defendant XIV, I.C. System, INC, ("I.C. System" or "Defendant XIV") residing at P.O. Box 64378, Saint Paul, MN, 55164, under color of law, acted the same as the above Defendants.

17.

Defendant XV, Aargon Agency, INC, ("Aargon Agency" or "Defendant XV") residing at P.O. Box 12914, Norfolk, VA, 23541, under color of law, acted the same as the above Defendants.

18.

Defendant XVI, Portfolio Recovery Associates, LLC, ("Portfolio Recovery Associates" or "Defendant XVI") residing at P.O. Box 12914, Norfolk, VA, 23541, under color of law, acted the same as the above Defendants.

19.

On or about July 8, 2020, plaintiff submitted a notarized debt validation dispute letter along with verifiable proof of identity and residency via certified mail to Trans Union (see Exhibit 1). After more than 30 days passing and Defendant I not responding to the plaintiff's debt validation dispute letter, plaintiff called Trans Union on or about August 12, 2020 to let them know that they acquiesced in the matter and must remove the items in the July 8, 2020 debt validation dispute letter from the plaintiff's credit report.

20.

During the phone call made by the plaintiff to Trans Union on or about August 12, 2020, plaintiff was informed that the phone call was being recorded. Plaintiff spoke to a Trans Union representative who stated that Defendant I had intended to respond to plaintiff's debt validation dispute letter, however, declined to do so without stating a reason for

Page | 3- COMPLAINT

their refusal. Plaintiff informed the Trans Union representative that because they have not responded as required by law that all accounts mentioned in the debt validation dispute letter must be removed from the credit report.

21.

On or about August 25, 2020, plaintiff submitted a second debt validation dispute letter to Trans Union with the invalidated items listed. Plaintiff indicated to Trans Union that they did not respond or provide any proof bearing signature to any of the items being reported on the plaintiff's credit report (see Exhibit 2).

22.

On or about September 2, 2020, Trans Union sent plaintiff a copy of his Trans Union credit report. The report still contained items listed in the July 8, 2020 debt validation dispute letter that were not validated (see Exhibit 3).

23.

On or about September 7, 2020 Trans Union sent the plaintiff a dispute status letter alleging that Trans Union has previously conducted an investigation of all the items in regards to the July 8, 2020 debt validation dispute letter and that all data furnishers listed in the July 8, 2020 debt validation dispute letter verified all the information. However, Trans Union did not do an actual or reasonable investigation, nor did they provide their Method of Validation or any contracts bearing the plaintiff's signature. Trans Union also states in their response that they are not required to investigate the same items again and informed plaintiff to contact the data furnishers himself (see Exhibit 4).

24.

On or about September 25, 2020, plaintiff again sent Trans Union a third debt validation dispute letter giving Trans Union an opportunity to cure on the July 8, 2020 and August 25, 2020 debt validation dispute letters (see Exhibit 5).

25.

Trans Union responded with another dispute status letter on or about October 5, 2020, once again informing the plaintiff that Trans Union does not have to reinvestigate the same items and instructing plaintiff to contact the data furnishers himself (see Exhibit 6).

26.

On or about November 19, 2020, plaintiff called Trans Union for a second time to give Trans Union an opportunity to cure their default and to request a copy of the August 12, 2020 recorded phone call pursuant to the Freedom Of Information Act, 5 USC § 552 et seq.

27.

Plaintiff spoke to Trans Union agent, Jesus, who refused to provide plaintiff with a copy of the audio recording as plaintiff requested pursuant to the Freedom Of Information Act, 5 U.S.C. § 552 et seq., and informed plaintiff that he would need to retain a lawyer in order to access a copy of the recorded phone call's audio.

28.

On or about January 4, 2021, plaintiff received a response letter from Aargon Agency, a party to the original disputed accounts in the July 8, 2020 debt validation dispute letter that plaintiff sent to Trans Union. Aargon Agency's response letter to plaintiff's debt validation dispute letter sent on or about December 12, 2020 informed the plaintiff that he has no account with their company (see Exhibit 7).

Page | 4- COMPLAINT

29.

On the same day, plaintiff called Trans Union again for a third time and spoke to the Trans Union agent, Solomon. Both Solomon and plaintiff agreed to the phone call being recorded. Plaintiff provided the Trans Union agent all self identifying information to locate his credit file and informed the Trans Union agent, Solomon, that he is in receipt of a response letter from Aargon Agency stating that no account with their company exists. Plaintiff continued to inform the Trans Union agent that he is aware that because of the response received by Aargon Agency stating they do not have an account for the plaintiff, that Trans Union, in fact, did not conduct an actual or reasonable investigation as Trans Union has stated in their response letters of September 2, 2020, September 7, 2020 and October 5, 2020.

30.

Trans Union agent, Solomon, informed plaintiff that because of the results of their investigation of a previous debt validation letter disputing the alleged accounts, Trans Union willfully did not respond to a dispute they received on October 2, 2020. However, Trans Union did receive the original debt validation dispute letter on or about July 8, 2020 and Aargon Agency was an alleged account listed in the dispute for validation. After plaintiff's first debt validation was not responded to by Trans Union and plaintiff's second and third request to have these items validated by Trans Union, Defendant I continued to state in their responses that Aargon Agency along with all other defendants, are valid reporting accounts. The Trans Union agent, Solomon, continued to inform the plaintiff that Trans Union cannot actually validate accounts (see Exhibit 8: audio recording).

31.

On or about January 17, 2021, plaintiff submitted a complaint to the Consumer Financial Protection Bureau against Trans Union. On or about February 18, 2021 Trans Union responded without addressing all of the plaintiff's issues in the plaintiff's complaint and the Consumer Financial Protection Bureau closed the complaint (see Exhibit 9). Plaintiff felt as if a remedy would not be given so he added Trans Union to this lawsuit.

32.

On or about July 8, 2020, plaintiff submitted a notarized debt validation dispute letter along with verifiable proof of identity and residency via certified mail to Experian (see Exhibit 10). After not receiving a response in regards to the plaintiff's debt validation dispute letter within 30 days, plaintiff sent a second debt validation dispute letter to Experian on or about August 25, 2020 giving Experian an opportunity to cure (see Exhibit 11).

33.

Almost 60 days later from the original debt validation dispute letter, plaintiff received a copy of his credit report from Experian on or about September 4, 2020 (see Exhibit 12). Experian did not conduct an actual or reasonable investigation of the disputed alleged accounts listed in the July 8, 2020 debt validation letter and ignored the plaintiff's dispute. Experian instructed the plaintiff to review the copy of his credit report sent to him and to contact Experian afterwards if plaintiff disagrees with any items listed on his credit report (see Exhibit 12).

34.

On or about September 15, 2020, plaintiff received an auto response post card in the mail from Experian stating that Experian can determine on their own whether disputed information should be changed or deleted without having to contact the furnisher or the vendor and explaining Experian's role in the dispute process (see Exhibit 13). On or about September 25, 2020, plaintiff sent Experian a formal third and final debt validation dispute letter disputing the alleged accounts pertaining to Defendants IV, VI, X, XI, XII, XIII, and XV, requesting Experian's Method of Validation and who specifically verified the alleged accounts (see Exhibit 14).

Page | 5- COMPLAINT

35.

On or about October 10, 2020, plaintiff received another auto response post card in the mail from Experian stating that Experian can determine on their own whether disputed information should be changed or deleted without having to contact the furnisher or the vendor and explaining Experian's role in the dispute process (see Exhibit 15). On or about October 13, 2020, Experian sent plaintiff a copy of his credit report pertaining to plaintiff's third written request for a reinvestigation. For a third time, Experian did not conduct an actual or reasonable investigation, nor did Experian provide their Method of Validation or who they spoke to directly in regards to the plaintiff's dispute of the alleged accounts pertaining to Defendants IV, VI, X, XI, XII, XIII and XV. The Experian dispute results response letter instructed the plaintiff to contact the alleged grantors himself (see Exhibit 16). Plaintiff felt that he would not get a remedy so he added Experian to this lawsuit.

36.

On or about July 8, 2020, plaintiff submitted a notarized debt validation dispute letter along with verifiable proof of identity and residency via certified mail to Equifax (see Exhibit 17).

37.

On or about July 14, 2020, plaintiff received a dispute results response letter from Equifax acknowledging that plaintiff has a mixed credit file (see Exhibit 18).

38.

On or about July 30, 2020, Equifax sent plaintiff an additional dispute results response letter and a copy of the plaintiff's credit report. The copy of the updated credit report from the alleged investigation that Equifax alleges was conducted still contained the disputed alleged accounts from the original July 8, 2020 debt validation dispute letter (see Exhibit 19). Equifax did not conduct an actual or reasonable investigation of the plaintiff's dispute.

39.

On or about August 25, 2020, plaintiff submitted a second debt validation dispute letter to Equifax with the invalidated items listed. The second debt validation dispute letter sent by the plaintiff informs Equifax that they did not comply to his dispute and requests the method of validation used by Equifax and the names of each individual they spoke to (see Exhibit 20).

40.

On or about October 8, 2020, plaintiff received a copy of his September 22, 2020 credit report from Equifax. The copy of the plaintiff's credit report still had the disputed alleged accounts reporting. Equifax for a third time did not conduct an actual or reasonable investigation nor did Equifax provide the plaintiff their method of validation, nor did Equifax provide the plaintiff with details of who they spoke to with firsthand knowledge of the disputed alleged accounts (see Exhibit 21).

41.

Because Defendants I, II and III continued to acquiesce in the debt validation dispute matter pertaining to the plaintiff, this forced the plaintiff to contact Defendants IV through XV himself.

Page | 6- COMPLAINT

42.

On or about December 12, 2020, plaintiff sent a debt validation dispute letter via registered mail to Capital One in regards to an alleged account that multiple entities are claiming a debt is owed (see Exhibit 22).

43.

On or about December 16, 2020, Capital One sent a response letter with a case number to the plaintiff requesting that the plaintiff sends his personal identifying information in order for Capital One to take action on his debt validation dispute letter (see Exhibit 23). The plaintiff sent Capital One this information in the debt validation dispute letter sent to Capital One on or about December 12, 2020 (see Exhibit 22).

44.

Because Capital One failed to comply with the debt validation dispute letter sent to them by the plaintiff, he sent a formal notice to Capital One giving them an opportunity to cure on or about January 4, 2021 via certified mail (see Exhibit 24).

45.

On or about January 14, 2021, Capital One sent the plaintiff a response letter with a different case number thanking him for contacting Capital One about the alleged account. Capital One did not provide any contracts or verifiable documentation stating that a valid claim of debt exists as the plaintiff has requested several times. Instead, Capital One placed a resolution of dispute disagreement code on the plaintiff's credit file to all of the major credit reporting agencies (see Exhibit 25). Because Capital One refused to offer the plaintiff an equitable remedy, he sent two complaints to the Consumer Financial Protection Bureau ("CFPB") on or about March 12, 2021. Plaintiff's complaint to the CFPB included Defendants, Capital One and Client Services, a debt collection agency, who is the second entity claiming to have an interest in this alleged account (see Exhibit 26).

46.

On or about March 15, 2021, Capital One responded to the plaintiff's CFPB complaint requesting more time to respond. On or about March 16, 2021, Client Services responded to plaintiff's CFPB complaint admitting that Client Services willfully did not comply with plaintiff's debt validation dispute letter because Client Services did not actually own the debt but were collecting on the alleged debt on behalf of Capital One (see Exhibit 27). Client Services never provided a copy of IRS Form-2848 to plaintiff as requested to prove their power of attorney over the alleged debt. Client Services also states that they are not a debt collection agency, but their written collection notice states otherwise (see Exhibit 28).

47.

On or about March 18, 2021, plaintiff was first notified by the CFPB that Capital One responded to his complaint with an attached letter. Pursuant to this letter, Capital One does not have any contract bearing plaintiff's signature and cannot provide contractual proof that a valid claim of debt exists pertaining to the plaintiff (see Exhibit 29).

48.

Capital One then mailed an additional response to plaintiff admitting that on or about March 16, 2021, this alleged debt that could not be validated by Capital One has been sold by Capital One to Defendant XVI, Portfolio Recovery Associates, a debt collection agency, without any contractual proof that a real debt exists pertaining to the plaintiff (see Exhibit 29).

Page | 7- COMPLAINT

49.

On or about March 30, 2021, Portfolio Recovery Associates sent plaintiff a debt collection notice pertaining to the alleged debt that Capital One could not originally provide any contractual proof of (see Exhibit 30). Then, on or about April 9, 2021, Portfolio Recovery Associates sent plaintiff a second debt collection notice attempting to create a contract with plaintiff by offering a flexible payment arrangement for this alleged debt that has no contract between the plaintiff and defendants Capital One, Client Services or Portfolio Recovery Associates (see Exhibit 31).

50.

On or about April 28, 2021, plaintiff sent Portfolio Recovery Associates a copy of their debt collection notice stamped with the words 'No Contract' along with a debt validation dispute notice (see Exhibit 32) and to date has not received a response pertaining to this alleged debt that has not and cannot be validated with any contractual proof bearing plaintiff's signature.

51.

Because Capital One, Client Services and Portfolio Recovery Associates have not provided any contract bearing plaintiff's signature, yet continued to willfully conspire and commit fraud on the plaintiff's name, plaintiff included them in this lawsuit.

52.

On or about December 12, 2020, plaintiff sent U.S. Auto Credit via registered mail a debt validation dispute letter pertaining to the alleged debt the plaintiff disputed originally in his July 8, 2020 debt validation dispute letter sent to Trans Union, Experian and Equifax because plaintiff has no contract or idea who U.S. Auto Credit is (see Exhibit 33).

53.

On or about December 30, 2020, U.S. Auto Credit sent plaintiff a five (5) page response with what they believe is enough information to report this alleged debt on the plaintiff's credit report. Their response did not bear any contractual proof of plaintiff's signature and contains false and misleading information (see Exhibit 34).

54.

Because U.S. Auto Credit failed to comply with the plaintiff's debt validation dispute letter, on or about January 5, 2021, plaintiff sent a formal notice to U.S. Auto Credit giving them an opportunity to cure on their acquiescence (see Exhibit 35).

55.

On or about January 22, 2021, U.S. Auto Credit sent plaintiff a response letter of refusal to investigate and declared plaintiff's dispute to be frivolous and irrelevant. U.S. Auto Credit continued in their response refusing to properly investigate or provide the proper documentation required by law to state that a valid claim of debt exists and re-sent copies of the same documents that do not prove any contract exists in regard to this alleged debt (see Exhibit 36). Plaintiff does not have any knowledge of U.S. Auto Credit nor any knowledge of the other entities in the document supposedly having an alleged security interest in the matter. In addition to this, U.S. Auto Credit willfully and negligently refused to comply because they believed that a credit repair organization was assisting the plaintiff (see Exhibit 36). Even if this were true, this is the plaintiff's lawful right to seek assistance in this matter as granted by the U.S. Congress whom backs the Federal Reserve Banking system.

Page | 8- COMPLAINT

56.

On or about February 6, 2021, plaintiff sent the Federal Trade Commission ("FTC") and the CFPB, via certified mail, his complaint regarding the willful negligence, willful non-compliance and negligent enablement of identity fraud on his name committed by U.S Auto Credit (see Exhibit 37). On or about February 12, 2021, the FTC sent plaintiff a response in regards to his complaint and on or about February 24, 2021 the CFPB sent plaintiff a response in regards to this same complaint (see Exhibit 38). To this present day, U.S. Auto Credit still has not responded to the complaint sent to the CFPB by the FTC or the plaintiff and continues to report this alleged account on plaintiff's credit report with no contract bearing plaintiff's signature to prove a valid debt exists. Plaintiff finally gave up and added U.S. Auto Credit to this lawsuit.

57.

On or about December 12, 2020, plaintiff sent a debt validation dispute letter to First Premier because after reviewing his credit report, plaintiff noticed First Premier is reporting an alleged debt, which plaintiff he has no knowledge of (see Exhibit 39).

58.

On or about January 4, 2021, First Premier sent plaintiff a letter stating that his request for validation did not satisfy the minimum requirements for a valid request, however, First Premier proceeded to explain why they believe the alleged debt is valid along with the last four (4) digits of an alleged card account (see Exhibit 40).

59.

On or about January 23, 2021, plaintiff sent a formal notice to the attention of First Premier's Chief Financial Officer requesting, once again, debt validation of the alleged account being reported on his credit report by First Premier (see Exhibit 41). Plaintiff's offer gave First Premier an opportunity to cure their acquiescence. Plaintiff also included a copy of a debt collection notice from a different entity, Asset Recovery Solutions, claiming they have an alleged interest in this matter (see Exhibit 41).

60.

On or about February 3, 2021, First Premier sent plaintiff a letter with an alleged card account ending in four (4) digits, but provided no other alleged account contract. First Premier's letter continues to state that they are unable to determine what the plaintiff is disputing and avoids validating plaintiff's dispute under threat, duress and coercion by trying to get plaintiff to create an Affidavit of Unauthorized Use contract and willfully refused to validate unless plaintiff signs said document (see Exhibit 42). In addition to this, First Premier sent plaintiff another letter on or about February 1, 2021 providing what they believe to be validation of this alleged debt (see Exhibit 43).

61.

Upon plaintiff reviewing the information, plaintiff noticed that First Premier sent what looks like an itemized bill but did not send any signed contract bearing plaintiff's signature. First Premier also sent plaintiff documents showing that they were invading the plaintiff's privacy by getting his credit report without his permission (see Exhibit 43).

62.

On or about February 12, 2021 First Premier sent the plaintiff another letter claiming to have completed their investigation based on what they believe is enough to state a valid claim. By this response, First Premier has once again

Page | 9- COMPLAINT

for a fourth time acquiesced in the matter by failing to comply to the debt validation dispute letter and the final notice to cure letter sent to them by the plaintiff (see Exhibit 44).

63.

Because First Premier refused to obey consumer credit law and remove the item from the plaintiff's credit report, the plaintiff filed a complaint with the CFPB on or about March 3, 2021 in regards to First Premier and Asset Recovery Solutions conspiring to willfully commit fraud on his name without having any contractual proof that the alleged debt is actually valid or able to be reported on his credit report (see Exhibit 45). On this same day, the CFPB responded that the complaint the plaintiff sent to them pertaining to First Premier would be forwarded to the Federal Reserve Board because they are better able to help with his issue. The CFPB also entered the plaintiff's complaint into the Consumer Sentinel Network, a database operated by the FTC that is used to identify questionable business practices (see Exhibit 46).

64.

On or about March 8, 2021, the plaintiff received notice from the Federal Reserve Board that his complaint has been received and will be responded to by the Federal Reserve Bank of Minneapolis within 60 days (see Exhibit 47).

65.

On or about March 10, 2021 plaintiff received a letter in the mail from First Premier informing the plaintiff that they validated the alleged debt, however, once again, for a fifth time, provided no evidence to the plaintiff of any kind of validation of an actual contract existing. First Premier continued to state that they are not required to provide any proof that a debt exists with their entity (see Exhibit 48). Pursuant to the FCRA, this is false.

66.

On or about March 11, 2021, plaintiff received a notice from the CFPB in regards to Asset Recovery Solutions stating that they are no longer serving this alleged account (see Exhibit 49). Asset Recovery Solutions did not respond to the plaintiff in regards to his debt validation dispute letter sent on or about January 23, 2021 (see Exhibit 41) but forwarded his dispute to their client whom the plaintiff is not aware of. Asset Recovery Solutions could not provide any contract belonging to the plaintiff either. Plaintiff finally gave up and added First Premier and Asset Recovery Solutions to this lawsuit.

67.

On or about December 12, 2020, plaintiff sent I.Q. Data International a debt validation dispute letter via U.S. registered mail pertaining to an alleged account with I.Q. Data International reporting on his credit report (see Exhibit 50). On or about December 18, 2020 I.Q. Data International refused to accept plaintiff's mailed debt validation dispute letter and returned it to him at or around 3:17 PM (see Exhibit 51).

68.

On or about January 29, 2021 and January 30, 2021, I.Q. Data International sent the plaintiff debt collection notices after refusing to accept his debt validation dispute letter sent to them via registered mail (see Exhibit 52). Plaintiff sent a formal notice to I.Q. Data International to the attention of their Treasurer on or about February 5, 2021 to give I.Q. Data International an opportunity to cure their default (see Exhibit 53). I.Q. Data International received plaintiff's formal notice on or about February 11, 2021 at or around 11:17 AM (see Exhibit 54). Because I.Q. Data International refused plaintiff's debt validation dispute letter on or about December 12, 2020 and still has not responded to date to plaintiff's formal notice giving them an opportunity to cure, plaintiff gave up and has added I.Q. Data International to this lawsuit.

Page | 10- COMPLAINT

69.

On or about December 12, 2020, plaintiff sent Ad Astra a debt validation dispute letter via U.S. registered mail pertaining to an alleged account with Ad Astra that is reporting on his credit report (see Exhibit 55).

70.

On or about December 24, 2020, Ad Astra sent plaintiff a debt collection notice claiming to be in charge of this alleged debt sent to Ad Astra by a third-party, however, failed to comply to the plaintiff's debt validation dispute letter in its entirety (see Exhibit 56).

71.

Because plaintiff has no signed contract with Ad Astra and Ad Astra failed to comply with the original debt validation letter, on or about January 4, 2021, plaintiff sent Ad Astra a formal notice giving them an opportunity to cure (see Exhibit 57). Ad Astra received the plaintiff's formal notice on or about January 8, 2021 at or around 12:36 PM (see Exhibit 58).

72.

More than two hundred and twenty-six (226) days has passed and plaintiff still has not received a response from Ad Astra to date. Since Ad Astra has acquiesced in the matter and is still reporting this alleged debt on the plaintiff's credit report, plaintiff has added Ad Astra to this lawsuit.

73.

On or about December 12, 2020, plaintiff sent Wells Fargo a debt validation dispute letter U.S. registered mail pertaining to an alleged debt reporting on his credit report asking Wells Fargo to prove they actually have a debt on him (see Exhibit 59).

74.

On or about January 6, 2021, Wells Fargo sent the plaintiff what they feel is validation of an alleged account belonging to him (see Exhibit 60). Wells Fargo acquiesced in the matter pursuant to the debt validation dispute letter sent to them by the plaintiff.

75.

On or about February 3, 2021, plaintiff sent a formal notice to Wells Fargo giving them an opportunity to cure their acquiescence (see Exhibit 61).

76.

On or about February 18, 2021, Wells Fargo sent the plaintiff a response to his formal notice. Wells Fargo, once again, acquiesced in the matter and did not disclose all of the material facts to the plaintiff (see Exhibit 62).

Page | 11- COMPLAINT

77.

On or about February 23, 2021, Wells Fargo sent the plaintiff another notice pertaining to his alleged debt (see Exhibit 63). Wells Fargo failed to explain to the plaintiff how the money he provided and used to open a secured credit card has hurt Wells Fargo in any way. Plaintiff argues that he is the original creditor in the matter and therefore does not owe any debts on his own money. Because Wells Fargo continues to violate the Truth In Lending Act, plaintiff has added Wells Fargo to this lawsuit.

78.

On or about December 12, 2020, plaintiff sent a debt validation dispute letter via U.S. registered mail to the address being reported on his credit report by TBOM pertaining to an alleged account (see Exhibit 64). On or about December 24, 2020, the mailed letter was returned to the plaintiff as being undeliverable to the address being reported (see Exhibit 65). This is a violation of inaccurate information being reported on a consumer's credit report. The plaintiff notified the major credit reporting agencies, neither Trans Union, Experian or Equifax removed the alleged account. This forced the plaintiff to do more research in finding a deliverable address belonging to TBOM.

79.

On or about February 5, 2021, plaintiff located a deliverable address for TBOM and sent a formal notice to the attention of the Chief Financial Officer at TBOM. The formal notice contained a copy of the original debt validation letter, a copy of the undeliverable mailed envelope, a copy of the TBOM Foreign Withdrawal for doing business in the State of Nevada where plaintiff resides and gave TBOM an opportunity to cure (see Exhibit 66).

80.

On or about February 12, 2021, TBOM received the plaintiff's formal notice and additional materials (see Exhibit 67). It has been more than one hundred and ninety (190) days and TBOM to date still has not responded, but are still reporting this alleged debt on the plaintiff's credit report. TBOM is willfully acquiescing in the matter and plaintiff is not receiving any response, so plaintiff has given up and added TBOM to this lawsuit.

81.

On or about December 12, 2020, plaintiff sent KAPS & Co. a debt validation dispute letter via U.S. registered mail pertaining to an alleged account on his credit report (see Exhibit 68). On or about December 31, 2020, plaintiff was notified by the U.S.P.S. that delivery was attempted and that an authorized recipient was not available to accept the mailed debt validation dispute letter (see Exhibit 69). Plaintiff scheduled a re-delivery and the debt validation dispute letter was delivered on or about January 12, 2021 to KAPS & Co (see Exhibit 69). Almost one hundred and fifty-five (155) days passed without the plaintiff receiving a response from KAPS & Co. after they had received his debt validation dispute on or about January 12, 2021.

82

Plaintiff noticed that this duplicate alleged account is being reported on his credit report fraudulently by KAPS & Co. and TBOM and made the major credit reporting agencies Trans Union, Experian and Equifax all aware of this. However, it is still reporting on his credit report to date.

Page | 12- COMPLAINT

83.

On or about April 21, 2021, KAPS & Co sent the plaintiff a debt collection notice on company letterhead (see Exhibit 70). KAPS & Co. has acquiesced in the entire matter and after almost one hundred and fifty-five (155) days, they have not provided the plaintiff any validating proof of a signed contract between the plaintiff and KAPS & Co., nor TBOM, nor the alleged issuer Mid America Bank and Trust. Plaintiff is convinced that KAPS & Co. is willfully being negligent, non-compliant and engaging in the enablement of identity fraud on his name. Since the plaintiff is willfully and negligently being wronged in this entire matter, he has added KAPS & Co. to this lawsuit.

84.

On or about December 12, 2020, plaintiff sent I.C. System a debt validation dispute letter via U.S. registered mail pertaining to an alleged debt reporting on his credit report (see Exhibit 71). Because more than 30 days passed without the plaintiff receiving any response from I. C. System, a debt collection agency, the plaintiff tracked the mailed letter he sent. The mailed debt validation dispute letter was delivered to I.C. System on December 21, 2020 at or around 6:52 AM (see Exhibit 72).

85.

Because the plaintiff had received no response from I.C. System, he sent I.C. system a formal notice on or about February 3, 2021 with a copy of his original debt validation dispute letter from on or about December 12, 2020 to give I.C. System an opportunity to cure their default (see Exhibit 73). On or about February 8, 2021, I.C. System received the plaintiff's second formal notice at or around 6:52 AM (see Exhibit 74). It has been more than two-hundred and fifty-five (255) days and plaintiff still has not received any form or response from I.C. System in regards to his debt validation dispute letter. Because I.C. System has acquiesced in the matter, plaintiff has added them to this lawsuit. After almost one year of disputing and dealing with the acquiescence, willful negligence and non-compliance and all of the defendant's blatant disregard for the law, plaintiff finally gave up and filed this lawsuit.

## FIRST CLAIM FOR RELIEF

86.

Plaintiff realleges paragraphs 1- 85 as if fully set forth herein.

87.

Trans Union, Experian and Equifax willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. § 1681 et seq.

## SECOND CLAIM FOR RELIEF

88.

Plaintiff realleges paragraphs 41- 85 as if fully set forth herein.

89.

Defendants IV through XVI willfully failed to comply with the requirements imposed pursuant to the FDCPA, 15 U.S.C. § 1692 et seq.

Page | 13- COMPLAINT

### THIRD CLAIM FOR RELIEF

90.

Plaintiff realleges paragraphs 73-77 as if fully set forth herein.

91.

Defendant IX willfully failed to comply with the requirements imposed pursuant to the Truth In Lending Act by doing a set-off on plaintiffs account, taking the plaintiffs collateral deposit and pursuing to collect interest on the account after the collateral set-off.

### FOURTH CLAIM FOR RELIEF

92.

Plaintiff realleges paragraph 61 as if fully set forth herein.

93.

Defendant VI willfully failed to comply with the requirements imposed pursuant to the Privacy Act, 5 U.S.C. § 552a et seq.

### FIFTH CLAIM FOR RELIEF

94.

Plaintiff realleges paragraphs 18-26 as if fully set forth herein.

95.

Defendant I willfully failed to comply with the requirements imposed pursuant to the FOIA, 5 U.S.C. § 552 et seq.

### PRAYER FOR RELIEF

Plaintiff demands a jury trial on all claims. Wherefore, plaintiff Blanton Banks II prays for a declaratory judgment declaring the acts of the defendants unconstitutional and injunctive relief preventing defendants from being able to use erroneous information in plaintiff's credit report and charging plaintiff interest on a collateralized account and grant plaintiff the maximum actual and punitive damages.

DATED this ~~26th~~ day of ~~August~~ 2021.
    21st   September

/s/ Blanton Banks II, Authorized Representative

Authorized Representative
Blanton Banks II, Authorized Representative
blantonb22@gmail.com
Telephone: (313) 405-8321
Pro se

Page | 14- COMPLAINT

Blanton Banks II
10130 Quilt Tree St
Las Vegas, NV, 89183
Phone: (313) 405-8321
E-mail: blantonb22@gmail.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LAS VEGAS DIVISION

PRO SE

**BLANTON BANKS, II**

Case No.

Plaintiff,

2:21-cv-01580-APG-DJA

v.

**FIRST AMENDED COMPLAINT**

**TRANS UNION LLC**,
**EQUIFAX INFORMATION SERVICES**
**LLC, EXPERIAN INFORMATION**
**SOLUTIONS INC,**
**FIRST PREMIER BANK, US AUTO**
**CREDIT PURCHASE, I.Q. DATA**
**INTERNATIONAL INC, AD ASTRA**
**RECOVERY SERVICES INC,WELLS**
**FARGO BANK, KAPS & CO USA LLC,**
**TBOM/TOTAL CARD, I.C. SYSTEM INC,**
**ASSET RECOVERY SOLUTIONS LLC,**
**AARGON AGENCY INC,**

Fair Credit Reporting Act (15 U.S.C. §1681 et seq.)
Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.)
Violation of First Amendment (42 U.S.C. § 1983)
Violation of Fifth Amendment (42 U.S.C. § 1983)
Violation of Fourteenth Amendment (42 U.S.C. § 1983)

**DEMAND FOR JURY TRIAL**

Defendants.

_____

Plaintiff alleges that at all times material:

1.

This is a civil action brought pursuant to 42 U.S.C. § 1983, 15 U.S.C. § 1601 et seq., 15 U.S.C. § 1681 et seq.,
and 15 U.S.C. § 1692 et seq., against Defendants herein named and unnamed in their individual and official capacities for
violations of Plaintiff's First, Fifth and Fourteenth Amendment Rights, including but not limited to, the violations of the
Fair Credit Reporting Act ("FCRA"), the Fair Debt Collections Practices Act ("FDCPA"), the Plaintiff's Consumer Rights

IQDataER-20

and that said Defendants conspired to deprive Plaintiff of said rights, privileges and immunities. The Plaintiff invokes this Court's pendant jurisdiction over Nevada Revised Statutes, Administrative Regulations, 15 USC § 1601 et seq., 15 USC § 1681 et seq., 15 USC § 1692 et seq., and 42 USC § 1983 that this court has authority to dispose of.

2.

Plaintiff Blanton Banks, II, ("plaintiff") is a natural person residing in the State of Nevada, as defined by the Fair Credit Reporting Act ("FCRA"), 15 USC § 1681a(c).

3.

Defendant I, Trans Union, LLC, ("Trans Union" or "Defendant I") residing at P.O. Box 2000, Chester, PA, 19016, under color of law, used or abused power that is possessed by virtue of state law and made possible only because he is clothed with authority of state law.

4.

Defendant II, Experian Information Solutions, INC, ("Experian" or "Defendant II") residing at P.O. Box 4500, Allen, TX, 75013, under color of law, acted the same as Defendant I.

5.

Defendant III, Equifax Information Services, LLC, ("Equifax" or "Defendant III") residing at P.O. Box 740256, Atlanta, GA, 30374, under color of law, acted the same as Defendants I and II.

6.

Defendant IV, First Premier Bank, ("First Premier" or "Defendant IV") residing at 601 S. Minnesota Ave., Sioux Falls, SD, 57104, under color of law, acted the same as the above Defendants.

7.

Defendant V, Asset Recovery Solutions, LLC, ("Asset Recovery Solutions" or "Defendant V") residing at 2200 E. Devon Ave., Suite 200, Des Plaines, IL, 60018, under color of law, acted the same as the above Defendants.

8.

Defendant VI, Ad Astra Recovery Services, INC, ("Ad Astra" or "Defendant VI") residing at 8918 W. 21ST Street N., Suite 200 PMB 303, Wichita, KS, 67205, under color of law, acted the same as the above Defendants.

9.

Defendant VII, U.S. Auto Credit Purchasing Center, LLC, ("U.S. Auto Credit" or "Defendant VIII") residing at 8375 Dix Ellis Trl., Suite 3, Jacksonville, FL, 32256, under color of law, acted the same as the above Defendants.

10.

Defendant VIII, I.Q. Data International, INC, ("I.Q. Data International" or "Defendant IX") residing at 21222 30TH Dr. SE, Suite 120, Bothell, WA, 98021, under color of law, acted the same as the above Defendants.

11.

Defendant IX, TBOM/Total Card, ("TBOM" or "Defendant X") residing at P.O. Box 84930, Sioux Falls, SD, 57118, under color of law, acted the same as the above Defendants.

Page | 2- COMPLAINT

12.

Defendant X, KAPS & CO USA, LLC, ("KAPS & Co" or "Defendant XI") residing at 2210 Plaza Dr., Suite 150, Rocklin, CA, 95765, under color of law, acted the same as the above Defendants.

13.

Defendant XI, I.C. System, INC, ("I.C. System" or "Defendant XII") residing at P.O. Box 64378, Saint Paul, MN, 55164, under color of law, acted the same as the above Defendants.

14.

Defendant XII, Aargon Agency, INC, ("Aargon Agency" or "Defendant XIII") residing at 8668 Spring Mountain Road, Suite 102, Las Vegas, NV, 89117, under color of law, acted the same as the above Defendants.

15.

On or about July 8, 2020, plaintiff submitted a notarized debt validation dispute letter along with verifiable proof of identity and residency via certified mail to Trans Union (see Exhibit 1). Pursuant to 15 USC 1681g et seq, plaintiff is afforded the right to be disclosed with everything that is contained in his credit file. After more than 30 days passing and Defendant I not responding to the plaintiff's debt validation dispute letter, plaintiff called Trans Union on or about August 12, 2020 to let them know that they acquiesced in the matter and must remove the items in the July 8, 2020 debt validation dispute letter from the plaintiff's credit report as required pursuant to 15 USC § 1681i(a)(1)(A).

16.

During the phone call made by the plaintiff to Trans Union on or about August 12, 2020, plaintiff was informed that the phone call was being recorded. Plaintiff spoke to a Trans Union representative who stated that Defendant I had intended to respond to plaintiff's debt validation dispute letter, however, declined to do so without stating a reason for their refusal. Plaintiff informed the Trans Union representative that because they have not responded within the 30 day period allotted pursuant to the Fair Credit Reporting Act, that all accounts mentioned in the July 8, 2020 debt validation dispute letter must be removed from the credit report immediately.

17.

On or about August 25, 2020, plaintiff submitted a second debt validation dispute letter to Trans Union with the invalidated items listed. Pursuant to 15 USC 1681g et seq, plaintiff is afforded the right to be disclosed with everything that is contained in his credit file. Plaintiff indicated to Trans Union that they did not respond or provide any proof bearing signature of a contract for any of the items being reported on the plaintiff's credit report (see Exhibit 2).

18.

On or about September 2, 2020, Trans Union sent plaintiff a copy of his Trans Union credit report. The report still contained items listed in the July 8, 2020 debt validation dispute letter that were not validated (see Exhibit 3).

19.

On or about September 7, 2020 Trans Union sent the plaintiff a dispute status letter alleging that Trans Union has previously conducted an investigation of all the items in regards to the July 8, 2020 debt validation dispute letter and that all data furnishers listed in the July 8, 2020 debt validation dispute letter verified all the information. However, Trans Union did not do an actual or reasonable investigation, nor did they provide their Method of Validation or any contracts

bearing the plaintiff's signature. Trans Union also states in their response that they are not required to investigate the same items again and informed plaintiff to contact the data furnishers himself (see Exhibit 4).

20.

On or about September 25, 2020, plaintiff, once again, sent Trans Union a third debt validation dispute letter giving Trans Union an opportunity to cure on the July 8, 2020 and August 25, 2020 debt validation dispute letters (see Exhibit 5). Pursuant to 15 USC 1681g et seq, plaintiff is afforded the right to be disclosed with everything that is contained in his credit file.

21.

Trans Union responded with another dispute status letter on or about October 5, 2020, once again informing the plaintiff that Trans Union does not have to reinvestigate the same items and instructing plaintiff to contact the data furnishers himself (see Exhibit 6). Trans Union failed to comply pursuant to 15 USC 1681g et seq.

22.

On or about November 19, 2020, plaintiff called Trans Union for a second time to give Trans Union an opportunity to cure their default and to request a copy of the August 12, 2020 recorded phone call pursuant to the Freedom Of Information Act, 5 USC § 552 et seq.

23.

Plaintiff spoke to Trans Union agent, Jesus, who refused to provide plaintiff with a copy of the audio recording as plaintiff requested pursuant to the Freedom Of Information Act, 5 U.S.C. § 552 et seq., and informed plaintiff that he would need to retain a lawyer in order to access a copy of the recorded phone call's audio.

24.

On or about January 4, 2021, plaintiff received a response letter, dated December 15, 2020, from Aargon Agency, a debt collector (see 15 USC § 1692a(6) and a party to the original disputed accounts in the July 8, 2020 debt validation dispute letter that plaintiff sent to Trans Union. Aargon Agency failed to validate the alleged debt that they had been reporting on the plaintiff's credit report negligently as required by 15 USC § 1692g. Aargon Agency's response letter to the debt validation dispute letter that the plaintiff sent them on or about December 12, 2020 to make sure this alleged debt did not arise out of bona fide error, informed the plaintiff that he actually has no account with their company (see Exhibit 7).

25.

On the same day, plaintiff called Trans Union again for a third time and spoke to the Trans Union agent, Solomon. Both Solomon and plaintiff agreed to the phone call being recorded. Plaintiff provided the Trans Union agent all self identifying information to locate his credit file and informed the Trans Union agent, Solomon, that he is in receipt of a response letter from Aargon Agency stating that no account with their company exists. Plaintiff continued to inform the Trans Union agent that he is aware that because of the response received by Aargon Agency stating they do not have an account for the plaintiff, that Trans Union, in fact, did not conduct an actual or reasonable investigation as Trans Union has stated in their response letters of September 2, 2020, September 7, 2020 and October 5, 2020.

26.

Trans Union agent, Solomon, informed plaintiff that because of the results of their investigation of a previous debt validation letter disputing the alleged accounts, Trans Union willfully did not respond to a dispute they received on

Page | 4- COMPLAINT

October 2, 2020. However, Trans Union did receive the original debt validation dispute letter on or about July 8, 2020 and Aargon Agency was an alleged account listed in the dispute for validation. After plaintiff's first debt validation was not responded to by Trans Union and plaintiff's second and third request to have these items validated by Trans Union, Defendant I continued to state in their responses that Aargon Agency along with all other defendants, are valid reporting accounts. The Trans Union agent, Solomon, continued to inform the plaintiff that Trans Union cannot actually validate accounts (see Exhibit 8: audio recording).

27.

On or about January 17, 2021, plaintiff submitted a complaint to the Consumer Financial Protection Bureau against Trans Union. On or about February 18, 2021 Trans Union responded without addressing all of the plaintiff's issues in the plaintiff's complaint pertaining to their violations of the Fair Credit Reporting Act and the Consumer Financial Protection Bureau closed the complaint (see Exhibit 9). Plaintiff felt as if a remedy would not be given so he added Trans Union to this lawsuit for their violations of the Fair Credit Reporting Act pursuant to 15 USC § 1681i(a).

28.

On or about July 8, 2020, plaintiff submitted a notarized debt validation dispute letter regarding the alleged debt accounts pertaining to Defendants IV, VII, VIII, IX and XI, along with verifiable proof of identity and residency via certified mail to Experian (see Exhibit 10). Pursuant to 15 USC 1681g et seq, plaintiff is afforded the right to be disclosed with everything that is contained in his credit file. The debt validation dispute letter notified Experian that they are required by federal law to verify through the physical verification of the original signed consumer contract, any and all accounts they post on a consumer credit report. Pursuant to the U.S. Postal Mail tracking system, Experian received the debt validation dispute letter on or about July 14, 2020. After not receiving a response from Experian on or by August 13, 2020, within 30 days, in regards to the plaintiff's debt validation dispute letter as required pursuant to the Fair Credit Reporting Act, 15 USC § 1681i(a)(1)(A), plaintiff sent a second debt validation dispute letter to Experian on or about August 25, 2020. Plaintiff's August 25, 2020 debt validation dispute letter to Experian, informs Experian of their violation of federal law for failing to respond within 30 days after they received plaintiff's debt validation dispute letter (see Exhibit 11). Pursuant to 15 USC § 1681i(a)(5)(A)(i), Experian must remove the items from the credit report pertaining to the above mentioned defendants because they did not validate nor provide full disclosure of said disputed items to plaintiff within the initial 30 days.

29.

Almost 60 days later from the original debt validation dispute letter that was received by Experian on or about July 14, 2020, the plaintiff received a copy of his credit report from Experian on or about September 4, 2020 (see Exhibit 12). Pursuant to 15 USC § 1681i(a)(1)(A), Experian did not conduct an actual or reasonable reinvestigation of the disputed alleged accounts pertaining to Defendants IV, VII, VIII, IX and XI, listed in the July 8, 2020 debt validation letter. Furthermore, Experian willfully did not comply with the plaintiff's dispute letter informing Experian that they are required to remove all accounts pertaining to above mentioned defendants pursuant to 15 USC § 1681i(a)(5)(A)(i)-(ii). Experian acquiesced in the matter and instructed the plaintiff to review the copy of his credit report sent to him, dated September 4, 2020, and to contact Experian afterwards if plaintiff disagrees with any items listed on his credit report (see Exhibit 12).

30.

On or about September 15, 2020, plaintiff received an auto response post card in the mail from Experian stating that Experian can determine on their own whether disputed information should be changed or deleted without having to contact the furnisher or the vendor and explaining Experian's role in the dispute process (see Exhibit 13). Pursuant to 15 USC § 1681i(a)(1)(A), a Credit Reporting Agency must conduct a reasonable reinvestigation within 30 days from the day

they receive it to determine whether the disputed information is inaccurate. If a credit reporting agency fails to do so within the 30 day window, that information must be removed from the file pursuant to 15 USC § 1681i(a)(5)(A)(i)-(ii). Because Experian, for a third time, acquiesced and failed to move in honor, pursuant to15 USC § 1681i(a)(1)(A) and 15 USC § 1681i(a)(5)(A)(i)-(ii), on or about September 25, 2020, plaintiff sent Experian a formal third and final debt validation dispute letter disputing the alleged accounts as they have not been validated  pertaining to Defendants IV, VII, VIII, IX and XI, requesting Experian's Method of Validation, who specifically verified the alleged above accounts, any and all copies of any alleged original documentation and or any alleged consumer contracts bearing the plaintiff's signature (see Exhibit 14).

31.

On or about October 10, 2020, plaintiff received another auto response post card in the mail from Experian stating that Experian can determine on their own whether disputed information should be changed or deleted without having to contact the furnisher or the vendor and explaining Experian's role in the dispute process (see Exhibit 15). Pursuant to 15 USC § 1681i(a)(1)(A), a Credit Reporting Agency must conduct a reasonable reinvestigation within 30 days from the day they receive it to determine whether the disputed information is inaccurate. If a credit reporting agency fails to do so within the 30 day window, that information must be removed from the file pursuant to 15 USC § 1681i(a)(5)(A)(i)-(ii). Three days later on or about October 13, 2020, Experian sent plaintiff a copy of his credit report pertaining to plaintiff's third written request for a reinvestigation. For a third time, pursuant to 15 USC § 1681i(a)(1)(A), Experian did not conduct an actual or reasonable reinvestigation, nor did Experian provide their Method of Validation or who they spoke to directly in regards to the plaintiff's dispute of the alleged accounts nor any and all copies of any alleged original documentation and or any alleged consumer contracts bearing the plaintiff's signature pertaining to Defendants IV, VII, VIII, IX and XI. The Experian dispute results response letter instructed the plaintiff to contact the alleged credit grantors himself (see Exhibit 16). After Plaintiff made numerous attempts to have the invalidated accounts reporting on his credit report validated and to receive full disclosure and to make sure the alleged accounts did not arise out of error, plaintiff felt that he would not get a remedy so he added Experian to this lawsuit.

32.

On or about July 8, 2020, plaintiff submitted a notarized debt validation dispute letter pursuant to 15 USC § 1681i(a)(1)(A) requesting credit reporting agency Equifax to verify through the physical verification of the original signed consumer contract any and all accounts they have posted on plaintiff's credit report pertaining to Defendants IV, VII, VIII and IX. Pursuant to 15 USC 1681g et seq, plaintiff is afforded the right to be disclosed with everything that is contained in his credit file. Plaintiff submitted this dispute letter along with verifiable proof of identity and residency via certified mail to Equifax (see Exhibit 17). Per the U.S. Postal Mail tracking system Equifax received plaintiff's dispute letter on or about July 12, 2020.

33.

On or about July 14, 2020, plaintiff received a dispute results response letter from Equifax acknowledging that plaintiff has a mixed credit file (see Exhibit 18). However, pursuant to 15 USC § 1681i(a)(1)(A) Equifax did not respond with any verifiable or accurate information pertaining to the above disputed alleged accounts with the Defendants mentioned above.

34.

On or about July 30, 2020, Equifax sent plaintiff an additional dispute results response letter and a copy of the plaintiff's credit report. The copy of the updated credit report from the investigation that Equifax alleges was conducted still contained the disputed alleged accounts from the original July 8, 2020 debt validation dispute letter pertaining to Defendants IV, VII, VIII and IX (see Exhibit 19). Pursuant to 15 USC § 1681i(a)(1)(A), Equifax did not conduct an actual

or reasonable reinvestigation of the plaintiff's dispute by their failure to provide verifiable proof of an original signed contract bearing plaintiff's signature pertaining to all of the Defendants mentioned above and they failed to comply with 15 USC §1681e(b), whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

35.

On or about August 25, 2020, plaintiff submitted a second debt validation dispute letter to Equifax with the invalidated accounts listed pertaining to Defendants IV, VII, VIII and IX, which Equifax had until September 24, 2020 to respond to plaintiff. Pursuant to 15 USC § 1681i(a)(1)(A) the second debt validation dispute letter sent by the plaintiff informs Equifax that they did not comply to federal law and that Equifax stated in writing that they verified that these alleged accounts are being reported correctly, however, Equifax did not state who verified or validated these alleged accounts. Because Equifax violated 15 USC § 1681i(a)(1)(A) and 15 USC § 1681e(b), plaintiff requested the method of validation used by Equifax, the names of each individual they spoke to who allegedly verified the alleged accounts pertaining to the above mentioned defendants, any and all original documentation or contracts bearing plaintiff's signature and plaintiff informed Equifax of the Civil liability and the remedy available to plaintiff for negligent noncompliance (see Exhibit 20).

36.

On or about October 8, 2020, plaintiff received a response from Equifax with a copy of his September 22, 2020 credit report. The copy of the plaintiff's credit report still had the disputed alleged accounts pertaining to the above mentioned defendants. Equifax, for a third time, did not conduct an actual or reasonable reinvestigation and responded well beyond the 30 day deadline of September 24, 2020 as allowed pursuant to 15 USC § 1681i(a)(1)(A). Equifax did not provide the plaintiff their method of validation, nor did Equifax provide the plaintiff with details of who they spoke to with firsthand knowledge of the disputed alleged accounts pertaining to the above mentioned defendants or any copies of any original documentation or contracts bearing the plaintiff's signature relating to these alleged validated accounts (see Exhibit 21).

37.

Because Defendants I, II and III continued to be willfully negligent and noncompliant in the debt validation dispute matter pursuant to 15 USC § 1681i(a)(1)(A) and 15 USC § 1681e(b) and after several attempts by the plaintiff to make sure that these alleged debt accounts did not arise out of a bona fide error, this forced the plaintiff to add all three major credit reporting agencies to the lawsuit. It also forced the plaintiff to contact the debt collectors (see 15 USC § 1692a(6)), Defendants IV through XII, himself to request validation of the alleged accounts the debt collectors have reporting on plaintiff's credit report.

38.

On or about December 12, 2020, pursuant to 15 USC § 1692g, plaintiff sent U.S. Auto Credit, a debt collector pursuant to 15 USC § 1692a(6), via registered mail a debt validation dispute letter pertaining to the alleged debt the plaintiff disputed originally in his July 8, 2020 debt validation dispute letter sent to Trans Union, Experian and Equifax. Plaintiff has no contract or idea who U.S. Auto Credit is (see Exhibit 22). U.S. Auto Credit received plaintiff's initial communication on December 22, 2020 but did not respond to plaintiff with written communication pertaining to the debt until December 30, 2020. Pursuant to 15 USC §1692g(a), U.S. Auto Credit did not send plaintiff written notice within five days.

39.

On or about December 30, 2020, U.S. Auto Credit sent plaintiff a five (5) page response with what they believe is enough information to report this alleged debt on the plaintiff's credit report (see Exhibit 23). U.S. Auto Credit's response did not bear any contractual proof of plaintiff's signature and contains false and misleading information pursuant to 15 USC § 1692e. Plaintiff noticed in the written communication sent by U.S. Auto Credit that U.S. Auto Credit has falsified that plaintiff sent payments to them via a mailed payment.

40.

Because U.S. Auto Credit failed to comply with the plaintiff's debt validation dispute letter, on or about January 5, 2021, plaintiff sent a formal notice to U.S. Auto Credit giving them an opportunity to cure on their acquiescence (see Exhibit 24). Plaintiff also noticed errors in U.S. Auto Credit's reporting to the credit reporting agencies Trans Union, Experian and Equifax. U.S Auto Credit, Trans Union, Experian and Equifax all failed to update and report the plaintiff's disputed alleged debt as disputed pursuant to 15 USC § 1692e(8).

41.

On or about January 22, 2021, U.S. Auto Credit sent plaintiff a response letter of refusal to investigate his disputed alleged debt. U.S. Auto Credit continued in their response refusing to properly investigate or provide the proper documentation required by law to state that a valid claim of debt exists and re-sent copies of the same documents that do not prove any contract exists in regard to this alleged debt (see Exhibit 25). Plaintiff does not have any knowledge of U.S. Auto Credit nor any knowledge of the other entities in the document supposedly having an alleged security interest in the matter, nor has plaintiff mailed any payments to U.S. Auto Credit. In addition to this, U.S. Auto Credit willfully and negligently refused to comply because they believed that a credit repair organization was assisting the plaintiff (see Exhibit 25). Even if this were true, this is the plaintiff's lawful right to seek assistance in this matter as granted by the U.S. Congress whom backs the Federal Reserve Banking system. Pursuant to 15 USC § 1692f , U.S. Auto Credit is committing fraud and using unfair and unconscionable means in an attempt to collect an alleged debt not owed to them by the plaintiff.

42.

On or about February 6, 2021, plaintiff sent the Federal Trade Commission ("FTC") and the CFPB, via certified mail, his complaint regarding the willful negligence, willful non-compliance and negligent enablement of identity fraud on his name committed by U.S Auto Credit (see Exhibit 26). On or about February 12, 2021, the FTC sent plaintiff a response in regards to his complaint and on or about February 24, 2021 the CFPB sent plaintiff a response in regards to this same complaint (see Exhibit 27). To this present day, U.S. Auto Credit still has not responded to the complaint sent to the CFPB by the FTC or the plaintiff and continues to report this alleged account on plaintiff's credit report with no contract bearing plaintiff's signature to prove a valid debt or contract exists and U.S. Auto Credit still has not updated or reported the disputed alleged account as disputed with the credit reporting agencies nor has the credit reporting agencies updated that information either. U.S. Auto Credit continues to be willfully noncompliant and negligent and are depriving the plaintiff of his constitutional and consumer rights. Because plaintiff attempted several times to have this alleged debt validated to make sure it did not arise out of a bona fide error and U.S. Auto could not validate the alleged debt, plaintiff finally gave up and added U.S. Auto Credit to this lawsuit.

43.

On or about December 12, 2020, plaintiff sent a debt validation dispute letter to First Premier because after reviewing his credit report, plaintiff noticed First Premier is reporting an alleged account (see Exhibit 28). Here plaintiff

Page | 8- COMPLAINT

states that First Premier is a debt collector under 15 USC § 1692g. Plaintiff states this because pursuant to 15 USC § 1692a(6), First Premier uses instruments of interstate commerce or the mails to collect or attempt to collect, directly or indirectly, debts owed. Per the U.S. Postal Mail tracking system, First Premier received plaintiff's dispute on or about December 23, 2020. First Premier did not comply with federal regulation 15 USC § 1692g(a) as they failed to respond within 5 days.

44.

On or about January 4, 2021, First Premier responded to plaintiff, after the 5 day period, with a letter stating that First Premier does not have to validate the disputed alleged debt nor provide the plaintiff any validation to the consumer (plaintiff). Because First Premier refused to validate the alleged debt, First Premier has violated 15 USC § 1692g, requiring debt collectors to validate debts and violated 15 USC § 1692e, by stating that they do not have to validate debts, which is false and misleading (see Exhibit 29).

45.

On or about January 23, 2021, pursuant to 15 USC § 1692g(b), plaintiff sent a second request for debt validation to the attention of First Premier's Chief Financial Officer giving First Premier another opportunity to validate the alleged debt (see Exhibit 30). Plaintiff also included a copy of a debt collection notice from a different debt collector, Asset Recovery Solutions, claiming they have an interest in this matter as well (see Exhibit 30). First Premier is reporting on the plaintiff's credit report that the alleged account is charged-off with a balance due to First Premier, however, Asset Recovery Solutions', a debt collector, debt collection notice states that Asset Recovery Solutions is in charge of collecting on this alleged debt. Pursuant to 15 USC § 1692g, when the debt cannot be validated it must be removed from the credit report. On or about January 23, 2021, plaintiff also sent Asset Recovery Solutions, a debt validation dispute letter to request validation of this alleged debt (see Exhibit 30). Asset Recovery Solutions did not respond to the debt validation and has not provided a copy of their IRS Form-2848 granting Asset Recovery Solutions power of attorney on behalf of the alleged First Premier account to do so.

46.

On or about February 3, 2021, First Premier sent plaintiff a letter dated February 1, 2021. Once again, for a second time, First Premier did not send written notice within 5 days (*See* 15 USC § 1692g(a)) and continued to refuse to validate the disputed alleged debt. Under threat, duress and coercion, First Premier demanded that plaintiff create an Affidavit of Unauthorized Use contract and willfully refused to validate the disputed debt unless plaintiff filled out and signed said document (see Exhibit 31). On or about February 3, 2021, First Premier sent plaintiff a second letter dated February 1, 2021 with what they believe to be validation of the alleged debt (see Exhibit 32). The two responses in the same day from First Premier contradict each other and the responses by First Premier are misleading pursuant to 15 USC § 1692e and First Premier confirms that they are a debt collector in fact.

47.

Upon plaintiff reviewing the information, plaintiff noticed that First Premier sent three itemized debt collection billing statements but did not send any signed contract bearing plaintiff's signature, nor did they provide proof that payments were received from the plaintiff as they are reporting on plaintiff's credit report. (see Exhibit 32). Pursuant to the Federal Trade Commission Opinion Letter by Attorney John F. LeFevre, an itemized billing statement does not constitute validation of a debt. Furthermore, this alleged account was opened in or around June 2016 as First Premier is reporting to the credit reporting agencies, however, First Premier did not send the plaintiff any itemized statements pertaining to the alleged account for the months of June 2016 and July 2016.

48.

On or about February 12, 2021 First Premier sent the plaintiff another letter claiming to have completed their debt validation investigation. By this response, First Premier has once again, for a fourth time, acquiesced in the matter by failing to comply to 15 USC § 1692g (see Exhibit 33).

49.

Because First Premier refused to obey consumer credit law, has caused harm to the plaintiff by violating his consumer rights and have violated 15 USC § 1692g and 15 USC § 1692e and refused remove the alleged account that they could not validate from the plaintiff's credit report, the plaintiff filed a complaint with the CFPB on or about March 3, 2021 against First Premier and Asset Recovery Solutions. First Premier and Asset Recovery Solutions conspired to willfully commit fraud on his name without having any contractual proof and without actually validating the alleged debt (see Exhibit 34). On this same day, the CFPB responded that the complaint the plaintiff sent to them pertaining to First Premier would be forwarded to the Federal Reserve Board because they are better able to help with his issue. The CFPB also entered the plaintiff's complaint into the Consumer Sentinel Network, a database operated by the FTC that is used to identify questionable business practices (see Exhibit 35).

50.

On or about March 8, 2021, the plaintiff received notice from the Federal Reserve Board that his complaint has been received and will be responded to by the Federal Reserve Bank of Minneapolis within 60 days (see Exhibit 36).

51.

On or about March 10, 2021 plaintiff received a letter in the mail from First Premier informing the plaintiff that they validated the alleged debt. Once again, for a fifth time, First Premier provided no validating evidence to the plaintiff of any kind that an actual validation of the alleged debt was done as they refused to do so on several occasions. First Premier continued to state that they are not required to provide any proof of a signed contract or validate the alleged debt (see Exhibit 37). This is false and misleading and violates 15 USC § 1692g and 15 USC § 1692e.

52.

On or about March 11, 2021, plaintiff received a notice from the CFPB in regards to Asset Recovery Solutions stating that they are no longer serving this alleged account. Asset Recovery Solutions also were willfully noncompliant by not responding to the plaintiff in regards to his debt validation dispute letter sent on or about January 23, 2021 (see Exhibit 38). Pursuant to 15 USC § 1692g, debt collectors must validate debts. Asset Recovery Solutions could not provide any contract belonging to the plaintiff and did not validate the alleged debt. After plaintiff made numerous attempts to have the alleged debt validated and to make sure that it didn't arise out of an error despite procedures reasonably put in place to avoid such errors, plaintiff finally gave up and added First Premier and Asset Recovery Solutions to this lawsuit because they could not validate the debt and First Premier continued to report the account to Trans Union, Equifax and Experian.

53.

On or about December 12, 2020, plaintiff sent I.Q. Data International, a debt collector (see 15 USC § 1692a(6)), a debt validation dispute letter via U.S. registered mail pertaining to an alleged account with I.Q. Data International reporting on his credit report (see Exhibit 39). I.Q. Data International received the plaintiff's debt validation dispute letter on or about December 18, 2020 and the same day I.Q. Data International refused to accept plaintiff's mailed debt validation dispute letter and returned it to him at or around 3:17 PM (see Exhibit 40). Debt collector are required to validate debts, 15 USC § 1692g and within five days of initial communication with a consumer in connection with a debt

Page | 10- COMPLAINT

collector shall send written notice to the consumer containing certain information about the debt, 15 USC §1692g(a). Plaintiff sent copies of the refused returned debt validation letter pertaining to I.Q. Data International to Trans Union, Equifax and Experian requesting removal of this invalidated account due to I.Q. Data International's acquiescence in the matter, however, the I.Q. Data International account on the plaintiff's credit report is still reporting with all three credit reporting agencies.

54.

On or about January 29, 2021 and January 30, 2021, I.Q. Data International sent the plaintiff debt collection notices with insulting language assuming plaintiff is having a hard time paying an alleged debt that they refused to validate (see Exhibit 41). Pursuant to 15 USC § 1692g(b) plaintiff sent a second debt validation to I.Q. Data International and made it to the attention of their Treasurer on or about February 5, 2021 to give I.Q. Data International an opportunity to cure their default (see Exhibit 42). I.Q. Data International received plaintiff's formal notice on or about February 11, 2021 at or around 11:17 AM (see Exhibit 43), however, I.Q. Data International once again failed to comply with 15 USC §1692g and 15 USC § 1692g(a).  Because I.Q. Data International refused plaintiff's debt validation dispute letter on or about December 12, 2020 and still has not responded to date with any form of validation in regards the alleged debt after plaintiff made several attempts to have the alleged debt validated and to make sure that it didn't arise out of an error despite procedures reasonably put in place to avoid such errors, plaintiff finally gave up and added I.Q. Data International to this lawsuit for their willful noncompliance in their requirement to validate debts pursuant to 15 USC § 1692g.

55.

On or about December 12, 2020, plaintiff sent Ad Astra, a debt collector (see 15 USC § 1692a(6)), a debt validation dispute letter pursuant to 15 USC § 1692g via U.S. registered mail pertaining to an alleged account with Ad Astra that is reporting on his credit report because does not have any contractual debts with Ad Astra (see Exhibit 44). Ad Astra received plaintiff debt validation dispute on or about December 15, 2020, however, did not send plaintiff written notice containing certain information about this alleged debt until on or about December 24, 2020. Within five days after the initial communication with a consumer in connection with a debt, a debt collector shall send the consumer a written notice containing certain information about the debt. Ad Astra failed to comply with this Fair Debt Collection Practices Act regulation pursuant to 15 USC § 1692g(a).

56.

On or about December 24, 2020, Ad Astra sent plaintiff a debt collection notice claiming to be in charge of this alleged debt sent to Ad Astra by a third-party, however, failed to comply to the plaintiff's debt validation dispute letter in its entirety (see Exhibit 45). Because plaintiff has no signed contract with Ad Astra and Ad Astra failed to comply with the original debt validation letter, on or about January 4, 2021, plaintiff sent Ad Astra a second request for debt validation of this alleged account (see Exhibit 46). Ad Astra received the plaintiff's second debt validation request on or about January 8, 2021 at or around 12:36 PM (see Exhibit 47). More than 50 calendar weeks (350 days) has passed and plaintiff still has not received a response from Ad Astra to date validating this alleged debt per plaintiff's second request pursuant to 15 USC § 1692g. After plaintiff's multiple attempts to have the alleged debt validated and to make sure that it didn't arise out of an error despite procedures reasonably put in place to avoid such errors, plaintiff finally gave up and added Ad Astra to this lawsuit.

57.

On or about December 12, 2020, plaintiff sent a debt validation dispute letter via U.S. registered mail to the address being reported on his credit report by TBOM, a debt collector (see 15 USC § 1692a(6), pertaining to an alleged debt (see Exhibit 48). On or about December 24, 2020, the mailed letter was returned to the plaintiff as being undeliverable to the address that was reported on plaintiff's credit report (see Exhibit 49). After careful due diligence,

plaintiff noticed that TBOM has a different address reporting for each credit reporting agency and on their company website a different address as well. This is misleading pursuant to 15 USC § 1692e and is a violation of inaccurate information being reported on a consumer's credit report. The plaintiff notified the three major credit reporting agencies that TBOM is reporting false, misleading and inaccurate information. Trans Union, Experian and Equifax did not remove the alleged account from the plaintiff's credit report nor did they update the inaccurate information. This is a violation pursuant to 15 USC § 1681i(a)(1)(A) and 15 USC § 1681i(a)(5)(i)-(ii). In plaintiff doing more due diligence, plaintiff found a deliverable address belonging to TBOM on their company website.

58.

On or about February 5, 2021, plaintiff sent a formal notice to the attention of the Chief Financial Officer at TBOM via certified mail informing the defendant of their violations and requesting, for a second time, that the alleged debt be validated. The notice contained a copy of the original debt validation letter, a copy of the undeliverable mailed envelope, a copy of TBOM's Foreign Withdrawal for doing business in the State of Nevada where plaintiff resides and gave TBOM an opportunity to validate the alleged debt (see Exhibit 50).

59.

On or about February 12, 2021, TBOM received the plaintiff's formal notice and additional materials (see Exhibit 51). More than 45 calendar weeks (315 days) has passed and TBOM to date still has not responded but are still reporting this alleged debt on the plaintiff's credit report with false, misleading and invalidated information. In addition to this, TBOM has failed to comply and violated 15 USC 1692e when they did not report the disputed debt as being disputed to the credit reporting agencies Trans Union, Experian or Equifax as required. Furthermore, the credit reporting agencies once again did not update their reporting of the plaintiff's file to show that the alleged debt is disputed either. In addition to this, it is notated on the plaintiff's credit report with each credit reporting agency that TBOM no longer owns the alleged debt, however, it is still reporting. This is a violation of 15 USC § 1681 et seq. The Credit Reporting Agencies and TBOM's willful noncompliance and willful negligence pursuant to 15 USC § 1681n et seq and 15 USC § 1681o et seq, has caused harm to plaintiff as they are willfully violating the plaintiff's consumer rights. Plaintiff made several attempts to have this alleged account validated to make sure that it did not arise out of a bona fide error but the Credit Reporting Agencies and TBOM failed to comply so plaintiff added TBOM to this lawsuit.

60.

On or about December 12, 2020, plaintiff sent KAPS & Co., a debt collector (see 15 USC § 1692a(6)), a debt validation dispute letter via U.S. registered mail pertaining to an alleged account on his credit report (see Exhibit 52). On or about December 31, 2020, plaintiff was notified by the U.S.P.S. that delivery was attempted and that KAPS & Co. did not accept the mailed debt validation dispute letter, this is a violation 15 USC § 1692g (see Exhibit 53). Plaintiff scheduled a re-delivery and the debt validation dispute letter was delivered and received by KAPS & Co. on or about January 12, 2021 (see Exhibit 53). Pursuant to 15 USC § 1692g(a), plaintiff never received any written communication from KAPS & Co. as required. More than 14 calendar weeks (98 days) passed without the plaintiff receiving a response from KAPS & Co. after they had received his debt validation dispute on or about January 12, 2021. Plaintiff did not receive a response from KAPS & Co. until on or about April 21, 2021.

61.

Plaintiff noticed that this duplicate alleged account is being reported on his credit report fraudulently by KAPS & Co. and TBOM and made the major credit reporting agencies Trans Union, Experian and Equifax all aware of this. However, the credit reporting agencies continued to report the false, misleading, inaccurate and invalidated information violating, 15 USC 1692e et seq.

IQDataER-31

62.

On or about April 21, 2021, KAPS & Co sent the plaintiff a debt collection notice on company letterhead claiming to be the sole owner of this duplicate alleged debt which per the plaintiff's credit report is false and misleading pursuant to 15 USC § 1692e et seq. (see Exhibit 54). The KAPS & Co. response letter violates and fails to comply with the Fair Debt Collection Practices Act (see 15 USC § 1692g(a)(3)-(4)-(5)) in their response sent to plaintiff on or about April 21, 2021. KAPS & Co. has, once again, not validated the alleged debt. Plaintiff is convinced that pursuant to 15 USC 1692k et seq., 15 USC 1681n et seq. and 15 USC § 1681o et seq.,  KAPS & Co. is willfully being negligent, non-compliant and engaging in the enablement of identity fraud on his name and violating his consumer rights. Plaintiff made multiple attempts to have the alleged debt validated to make sure it did not arise out of a bona fide error, however, KAPS & Co. failed to comply several times. This gave the plaintiff no choice but to add KAPS & Co. to this lawsuit.

63.

On or about December 12, 2020, plaintiff sent I.C. System, a debt collector (see 15 USC § 1692a(6)), a debt validation dispute letter via U.S. registered mail pertaining to an alleged debt reporting on his credit report requiring I.C. System to validate the alleged debt pursuant to 15 USC § 1692g (see Exhibit 55). I.C. System received plaintiff's debt validation request on or about December 21, 2020 at or around 6:52 A.M, per the U.S. Postal Mail tracking system. (see Exhibit 56). More than five days passed without plaintiff receiving any written notice with information about the alleged debt. I.C. System failed to comply as required by 15 USC § 1692g(a). More than thirty (30) days passed without I. C. System validating the alleged debt or complying with the Fair Debt Collection Practices Act, 15 USC § 1692g et seq.

64.

Because the plaintiff had received no response from I.C. System, he sent a second debt validation letter via certified mail on or about February 3, 2021 to the attention of I.C. System's Chief Financial Officer with a copy of his original debt validation dispute letter from December 12, 2020 to give I.C. System an opportunity to cure their default and validate the alleged debt as required by 15 USC § 1692g (see Exhibit 57). On or about February 8, 2021, I.C. System received the plaintiff's second formal debt validation request notice at or around 6:52 AM (see Exhibit 58). Pursuant to 15 USC § 1692g, I.C. System for a second time, failed to comply by not validating the debt nor did they respond at all to the plaintiff's dispute, yet continued to report the invalidated information on his Trans Union and Experian credit report. It has been more than 50 calendar weeks (350 days) and I.C. System has willfully and negligently failed to comply to 15 USC § 1692g, 15 USC § 1692e and 15 USC § 1681 et seq. Plaintiff made multiple attempts to have this alleged debt validated by I.C. System to make sure it did not arise out of an error, however, I.C. System did not move in honor as required by federal law. After almost one year of disputing and dealing with the acquiescence, willful negligence and willful noncompliance and the defendant's entire blatant disregard for the law, plaintiff finally gave up and filed this lawsuit.

FIRST CLAIM FOR RELIEF
(FCRA – 15 USC § 1681n)

65.

Plaintiff realleges paragraphs 1- 64 as if fully set forth herein.

66.

Trans Union, Experian and Equifax willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. § 1681 et seq., including but not limited to:

a)     failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 USC § 1681e(b);

b)     failing to comply with the reinvestigation requirements in 15 USC § 1681i;

and

c)     failing to provide plaintiff his credit file pursuant to 15 USC § 1681g.

67.

As a result of Trans Union, Equifax and Experian's violations of the FCRA, Plaintiff has suffered, continues to suffer, and will suffer future damages, including denial of credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to his damages, in an amount to be determined by the jury.

68.

Plaintiff is entitled to punitive damages in an amount to be determined by the jury.

69.

Plaintiff is entitled to actual damages in an amount to be determined by the jury in addition to any statutory damages in an amount to be determined by the Court.

SECOND CLAIM FOR RELIEF
(FCRA – 15 USC § 1681o)

70.

Plaintiff realleges paragraphs 1- 64 as if fully set forth herein.

71.

Trans Union, Equifax and Experian negligently failed to comply with the requirements imposed under the FCRA, 15 USC § 1681 et seq., including but not limited to:

a)     failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 USC § 1681e(b);

b)     failing to comply with the reinvestigation requirements in 15 USC § 1681i;

and

c)     failing to provide plaintiff his credit file pursuant to 15 USC § 1681g.

72.

As a result of Trans Union, Equifax and Experian's violations of the FCRA, plaintiff has suffered, continues to suffer and will suffer future damages, including denial of credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to his damages, in an amount to be determined by the jury.

73.

Plaintiff is entitled to actual damages in an amount to be determines by the jury.

IQDataER-33

THIRD CLAIM FOR RELIEF
(FDCPA – 15 USC § 1692k)

74.

Plaintiff realleges paragraphs 38 - 64 as if fully set forth herein.

75.

Defendants IV through XII willfully failed to comply with the requirements imposed under the FDCPA, 15 U.S.C. § 1692 et seq., including but not limited to:

a)      failing to provide plaintiff written notice after initial communication within five (5) days pursuant to 15 USC § 1692g(a);

b)      failing to comply with the debt collection requirements regarding the use of false and misleading representations pursuant to 15 USC § 1692e;

c)      failing to report plaintiff's debt validation dispute as disputed to the credit reporting agencies as required pursuant to 15 USC § 1692e;

 and

d)      failing to use fair and conscionable means to collect or attempt to collect a debt, as required by 15 USC § 1692f.

76.

As a result of Defendants IV through XII's violations of the FCRA, plaintiff has suffered, continues to suffer and will suffer future damages, including denial of credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to his damages, in an amount to be determined by the jury.

77.

Plaintiff is entitled to punitive damages in an amount to be determined by the jury.

78.

Plaintiff is entitled to actual damages in an amount to be determines by the jury.

FOURTH CLAIM FOR RELIEF
(FDCPA – 15 USC § 1692k)

79.

Plaintiff realleges paragraphs 38 - 64 as if fully set forth herein.

80.

Defendants IV through XII negligently failed to comply with the requirements imposed under the FDCPA, 15 U.S.C. § 1692 et seq., including but not limited to:

IQDataER-34

a)      failing to provide plaintiff written notice after initial communication within five (5) days pursuant to 15 USC 1692g(a);

b)      failing to comply with the debt collection requirements regarding the use of false and misleading representations pursuant to 15 USC 1692e;

c)      failing to report plaintiff's debt validation dispute as disputed to the credit reporting agencies as required pursuant to 15 USC 1692e;

and

d)      failing to use fair and conscionable means to collect or attempt to collect a debt, as required by 15 USC 1692f.

81.

As a result of Defendants IV through XII's violations of the FDCPA, plaintiff has suffered, continues to suffer and will suffer future damages, including denial of credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to his damages, in an amount to be determined by the jury.

82.

Plaintiff is entitled to actual damages in an amount to be determines by the jury.

PRAYER FOR RELIEF

Plaintiff demands a jury trial on all claims. Wherefore, plaintiff Blanton Banks II prays for a declaratory judgment declaring the acts of the defendants unconstitutional and injunctive relief preventing defendants from being able to use erroneous information in plaintiff's credit report and grant plaintiff the maximum actual and punitive damages.

DATED this 29th day of December 2021.

/s/ Blanton Banks II, Authorized Representative

Blanton Banks II, Authorized Representative
blantonb22@gmail.com
Telephone: (313) 405-8321
Pro se

Page | 16- COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Blanton Banks, II,

           Plaintiff,

   v.

Trans Union LLC, et al.,

           Defendants.

Case No. 2:21-cv-01580-CDS-DJA

**Order**

      Defendants filed a discovery plan and scheduling order after the parties attempted a telephonic conference during which Plaintiff said he could not hear Defendants and exited the call, later failing to rejoin the call or reconvene it. (ECF No. 42). The Court denied the discovery plan and scheduling order without prejudice, ordering Plaintiff to reconvene the conference. (ECF No. 43). After the conference, Defendants and Plaintiff each filed their own discovery plan and scheduling orders. (ECF Nos. 44 and 45). While the parties assert that they could not agree on certain terms, their proposed schedules are identical. *Compare* (ECF No. 44) *with* (ECF No. 45). The parties' provisions about electronic evidence, extensions or modifications of the discovery plan, and providing "shells" are also nearly identical. *Compare* (ECF No. 44) *with* (ECF No. 45).

      The Court will thus order that the parties' agreed upon schedule govern discovery in this case. The Court will also hold both Defendants and Plaintiff to their representations regarding electronic evidence, extensions or modifications of the discovery plan, and that they will provide "shells" or word versions of written discovery to opposing sides. No other provisions of the Defendants' and Plaintiff's discovery plan and scheduling orders will be effective. The Court will not require the parties to meet-and-confer again on the topics of alternative dispute resolution

or alternative forms of case disposition.  The Court finds these matters properly resolved without a hearing.  LR 78-1.

IT IS THEREFORE ORDERED that Plaintiff's and Defendants' discovery plans and scheduling orders (ECF Nos. 44 and 45) are **granted in part ONLY** regarding the deadlines below and the parties' respective sections regarding electronic evidence, extensions or modifications of the discovery plan, and that they will provide "shells" or word versions of written discovery to opposing sides. [1]

IT IS FURTHER ORDERED that **ALL OTHER** portions of the Plaintiff's and Defendants' discovery plan and scheduling orders are **denied**.  The parties will not be required to meet and confer again regarding alternative dispute resolution or alternative forms of case disposition.

IT IS FURTHER ORDERED that the following deadlines shall govern discovery:

| | |
|---|---|
| Amend pleadings/add parties: | May 3, 2022 |
| Initial expert disclosures | June 2, 2022 |
| Rebuttal expert disclosures | July 5, 2022 |
| Discovery cutoff | August 1, 2022 |
| Dispositive motions | August 31, 2022 |
| Joint pretrial order[2] | September 30, 2022 |

DATED: April 14, 2022

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE

---

[1] Specifically, sections II.H, III, and IV in Defendants' discovery plan and scheduling order (ECF No. 44 at 4:6 – 6:2) and sections II.H, III, and IV in Plaintiff's discovery plan and scheduling order (ECF No. 45 at 4-5).

[2] If dispositive motions are filed, the deadline for filing the joint pretrial order will be suspended until 30 days after decision on the dispositive motions or further court order.  LR 26-1(b)(5).

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

BLANTON BANKS II,

                 Plaintiffs,

vs.

TRANS UNION LLC, et al.,

                 Defendants.

Case No. 2:21−cv−01580−CDS−DJA

Dated:  May 25, 2022

NOTICE REGARDING INTENTION TO
DISMISS PURSUANT TO RULE 4(m)
OF THE FEDERAL RULES OF CIVIL
PROCEDURE

To:  Plaintiff

The official file in the above−entitled action reflects that the  Amended Complaint was filed on  12/29/2021.
Federal Rule of Civil Procedure 4(m) provides, in part, as follows:

". . . If a defendant is not served within 90 days after the complaint is filed, the court − on motion or
on its own after notice to the plaintiff − must dismiss the action without prejudice against that
defendant or order that service be made within a specified time. But if the plaintiff shows good cause
for the failure, the court must extend the time for service for an appropriate period. . ."

To date, there has been no proof of service filed as to: Aargon Agency Inc, Asset Recovery Solutions LLC,
I.C. System Inc, TBOM/Total Card, Trans Union LLC, Kaps & Co USA LLC, First Premier Bank, US Auto Credit
Purchase, I.Q. Data International Inc. and Wells Fargo Bank,.

Notice is given that this action may be dismissed without prejudice as to above parties unless proof of service
is filed with the clerk by 06/24/2022.  Service on the party must have taken place prior to the expiration of the time
limit set forth in Fed.R.Civ.P. 4(m), or good cause must be shown as to why such service was not made in that
period.

Failure to comply with this notice may result in dismissal of the action without prejudice as to said parties.

DEBRA K. KEMPI, CLERK

By: /s/ Darci Smith

Deputy Clerk

Case: 24-7602, 06/04/2025, DktEntry: 33.1, Page 39 of 145
Case 2:21-cv-01580-CDS-VCF  Document 152-2  Filed 06/27/23  Page 1 of 1
Case 2:21-cv-01580-CDS-VCF  Document 146-1  Filed 06/14/23  Page 2 of 2

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 2:21-cv-01580-CDS-VCF

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*   I.Q. Data International Inc.

was received by me on *(date)*   06/27/2023   .

❏ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☒ I served the summons on *(name of individual)*   Kris Osborn, Intake Clerk   , who is

designated by law to accept service of process on behalf of *(name of organization)*   Corporation Service Company

_____ on *(date)*   06/27/2023   ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $   60.00   for services, for a total of $   60.00   .

I declare under penalty of perjury that this information is true.

Date:   06/27/2023

_____
*Server's signature*

DAWN CALHOUN, Process Server NV PILB LIC #2602
C & H Couriers/   *Printed name and title*
Process Servers
75 McCabe Dr. #19208
Reno, NV 89511
(775) 219-2871
*Server's address*

Additional information regarding attempted service, etc:
   Documents:  Summons and First Amended Complaint

SEAN P. FLYNN (SBN: 15408)
**GORDON REES SCULLY MANSUKHANI**
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone:     (775) 467-2610
Email:          sflynn@grsm.com

Attorneys for Defendant
IQ DATA INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BLANTON BANKS, II,<br><br>     Plaintiff,<br><br> vs.<br><br>TRANS UNION LLC; EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS INC.; FIRST PREMIER BANK; US AUTO CREDIT PURCHASE; I.Q. DATA INTERNATIONAL INC.; AD ASTRA RECOVERY SERVICES INC.; WELLS FARGO BANK; KAPS & CO USA LLC; TBOM/TOTAL CARD; LC. SYSTEM INC.; ASSET RECOVERY SOLUTIONS LLC; AARGON AGENCY INC.,<br><br>     Defendants. | CASE NO.   2:21-cv-01580-CDS-VCF<br><br>**DEFENDANT IQ DATA INTERNATIONAL, INC.'S MOTION TO DISMISS PURSUANT TO FRCP 41(B) AND 12(B)(6) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

Defendant IQ DATA INTERNATIONAL, INC. ("IQ Data") by and through its attorneys of the law firm GORDON REES SCULLY MANSUKHANI, LL, moves to dismiss this action under Federal Rule of Civil Procedure 41(b) and 12(b)(6). IQ Data submits a Memorandum of Points and Authorities in support of its Motion and any oral argument the Court may allow.

## I.  **INTRODUCTION**

Plaintiff initiated this litigation more than two years ago. In that time, Plaintiff has failed to prosecute his claims and comply with the Court's orders. Pursuant to Fed. R. Civ. P. 41(b), Plaintiff's failure to prosecute and noncompliance with court rules warrants dismissal. Plaintiff has failed to prosecute its claims in any form since the filing of the operative Amended Complaint on December 29, 2021. Frankly, Plaintiff has done nothing to prosecute his claims against IQ Data over the past 19 months. Plaintiff's noncompliance with court rules and complete lack of prosecution and activity warrant dismissal of the instant case.

## II.  **STATEMENT OF FACTS**

Plaintiff ("Mr. Banks" or "Plaintiff") initiated this action on August 26, 2021 against numerous defendants, including IQ Data. On December 29, 2021, Plaintiff's first Amended Complaint was filed. (Doc. No. 12). Because Plaintiff failed to attach exhibits referenced in his Amended Complaint, Plaintiff was ordered to re-file it with exhibits. *See* Doc. No. 102 (Amended Complaint with Exhibits ("FAC")). Plaintiff alleges that on December 12, 2020, Plaintiff sent IQ Data a debt validation dispute letter pertaining to an account IQ Data was reporting on his credit. *See* FAC at ¶ 53.[1] Plaintiff alleges on December 18, 2020, IQ Data "refused to accept plaintiff's debt validation dispute." *Id*., ¶ 53. Plaintiff claims the IQ Data Account is still reporting with all three credit reporting agencies. *Id*.

Plaintiff further alleges that on or around January 29, 2021 and January 30, 2021, IQ Data sent Plaintiff debt collection notices with insulting language. *Id*., ¶ 54. Plaintiff claims the letters assumed plaintiff is having a hard time paying the alleged debt. *Id*. Plaintiff sent a

---

[1] Plaintiff also references to Exhibit 39 - 43 which do not appear to have been filed. (See Doc. No 102). Doc No. 102-10 includes Exhibits 32-37. Doc. No. 102-11 includes exhibits 44-47.

**Gordon Rees Scully Mansukhani, LLP**
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

second debt validation letter to IQ Data on or about February 5, 2021. *Id*. Plaintiff alleges IQ Data: failed to comply with § 1692g(a) after receiving Plaintiff's disputes, willfully and negligently failed to comply with §§ 1692g(a), 1692e, and 1692f of the FDCPA. *Id*. ¶¶ 53-54, 75-82.

The deadline to amend pleadings/add parties was May 3, 2022. (Doc. No. 48). On May 25, 2022, the Deputy Clerk filed a Notice of Intent to dismiss IQ Data stating that to date, there had been no proof of service filed as to IQ Data and several other defendants. (Doc. No. 57). Notice was given that this action may be dismissed without prejudice unless proof of service was filed with the clerk by June 24, 2022. *Id*. Service on IQ Data must have taken place prior to the expiration of the time limit set forth in Fed.R.Civ.P. 4(m), <u>or good cause must be shown as to why such service was not made in that period</u>. *Id*. (emphasis added). Plaintiff did not file proof of service as to IQ Data until June 27, 2023. (Doc. No. 152). Discovery closed over a year ago. (Doc. No. 48).

## III. <u>ARGUMENT</u>

### A. <u>Legal Standard for Dismissal Pursuant to Fed. R. Civ. P. 41(b) and Local Rule 41-1.</u>

Rule 41(b) of the Federal Rules of Civil Procedure allows a court to dismiss an action upon a plaintiff's failure to prosecute or comply with court rules or a court order:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule-except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

"Five factors must be considered before dismissing a case for failure to prosecute, to comply with court order, or to comply with Federal Rules of Civil Procedure: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives. Fed. R. Civ. P. 41(b)." *Applied*

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

*Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884 (9th Cir. 2019) (citing *Yourish v. Cal. Amplifier*, 191 F.3d 983, 986 (9th Cir. 1999). In addition, "the failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant from the failure." *Id*. at 524. *Morris v. Morgan Stanley & Co*., 942 F.2d 648, 651 (9th Cir. 1991). Further, "it is the responsibility of the moving party to move towards that disposition at a reasonable pace, and to refrain from dilatory and evasive tactics." *Id*. at 652. In *Morris*, the Court found that Plaintiffs "unnecessarily delayed the adjudication of the federal claims for almost two years." *Id*. "Failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant from the failure." *Anderson v. Air W., Inc*., 542 F.2d 522, 524 (9th Cir. 1976). "The law presumes injury from unreasonable delay." *Id*.

Additionally, the Local Rules allow for this Court to dismiss this matter. "All civil actions that have been pending in this court for more than 270 days without any proceeding of record having been taken may, after notice, be dismissed for want of prosecution by the court sua sponte or on the motion of an attorney or pro se party." *See* LR 41-1 Dismissal for Want of Prosecution.

**B.     Plaintiff's Lack of Prosecution is Worthy of Dismissal.**

The Amended Complaint was filed on December 29, 2021, well over 270 days ago. Local Rule 41-1 supports granting IQ Data's motion to dismiss this case. The five factors under Fed. R. Civ. P. 26(f) favor dismissal as well. First, the public interest in an expeditious resolution strongly favors dismissal. The Ninth Circuit has found that delays in complying with a court order for four months satisfies the first factor. *See Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). Plaintiff was ordered to serve IQ Data by June 24, 2022 or show good cause as to why IQ Data was not served by June 24, 2022. (Doc. No. 57). Plaintiff did not serve IQ Data until June 27, 2023 and failed to explain why he could not serve IQ Data on or before June 24 2022. Second, the Court's need to manage its docket. Plaintiff's delay and noncompliance with court's local rules and orders suggest that the second factor—the Court's need to manage its docket—favors dismissal. The discovery cutoff date was August 1, 2022

and the case has been pending since December 2021. The court would need to enter a new scheduling order to allow IQ Data to issue discovery requests to Plaintiff, issue subpoenas, and take Plaintiff's deposition. Plaintiffs should not be permitted to keep cases on the docket for years by ignoring their obligations to properly serve defendants within a reasonable amount of time, especially when the Court, like in this case, has given Plaintiff several opportunities.

Third, the risk of prejudice to IQ Data strongly favors dismissal and prejudice to IQ Data for Plaintiff's unreasonable delay is presumed. Plaintiff has done nothing other than oppose motions filed by other defendants in this case and he even filed an appeal. Plaintiff refused to respond to IQ Data to confer in good faith when IQ Data reached our regarding a motion for an extension of time. Instead, Plaintiff filed an opposition to IQ Data's motion. Since filing his Amended Complaint on December 29, 2021, Plaintiff has not prosecuted his claims against IQ Data. Plaintiff has not engaged in any discovery. And most importantly, Plaintiff has not complied with the Court's orders. IQ Data will be prejudiced by being dragged into this litigation that has been pending for so long. *See* Docket Nos. 1-161.

The fourth factor—the public policy favoring disposition of case on their merits—favors dismissal. Typically, the fourth factor is significant in civil rights cases. *See Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998). This case involves an alleged violation of the FDCPA. Moreover, Plaintiff's failure to prosecute the last 19 months with no explanation demonstrates his lack of interest in quickly disposing of his case against IQ Data on the merits.

Finally, the fifth factor—the availability of less drastic alternatives—favors dismissal. There are no other alternatives that are available in this case. Discovery is already closed. Therefore, the instant lawsuit should be dismissed based on failure to prosecute.

**C.**     **Plaintiff's Amended Complaint Should be Dismissed pursuant to 12(b)(6).**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1953, 173 L. Ed. 2d 868 (2009) (clarifying that Twombly applies to pleadings in "all civil actions"). On a motion to dismiss, except where

a heightened pleading standard applies, "[courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)) (alteration in original); *see also Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (noting that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (internal quotation marks omitted). Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *In re Stac Elecs.*, 89 F.3d at 1403 (citation omitted). Further, matters properly presented to the court, such as those attached to the complaint and incorporated within its allegations, may be considered as part of the motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989); *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1110 (N.D. Cal. 2003). "Incorporation by reference is appropriate where a plaintiff extensively refers to the extrinsic document or if the document forms the basis of the plaintiff's claim." *Clifford v. Geico Cas. Co.*, 428 F. Supp. 3d 317, 322 (D. Nev. 2019) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

### D. Plaintiff's Amended Complaint fails to allege sufficient factual allegations to support a claim under the FDCPA against IQ Data.

Plaintiff's Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted. Plaintiff alleges violations of three sections of the FDCPA (Sections 1692g, 1692e, and 1692f). FAC, ¶ 53-54, 75-80. Section 1692g(a) requires a collector to provide notice of certain information within five days of initial contact with

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

Plaintiff. 15 U.S.C. § 1692g(a) (emphasis added). Per Section 1692g(b), the consumer has thirty days after receiving this notice to dispute the validity of a debt, after which the debt collector must cease collection until the collector provides verification of the debt to the consumer. 15 U.S.C. § 1692g(b). "Sections 1692g(a) and 1692g(b) both establish that a consumer wishing to dispute a debt must do so within thirty days of receipt of initial communication." *Mayen v. New Penn Fin*., LLC, No. 17-CV-50 JLS (MDD), 2018 U.S. Dist. LEXIS 90219, at *14 (S.D. Cal. May 29, 2018). Moreover, a "tardy request for verification of the debt [does] not trigger any obligation on the part of the [debt collector] to verify the debt." *Mahon v. Credit Bureau, Inc.,* 171 F.3d 1197, 1203 (9th Cir. 1999); *see also Chavira v. United States Dep't of Educ.,* No. 1:19-cv-00538-DAD-SAB, 2022 U.S. Dist. LEXIS 67042, at *19 (E.D. Cal. Apr. 11, 2022) ("Accordingly, because there is no dispute of material fact that plaintiff did not make a written debt verification request within 30 days of receiving ICR's initial communication, ICR did not violate § 1692g.").

In this case, Plaintiff only alleges that he sent IQ Data a dispute letter. Plaintiff does not allege when his initial contact with IQ Data occurred. Plaintiff has not alleged whether and when he received written notice from IQ Data under 15 U.S.C. § 1692g(a). "This notice begins the clock within which Plaintiff must dispute the validity of each debt." (Doc. No. 7). Without allegations that IQ Data did not provide these notices—or, if it did, when—Plaintiff does not allege a colorable claim against IQ Data. *Id*. While Plaintiff references letters exchanged between Plaintiff and IQ Data in his Amended Complaint, it does not appear that Exhibits 39, 40, 41, 42, or 43 were ever filed. (Doc. No. 102). Because key factual allegations are missing and because Plaintiff did not file the letters he needs to support his allegations against IQ Data, Plaintiff's claims under section 1692g(a) and 1692g(b) fail as a matter of law.

Plaintiff also alleges a violation of Section1692e. FAC, ¶ 75, 80. Plaintiff alleges IQ Data violated Section 1692e by failing to comply with the debt collection requirements regarding the use of false and misleading representations and failing to report Plaintiff's debt validation dispute to the credit reporting agencies. *Id*., ¶ 80. However, Plaintiff fails to identify what false or misleading representations IQ Data made to Plaintiff. *Id*. The only allegations

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

against IQ Data is that IQ Data "refused to accept plaintiff's mailed debt validation letter." *Id.*, ¶ 53. Plaintiff further alleges that IQ Data has refused to respond to Plaintiff's dispute letter. *Id*. If Plaintiff claims that IQ Data never responded to him, then it is impossible for IQ Data to have made misleading statements. As for the January 29, 2021 letter, Plaintiff alleges IQ Data sent notices "with insulting language assuming plaintiff is having a hard time paying an alleged debt." FAC, ¶ 54. Plaintiff fails to explain what was included in the letter that was misleading and fails to attach the letter to his Complaint. Plaintiff's alleged violation of Section 1692e must be dismissed.

Lastly, Plaintiff alleges IQ Data failed to use fair means to collect or attempt to collect a debt as required by Section 1692f. FAC, ¶ 80. Plaintiff has failed to allege any facts showing that IQ Data engaged in any unfair or unconscionable means to collect or attempt to collect a debt. Courts in the Ninth Circuit have recognized that a cause of action is deficient under § 1692f "if it does not identify any misconduct beyond which plaintiffs assert violate other provisions of the FDCPA." *Marshall v. CBE Grp., Inc.*, No. 2:16-cv-02406-GMN-NJK, 2018 U.S. Dist. LEXIS 55223, at *24 (D. Nev. Mar. 30, 2018) (quoting *Thomas v. Loomis-Therrien*, No. 5:14-cv-00979-CAS-JC, 2014 U.S. Dist. LEXIS 148999, 2014 WL 5335913, at *6 (C.D. Cal. Oct. 20, 2014)); *see Amina v. WMC Mortg. Corp.*, No. 10-cv-00165-JMS-KSC, 2011 U.S. Dist. LEXIS 52668, 2011 WL 1869835, at *16 (D. Haw. May 16, 2011) ("[A] plaintiff must base violations of §§ 1692e & 1692f on conduct other than that already identified in other sections of the FDCPA."); *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1461 n.10 (C.D. Cal. 1991) ("Congress employed general language to 'enable the courts, where appropriate, to proscribe . . . improper conduct which is not specifically addressed.") (citation omitted).

In this case, Plaintiff's allegations against IQ Data all stem from its alleged refusal to accept plaintiff's dispute letters and failure to validate the debt. There are no allegations regarding IQ Data's efforts to collect the debt which demonstrate IQ Data used unfair means to attempt to collect the debt from Plaintiff.

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

IV.    **CONCLUSION**

For the foregoing reasons, Moving Defendant I.Q. Data International, Inc. requests that

the Court dismiss this case in its entirety with prejudice and award Defendant all further relief

to which they are justly entitled.

Dated: August 8, 2023                                    **GORDON REES SCULLY MANSUKHANI**

                                                         By:  *s/Sean P. Flynn*
                                                              Sean P. Flynn
                                                              Attorneys for Defendant
                                                              IQ DATA INTERNATIONAL, INC.

**Gordon Rees Scully Mansukhani, LLP**
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

1276934/80345354v.2

**Gordon Rees Scully Mansukhani, LLP**
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2023 I presented the foregoing MOTION FOR **DEFENDANT IQ DATA INTERNATIONAL, INC.'S MOTION TO DISMISS PURSUANT TO FRCP 41(B) AND 12(B)(6) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. Additionally, this document shall be served to Plaintiff via email and U.S. Mail (Certified Mail/Return Receipt Requested) to:

Blanton Banks II
3965 15th Street
Ecorse, Michigan, 48229
bbanks24@protonmail.com
Plaintiff

By:   *s/Sean P. Flynn*
        Sean P. Flynn
        Attorney for Defendant
        IQ DATA INTERNATIONAL, INC.

Blanton Banks II
3965 15th Street
Ecorse, Michigan, 48229
(510) 951-9505
bbanks24@protonmail.com

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Blanton Banks, II, | Case # 2:21-cv-01580-CDS-DJA |
| Plaintiff, | Hon. Cristina D. Silva |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S FRCP 12(b)(6) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
| TRANS UNION LLC, et al., | |
| Defendants, | |

_____

COMES NOW, Plaintiff Blanton Banks, II, In Propia Persona and hereby respectfully submits his PLAINTIFF'S OPPOSITION TO DEFENDANT'S FRCP 12(b)(6) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT in this above case.

This Motion is made and based upon all of the papers, pleadings and exhibits in this particular case above. The plaintiff files this opposition as granted by the court and for such other relief this Court may entitle him to.

IQDataER-50

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Plaintiff, Blanton Banks, II, submits the following Memorandum of Points and Authorities in support of his opposition to Defendant I.Q. Data International's ("IQ Data" and/or "IQDI" and/or "Defendant") Motion to Dismiss Plaintiff's Amended Complaint (the "Motion"). The Plaintiff's Amended Complaint (the "Complaint"), not only meets the standards governing the form of a complaint contemplated by Federal Rule of Civil Procedure 8(a), but this Court has subject matter jurisdiction in this matter, and the Complaint sufficiently alleges a breach of duty, consumer harm and damage. Further, the Defendant's Motion is broad and diverse, and fails at making a substantive argument of personal jurisdiction law. Accordingly, defendant's motion should be denied.

## I. INTRODUCTION

The Motion filed by Defendant IQDI on August 8, 2023 (ECF Dkt. #163), should be denied for several reasons.  First, the Plaintiff filed his Amended Complaint on December 29, 2021 (ECF Dkt. # 12) and served a copy of the filed Complaint to IQDI via U.S. Postal Mail on or about January 1, 2022. The Defendant in its Motion to Dismiss fails to provide any supporting evidence to validate its claims in its entirety, including but not limited to, failing to disclose whether or not IQDI responded, verified and validated an alleged debt disputed by Plaintiff on or about December 12, 2020 in his Debt Validation Dispute Notice ("DVDN").  Due to Defendant's failure to produce any substantive evidence or a fact-witness containing first-hand knowledge of this matter, coupled with the foregoing reasons, this court should find Defendant's motion to be hearsay.

In addition to this, since December 29, 2021 until this present date, there has been more than 165 pleadings, notices and/or orders entered into the Court's docket, which IQDI has been noticed and served a copy of all required pleadings and continued to not appear and defend in this Plaintiff action after being noticed with the Plaintiff's amended complaint. At this point, IQDI had ample time to file an answer, motion to dismiss and/or appear and defend, which they failed to do in good faith as they requested in their motion for an extension of time to file an answer (ECF Dkt. 156) and instead file a dispositive motion to dismiss. Further, through the Defendant's own omissions, they admit that they were notified that there was an action pending

IQDataER-51

against IQDI and they make a bold attempt in swaying this Court in their Motion to believe Plaintiff's Amended Complaint was not filed with exhibits, contrary to what this Court's CM/ECF Docket clearly acknowledges (ECF Dkts. 1 and 13). Further, the Motion which the Defendant submitted on August 8, 2023 (ECF Dkt. #163), was filed untimely pursuant to Fed. R. Civ. P. 12(a)(1)(A) and filed after, and only after, Plaintiff's Motion Requesting Entry of Default against IQDI, Trans Union LLC, US Auto Credit Purchase and Aargon Agency Inc, (See Exhibit A), which this Court still has not entered on the record in the above-captioned case. Furthermore, the Defendant failed to Answer and assert any Affirmative Defenses (emphasis added) to the Original Complaint and the Amended Complaint as required pursuant to Fed. R. Civ. P. 12(a), therefore waiving its right to assert any affirmative defenses at all.  The Defendant's Motion focuses on Fed. R. Civ. P. 12(b)(6), which states: "failure to state a claim upon which relief can be granted"; and Fed. R. Civ. P. 41(B), which states: "if the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits". Furthermore, and the most important issue, Defendant strategically excludes key elements in the evidence on record, through their own omissions and fail to timely appear and defend. Plaintiff has no doubt that discovery will, in fact, show that IQDI, willfully and negligently violated the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 et seq., the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and Plaintiff's First Amendment Rights and are presently are still doing so, which is a violation of 15 U.S.C. § 1681s-2. Plaintiff therefore has the right to pursue this action for himself and it would be abuse of discretion and gross negligence of This Court to grant the Defendant's Motion.

## II.  STATEMENT OF FACTS

**A.**     **Plaintiff and defendant are in agreement on the following facts:**

1.) IQ Data is and was knowledgeable that they are a defendant in this Plaintiff action filed with attached exhibits on August 26, 2021 (ECF Dkt. 1);

2.) On December 29, 2021, Plaintiff's Amended Complaint was filed with attached exhibits. (ECF Dkt. 12 and 13);

3.) Plaintiff's Amended Complaint was not screened until December 14, 2022 (Dkt. 102);

4.) On December 12, 2020, Plaintiff sent IQ Data a debt validation dispute letter pertaining to an account IQ Data was reporting on his Trans Union, Experian and Equifax credit reports;

5.) On December 18, 2020, IQ Data refused to accept plaintiff's debt validation dispute letter that was mailed via Registered Mail. (Dkt. , Exhibit);

6.) The erroneous IQ Data account is still reporting on Plaintiff's credit reports with credit reporting agencies Trans Union, Experian and Equifax;

7.) IQ Data on January 29, 2021 and January 30, 2021, sent Plaintiff debt collection notices making presumptions to characterize and generalize Plaintiff, which Plaintiff found to be insulting, considering that IQ Data refused to accept Plaintiff's Debt Validation Dispute Notice ("DVDN") sent to IQ Data on December 18, 2020 to make sure this alleged debt didn't arise out of a bonafide error. (ECF Dkt. 13, Exhibit 41);

8.) Plaintiff sent a second DVDN to IQ Data on or about February 5, 2021;

9.) IQ Data failed to comply with 15 U.S.C. § 1692g(a) after receiving Plaintiff's disputes, willfully and negligently failed to comply with 15 U.S.C. § 1692g(a), 15 U.S.C. § 1692e, and 15 U.S.C. § 1692f of the FDCPA;

10.) IQ was served the Amended Complaint and summons after Plaintiff showed good cause to the Court pursuant to Fed r. Civ. P. 4(c)(3);

11.) Pursuant to Magistrate Judge Daniel P. Albregts Order (ECF Dkt. 88) there was a timeline governing discovery (ECF Dkt. 48) and discovery has now been closed for over a year; and

12.) IQDI is a debt collector pursuant to the FDCPA, 15 U.S.C. 1692a(6).

# III.  ARGUMENT

## A.    Standards of review.

A jurisdictional attack under Federal Rule of Civil Procedure 12(b)(1) can prevail if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). However, where jurisdictional facts are intertwined with the merits, defendants must proceed under either Rule 12(b)(6) or Rule 56, and the court should resolve relevant factual disputes only after discovery. *Augustine v. U.S.*, 704 F.2d 1074, 1079 (9th Cir. 1983) (emphasis added).

Under Rule 12(b)(2) of the Fed. R. Civ. P., the plaintiff bears the burden of establishing the court's personal jurisdiction over a defendant. *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir. 1984). In assessing whether personal jurisdiction exists, the court may consider evidence presented in affidavits or order discovery on jurisdictional issues. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). "When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (internal citations omitted). A plaintiff can make this prima facie showing by producing admissible evidence which, if believed, would be sufficient to establish personal jurisdiction. See *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (internal citations omitted). Even if a plaintiff makes a prima facie showing, it does not necessarily mean that the case proceeds to the merits; rather, if the pleadings and submitted materials raise "disputed questions of fact with regard to jurisdiction," the district court can exercise its discretion to hold a preliminary hearing in order to resolve the dispute. *Data Disc, Inc.*, 557 F.2d at 1285. But, if the "jurisdictional facts are intertwined with the merits," such that "a decision on a jurisdictional issue is dependent on the merits . . . . [i]t is preferable that this determination be made at trial, where a plaintiff may

IQDataER-54

present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits." Id. at 1285 n.2 (internal citations omitted). The Supreme Court has not taken a major personal jurisdiction case for over twenty years. See Robert J. Condlin, *"Defendant Veto" or "Totality of the Circumstances"? It's Time for the Supreme Court to Straighten Out the Personal Jurisdiction Standard Once Again*, 54 Cath. U. L. Rev. 53, 147 (2004) ("It has been twenty years since the decision in *Burger King*, the last of the Court's major personal jurisdiction decisions, and confusion and disagreement are the order of the day."). See *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993) ("[A] categorical approach is antithetical to [the Supreme Court's] admonishment that the personal jurisdiction inquiry cannot be answered through the application of a mechanical test but instead must focus on the relationship among the defendant, the forum, and the litigation within the particular factual context of each case….[This] requires a difficult case-specific analysis.").

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true, construe the pleadings in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the plaintiff. *Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986 (9th Cir. 2011). Documents referred to in the complaint may be considered without converting the Rule 12(b)(6) motion into a motion for summary judgment, but any ambiguity in the documents must be resolved in favor of the plaintiffs. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005); *Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995). Plaintiffs succeed in stating a claim for relief by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, it is requested that the court treat a Pro Per litigant with a certain level of tolerance in procedure and motions. In reviewing a pro per or pro se litigant's complaint for dismissal, the court must read the complaint less stringent than it would an attorney's. See *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Madyun v. Thompson*, 657 F.2d 868, 876 (7th Cir. 1981). Pro se prisoners are not prejudiced by the filing of handwritten materials. See *Twyman v. Crisp*, 584 F.2d 352, 358 (10th Cir. 1978) (per curiam); *Tarlton v. Henderson*, 467 F.2d 200,201 (5th Cir. 1972) (per curiam). If the complaint misapprehends the claim appropriate to its grievance, the trial court must re-characterize the

claim. See *Madison v. Tahash*, 359 F.2d 60, 61 (8th Cir. 1966) (construing application for appointment of counsel as one for a certificate of probable cause); *United States ex rel. Johnson v. Chairman, N.Y. State Bd. of Parole*, 363 F. Supp. 416, 417 (E.D.N.Y. 1973) (application for order mandating parole board to state reasons for denying parole may be treated as habeas corpus petition), *aff'd*, 500 F.2d 925 (2d Cir.), vacated and remanded, 419 U.S. 1015 (1974). But see *Mundy v. Winston*, 457 F. Supp. 678, 680 (E.D. Va. 1978) "pro se litigant always must have the ultimate decision to elect what claim he will pursue." Pro Per complaints should not be dismissed for failure to state a claim unless it is apparent that they are unsupportable in law or fact. See *Brandon v. Dist. of Columbia Bd. of Parole*, 734 F.2d 56, 62 (D.C. Cir. 1984), cert, denied, 469 U.S. 1127 (1985); *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983); *Bayron v. Trudeau*, 702 F.2d 43, 45 (2d Cir. 1983). Pro Per complaints cannot be construed inflexibly so as to require dismissal if the complaint fails to request precise appropriate relief. See *DeWitt v. Pail*, 366 F.2d 682, 684-85 (9th Cir. 1966); *Downing v. New Mexico Supreme Court*, 339 F.2d 435, 436 (10th Cir. 1964) (per curiam); *Holsey v. Bass*, 519 F. Supp. 395, 402-03 (D. Md. 1981), *aff'd*, 712 F.2d 70 (4th Cir. 1983). See generally *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam) (pro per pleadings held to less stringent standards than those applied to attorneys). In response to the difficulty Pro Per and Pro Se litigants have in recognizing summary judgment obligations, some courts have expanded the liberality traditionally demonstrated toward such pleadings. See, e.g., *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam).

Under Federal Rule of Civil Procedure 41(b), the court may move to dismiss a case for a plaintiff's failure to prosecute or comply with court rules or a court order. Federal Rule of Civil Procedure 4(m) provides: If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. Fed. R. Civ. P. 4(m). "[U]nder Rule 4(m), if the district court concludes there is good cause for plaintiff's failure to serve within [the time set by Rule 4(m)], it shall extend the time for service.

If plaintiff fails to show good cause, the court still may extend the time for service rather than dismiss the case without prejudice." *Kurka v. Iowa Cty., Iowa*, 628 F.3d 953, 957 (8th Cir. 2010) (quoting *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996)). "To warrant a discretionary extension, the plaintiff must establish excusable neglect." *Id.*

Plaintiff contends that the Defendant erroneously assumes that Plaintiff did not prosecute IQDI in this present action, however, this Court has already considered the question of whether Plaintiff has established good cause for any failure to timely serve Defendant. Furthermore, the Defendant, by its own omissions, contradicts itself by being in agreement with Plaintiff in his assertions that his Amended Complaint was never screened until ECF Dkt. 102 and that no summons had been issued by the Court until ECF Dkt. 146 due to the Courts deviation of Fed. R. Civ. P. 4(c)(3) as a matter of service of a complaint and summons for a litigant who has been granted In Forma Pauperis status, which Plaintiff has been granted. Further, Plaintiff contends that there is no definition of good cause in Rule 4(m) or Rule 41(b), and "courts have not given conclusive meaning to the phrase." *Kurka*, 628 F.3d at 957 (citing 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137 (3d ed. 2002)). "A showing of good cause requires at least 'excusable neglect'—good faith and some reasonable basis for noncompliance with the rules." Id. (quoting *Adams*, 74 F.3d at 887). Courts have provided a few examples of situations where good cause is likely to be found:

> [1] the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, [2] the defendant has evaded service of the process or engaged in misleading conduct, [3] the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or [4] the plaintiff is proceeding pro se or in forma pauperis.

*Id.* (quoting Wright & Miller, *Federal Practice & Procedure* § 1137). "In determining whether good cause exists, the district court must focus primarily 'on the plaintiff's reasons for not complying with the time limit in the first place.'" *Id.* at 958 (quoting *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997)). "Where a defendant requests dismissal for insufficiency of service under Rule 12(b)(5), the plaintiff bears 'the burden of proving proper service,'" *Franchini v. Bangor Publ'g Co.*, No. 1:18-cv-00015-GZS, 2019 U.S. Dist. LEXIS 151315, at *10 (D. Me. Sept. 5, 2019) (quoting *Rivera-Lopez v. Mun. of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992)).

# IV.  DISCUSSION

## A. Dismissal of the Complaint Pursuant to Fed. R. Civ. P. 41(b) and Fed. R. Civ. P.12(b)(6).

"A Rule 41(b) dismissal must be supported by a showing of unreasonable delay." *Omstead v. Dell, Inc.,* 594 F.3d 1081, 1084 (9th Cir. 2010) (internal citation and quotation marks omitted). In determining whether a Rule 41(b) dismissal is appropriate, the court must weigh the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." Id. (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir.1986)). Dismissal is appropriate "where at least four factors support dismissal…" *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (internal citation and quotation marks omitted). Here, none of the five *Henderson* factors weigh in favor of dismissal. "The first two factors—the public interest in expeditious resolution of litigation and the Court's need to manage its docket—relate to the "efficient administration of judicial business for the benefit of all litigants with cases pending." *Nealey v. Transportacion Maritima Mexicana, S.A.,* 662 F.2d 1275, 1279 (9th Cir. 1980). This does not apply because Plaintiff did not fail to respond to the defendant's motion to dismiss and properly served the Defendant by its own omissions and both Plaintiff and Defendant are in agreement that Plaintiff has not delayed adjudication of this action due to the fact that Plaintiff's Amended Complaint was not screened until December 14, 2022 (ECF Dkt. 102). As for the third factor, "the pendency of the lawsuit is not sufficiently prejudicial itself to warrant dismissal," *Yourish v. California Amplifier*, 191 F.3d 983, 991 (9th Cir. 1999) Plaintiff reasonably has been prosecuting this action since its inception and complying with the Court's orders as a Pro Se litigant who's been granted In Forma Pauperis status by this Court pursuant to the Federal Rules of Civil Procedure and the Local Rules of Practices for the District of Nevada, therefore outweighing any favor of a dismissal. The fourth factor is the availability of less drastic sanctions. The Court cautioned Plaintiff that failure to serve the defendants would result in dismissal of this action, which by its own omissions, the Defendant in its motion to dismiss has admitted that it was properly served. The last factor, which favors disposition on the merits, fails to weigh against dismissal. Pro Per complaints should not be dismissed for failure to state a claim unless it is apparent that they are unsupportable in law or fact. See *Brandon v. Dist. of Columbia Bd. of Parole*, 734 F.2d 56, 62 (D.C. Cir. 1984), cert. denied, 469 U.S. 1127 (1985); *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983); *Bayron v. Trudeau*, 702 F.2d 43, 45 (2d Cir. 1983). Pro Per complaints cannot be construed inflexibly so as to require dismissal if the complaint fails to request precise appropriate relief. See *DeWitt v. Pail*, 366 F.2d 682, 684-85 (9th Cir. 1966); *Downing v. New Mexico Supreme Court*, 339 F.2d 435, 436 (10th Cir. 1964) (per curiam); *Holsey v. Bass*, 519 F. Supp. 395, 402-03 (D. Md. 1981), *aff'd*, 712 F.2d 70 (4th

Cir. 1983). See generally *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam) (pro per pleadings held to less stringent standards than those applied to attorneys).

Additionally, several pleadings and proceedings of record have been taken within a 270 day time frame, therefore any dismissal pursuant to LR 41-1 would be inappropriate by the Court. Defendant cantankerously attempts to sway this Court into believing that Plaintiff did not adequately prosecute this case, however there is an Order which supersedes ECF Dkt. 57, granting Plaintiff a different timeframe to serve IQDI on the basis that the federal government is presently facing a financial crisis and does not have the resources to serve the Defendants in this action pursuant to Fed. R. Civ. P. 4(c)(3), as Plaintiff should have been afforded after being granted In Forma Pauperis status (ECF Dkt. 7). Plaintiff asserts that by its own omissions, IQDI again, contradicts itself and agrees that Plaintiff in fact has prosecuted this case diligently pursuant to the <u>Federal Rules of Civil Procedure</u> and the <u>Local Rules of Practices for the District of Nevada</u>.

**B.     Plaintiffs' claims are sufficiently stated.**

Defendant moves to dismiss the Plaintiff's Amended Complaint for a failure to state a claim. Defendant's Motion filed August 8, 2023, (Dkt. # 163), argues that the Complaint lacks any example of injury; and lacks a factual basis. This argument—and indeed Defendant's insistence on allegations of "failure to state a claim" throughout their motion to dismiss—fundamentally misunderstands both Plaintiff's claims and the Court's authority to prospectively enjoin an ongoing policy and practice of unconstitutional conduct. Defendants cite no valid authority to support the proposition that these or any other supposedly missing ingredients are, in fact, required in the Plaintiff's Amended Complaint. Federal Rule of Civil Procedure 8(a) states that a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that "[e]ach allegation must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). The Supreme Court has explained that a complaint need only "give the defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *accord Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15 (1987) (under Federal Rule 8, claimant has "no duty to set out all of the relevant facts in his complaint"). "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Epos Tech.*, 636 F. Supp.2d 57, 63 (D.D.C. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

IQDataER-59

Thus, the Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than evidentiary facts. Accordingly, Defendant's Motion would be considered properly filed only "where a plaintiff's complaint is 'unintelligab[le] (sic),' not where a complaint suffers for 'lack of detail.'" *Epos Tech.*, 636 F. Supp. 2d at 63 (citations omitted). The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims. *See Swierkiewicz*, 534 U.S. at 512. Indeed, courts have found that if the information sought by the motion is obtainable through discovery, the motion should be denied. *See, e.g., Towers Tenant Ass'n v. Towers Ltd. P'ship*, 563 F. Supp. 566, 569 (D.D.C. 1983) (denying motion for a more definite statement because details such as "dates, times, names and places" are "the central object of discovery, and need not be pleaded").

Here, the Plaintiff's Complaint is not unintelligible or confusing and does not violate Federal Rule of Civil Procedure 8(a)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." The Complaint clearly has a more than sufficient statement of the claim and more than meets the requirement that it be "short and plain." For example, the Complaint specifically identifies the actions of Defendant and how those actions are wrongful, negligent, and willful and violate the FDCPA and the FCRA, which are congressional acts.

It describes in detail the facts of Federal Regulations that the Defendant is required to abide by pursuant 15 U.S.C. § 1692 et seq. as a debt collector. (Amended Compl. ¶ 53-54). It describes how IQDI continued to violate the Federal Regulations by tacit acquiescence because validation was requested, but was never completed as shown in Exhibits 39-43 in Dockets 1 and 13, and how Defendant failed to comply with 15 U.S.C. § 1692 et seq. and 15 U.S.C. § 1681 et seq. several times. It guides IQDI to the evidence on record showing that Plaintiff, in fact, noticed IQDI's Treasurer, Beech Turner, with an opportunity to cure IQDI's default in the debt validation dispute process, which Defendant continued to acquiesce in the matter. It describes how the Debt Collecting Defendant continues to report the invalidated and inaccurate disputed item on Plaintiff's credit reports with Trans Union, Experian and Equifax willfully, after negligently failing to validate and verify the alleged. It describes how other Debt Collecting Defendants refused to remove anything from Plaintiff's credit report as well and did not do so

until after this Action was brought by the Plaintiff. (Amended Compl., Dkt. # 12, Pg. 1-16) (emphasis added). It describes how the Plaintiff, himself, contacted IQDI in an attempt to have invalidated and inaccurate and unverified information corrected to assure maximum possible accuracy of the alleged debt account on his credit report but instead faced IQDI's refusal notice stamped on the outside of his properly served DVDN via registered mail (See Exhibit B, Pg 2). It describes how IQDI, after and only after refusing to accept Plaintiff's DVDN, it for the first time initially contacted the Plaintiff on January 29 and January 30, 2021 (See Exhibit B, Pgs. 3-4), attempting to continue the collection of an alleged debt it willfully refused to validate.    It describes how the actions or inactions of the Defendant's violations of the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA") has caused, is causing and will cause damages to Plaintiff including, but not limited to, the denial of credit, damage to Plaintiff's reputation, worry, distress, frustration, embarrassment, and humiliation. (Amended Compl., Dkt. # 12, ¶ 67 , ¶ 72, ¶ 76, ¶ 81). In addition to this, this Court has jurisdiction over this matter as Plaintiff brings this action in Federal Court for Defendant's violations of Federal Regulations and Congressional Acts.

Finally, the Amended Complaint clearly puts IQDI on fair notice of the charges against them. Defendant undisputedly agrees and even deems this as facts in its motion to dismiss (ECF Dkt. 163, Pg. 2, ¶s 14-26 and Pg. 3 ¶s 1-13). Specifically, the Amended Complaint charges that Defendant violated multiple sections of the FCRA Act, 15 U.S.C. § 1681 et seq., including but not limited to, (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports (15 U.S.C. § 1681e(b)), and (b) breaching its duty as a furnisher of information to credit reporting agencies pursuant to 15 U.S.C. 1681s-2 et seq., and multiple sections of the FDCPA Act, 15 U.S.C. § 1692 et seq., including but not limited to, (a) failing to provide plaintiff written notice after initial communication within five (5) days pursuant to 15 U.S.C. § 1692g(a),  (b) failing to comply with the debt collection requirements regarding the use of false and misleading representations pursuant to 15 U.S.C. § 1692e, (c) failing to report plaintiff's debt validation dispute as disputed to the credit reporting agencies as required pursuant to 15 U.S.C. § 1692e, and (d) failing to use fair and conscionable means to collect or attempt to collect a debt, as required by 15 U.S.C. § 1692f.

**C.      Defendant's allegations lack supportive evidence and Plaintiff has alleged actual harm.**

In its Motion, IQDI fails to provide any substantive documentation or discoverable evidence to support their misleading assertions to this Court on whether or not they, in fact, provided Plaintiff verification and validation within thirty (30) days on his December 12, 2020 dispute notice as required pursuant to 15 U.S.C. § 1692 et seq., including but not limited to 15 U.S.C. § 1692g. Plaintiff asserts that Verification is sworn testimony. This testimony can be in a deposition, on the witness stand, or an affidavit, sworn under penalty of perjury and under oath, and notarized (a sufficiency of pleadings). Validation is the documentation supporting their testimony. Plaintiff's evidence on the record, (Exhibits 39-43, Plaintiff's Amended Compl.) supports that the Defendant failed to comply with verifying and validating the alleged debt. In addition to this, Defendant fails to produce with its motion to dismiss, any purchase agreement to prove they actually own the alleged debt they are attempting to collect and claiming Plaintiff owes that they are still reporting on Plaintiff's credit reports. They undisputedly agree by tacit acquiescence that they are, in fact, a debt collector pursuant to the FDCPA. Further, IQDI fails to provide a fact-witness containing first-hand knowledge regarding this alleged debt and fails to produce and written contract between Plaintiff and IQDI. Plaintiff's evidence on the record, (Exhibits 39-43, Plaintiff's Amended Compl.) and Defendant's motion to dismiss (ECF Dkt. 163) supports this. Moreover, The Plaintiff's Amended Complaint (ECF Dkt. #12) alleges consumer harm and injury in paragraphs 53-54 and 74-82.

## III.  CONCLUSION

In short, the Plaintiff's Amended Complaint fully complies with the pleading requirements of Federal Rules of Civil Procedure 8(a) and provides Defendants fair notice of the charges against them and the grounds therefore. Only fact and full discovery will allow for the development of a sufficient evidentiary record for this Court to resolve these factual disputes, and many others that are likely to arise. *See Robertson*, 679 F.3d at 292 (explaining that the "rule of reason inquiry is best conducted with the benefit of discovery"). The Amended Complaint's allegations combined with I.Q. Data International's failure to comply with federal regulation and congressional acts and to provide any substantive evidence to support its motion to dismiss, leave no room for doubt that this case cannot be resolved on the pleadings. The Court should

IQDataER-62

deny the motion to dismiss for failure to state a claim and lack of prosecution, and grant plaintiff a default as IQDI has waived its right to assert any affirmative defenses by filing its dispositive motion to dismiss, including but not limited to, the full relief sought in his amended complaint.

DATED this 22nd day of August 2023.

By: /s/ Blanton Banks II_____
    Blanton Banks II
    bbanks24@protonmail.com
    Telephone: (510) 951-9505
    In Propia Persona

IQDataER-63

# EXHIBIT A



# EXHIBIT B

IQDataER-66

| Registered No. RF138194666US | | Date Stamp |
|---|---|---|
| Reg. Fee **$0.55** | | 0020 |
| Handling Charge **$13.20** | Return Receipt | 07 |
| Postage **$0.00** | Restricted Delivery | DEC 2 2020 |
| Received by **$0.00** | | |
| Customer Must Declare Full Value **$0.00** | 12/12/20 | With Postal Insurance up to $25,000 is included International Indemnity is limited. (See Reverse) |

**RF 138 194 666 US**

EXHIBIT 39

FROM  Blanton Banks II
10130 Quilt Tree St
Las Vegas, NV, 89183

TO  IQ DATA INTERNATIONAL
P.O. BOX 98266
EVERETT, WA, 98213

PS Form 3806,   **Receipt for Registered Mail**   Copy 1 - Customer
January 2014 (7530-02-000-9051)       (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

RETAIN THIS RECEIPT IN CASE OF LOSS OR DAMAGE TO THE MAIL ITEM

Refused to accept. Returned to Sender.
12/16/2020 at 11:19 am

Page **18** of **26**



## I.Q. Data International, Inc.

P.O. Box 340, Bothell, Washington 98041-0340 •21222 30th Drive SE, Suite 120, Bothell, WA 98021-7012
Hours: Monday-Friday 8AM TO 5PM PST • Toll Free 888-248-2509 or 425-609-2150 Fax 425-609-2104

January 29, 2021

RE: Creditor: THE CLUBS AT RHODES RANCH (NV)

| | | TX2-Account #: | 0008555645 |
|---|---|---|---|
| Principal Due | $1836.13 | | |
| Interest Due | $362.80 | | |
| Total Due | $2198.93 | | |

EXHIBIT 41

Dear BLANTON L II BANKS

Past experience has shown that most people who allow bad debt to pile up do so because they can't afford to pay the debt. Since many people are having hard times due to the recent economic trends, we would like to help, by giving you an incentive to pay off your obligation with our office. In an effort to help you resolve this matter we are willing to offer you the following incentive(s) to pay your debt:

1)   We will allow you to settle the account for up to 40% off the total due if paid by **February 24, 2021**.
OR

2)   We will allow you to settle the account for up to 30% off the total due if paid by **March 26, 2021**.
OR

3)   If you cannot take advantage of the settlement proposal, we will take payments LOWER than normally approved to help you satisfy your obligation.

Please note that your account is currently being reported to the credit reporting agencies. We will report all payments made on this account to the credit reporting agencies.

**In order to secure any of these offers, please contact one of our Professional Collection Specialists before March 26, 2021 at 1-888-248-2509. We are not obligated to renew these offers. If you need additional time to respond to these offers, please contact us.**

Sincerely,
Account Representative
888-248-2509

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose. Your outstanding principal balance will accrue interest at a rate of 005.25 percent per annum.

As of the date of this letter, you owe $2198.93. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you before depositing the payment for collection. For further information, write the undersigned or call 1-888-248-2509.

***Detach Lower Portion and Return with Payment***

| Card number plus 3 or 4-digit security code (on back of card) | | Code One |
|---|---|---|
| Cardholder Name | EXP. DATE / | |
| Cardholder Signature | AMOUNT $ | |

IQD
PO Box 1280
Oaks PA 19456-1280
ADDRESS SERVICE REQUESTED

January 29, 2021

I.Q. Data International, Inc.
P.O. Box 340
Bothell, WA 98041-0340

TX2
BLANTON L II BANKS
10130 Quilt Tree St
Las Vegas NV 89183-4243

Account # 0008555645
Total Due: $2198.93

## I.Q. Data International, Inc.

P.O. Box 340, Bothell, Washington 98041-0340 •21222 30th Drive SE, Suite 120, Bothell, WA 98021-7012
Hours: Monday-Friday 8AM TO 5PM PST • Toll Free 888-248-2509 or 425-609-2150 Fax: 425-609-2104

January 30, 2021

RE: Creditor: THE CLUBS AT RHODES RANCH (NV)

| | | |
|---|---|---|
| Principal Due | $1836.13 | TX2-Account # 0008555645 |
| Interest Due | $362.80 | |
| Total Due | $2198.93 | |

**EXHIBIT 41**

Dear BLANTON L II BANKS

Past experience has shown that most people who allow bad debt to pile up do so because they can't afford to pay the debt. Since many people are having hard times due to the recent economic trends, we would like to help. by giving you an incentive to pay off your obligation with our office. In an effort to help you resolve this matter we are willing to offer you the following incentive(s) to pay your debt.

    1)   We will allow you to settle the account for up to 40% off the total due if paid by **February 24, 2021**.
             OR

    2)   We will allow you to settle the account for up to 30% off the total due if paid by **March 26, 2021**.
             OR

    3)   If you cannot take advantage of the settlement proposal, we will take payments LOWER than normally approved to help you satisfy your obligation.

Please note that your account is currently being reported to the credit reporting agencies. We will report all payments made on this account to the credit reporting agencies.

**In order to secure any of these offers, please contact one of our *Professional Collection Specialists* before March 26, 2021 at 1-888-248-2509. We are not obligated to renew these offers. If you need additional time to respond to these offers, please contact us.**

Sincerely,
Account Representative
888-248-2509

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose. Your outstanding principal balance will accrue interest at a rate of 005.25 percent per annum.

As of the date of this letter, you owe $2198.93. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you before depositing the payment for collection. For further information, write the undersigned or call 1-888-248-2509.

***Detach Lower Portion and Return with Payment***

| | |
|---|---|
| Card number plus 3 or 4-digit security code (on back of card) | |
| Cardholder Name | EXP. DATE / |
| Cardholder Signature | AMOUNT $ |

IQD
PO Box 1280
Oaks PA 19456-1280
ADDRESS SERVICE REQUESTED

January 30, 2021

TX2
BLANTON L II BANKS
10130 Quill Tree St
Las Vegas NV 89183-4243

I.Q. Data International, Inc.
P.O. Box 340
Bothell, WA 98041-0340

Account # 0008555645
Total Due: $2198.93

IQDataER-70

EXHIBIT 42

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

7020 1810 0001 4377 9954

Certified Mail Fee

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)
☐ Return Receipt (electronic)
☐ Certified Mail Restricted Delivery
☐ Adult Signature Required
☐ Adult Signature Restricted Delivery

Postmark
Here

sent on
2/5/2021

Postage

Total Postage and Fees

Sent To  IQ DATA INTERNATIONAL INC
Street and Apt. No.  21222 30th DE SE, Ste. 120
City, State, ZIP+4  Bothell, WA, 98021

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions



REQUEST FOR DEBT VALIDATION

FINAL NOTICE

Certified Mail No. 7020 1810 0001 4377 9954

Blanton Leon Banks II, Authorized Representative for
BLANTON LEON BANKS II xxx-xx-5169
10130 Quail Tree St
Las Vegas, Nevada, 89183

I.Q. DATA INTERNATIONAL, INC
ATTN: BEECH TURNER, Treasurer
21222 30th Dr SE
SUITE 120
BOTHELL, WA, 98021

February 3, 2021

RE: I.Q. DATA INTERNATIONAL, INC. REFERENCE NO. 0008555645

REQUEST FOR DEBT VALIDATION
PURSUANT TO FAIR DEBT COLLECTION
PRACTICES ACT, 15 USC §1681, ET SEQ

FINAL NOTICE

Attention BEECH TURNER, Treasurer

I sent a formal debt validation letter pursuant to 15 USC § 1692 et seq. to your company, I.Q. DATA INTERNATIONAL, INC, via registered mail (receipt no. RF 138 194 666 US) on behalf of BLANTON LEON BANKS II xxx-xx-5169 on December 12, 2020. Upon checking the tracking number I noticed that you all refused to accept the mailed debt validation letter on December 18, 2020 at 3:17pm PST.

I.Q. DATA INTERNATIONAL, INC has acquiesced in the matter by not only failing to respond within the 30 days allowed by law upon receiving the validation of debt letter, but also by refusing to accept receipt of the debt validation letter. That is I.Q. DATA INTERNATIONAL, INC refusal to grant a remedy. In addition to this, you have failed to answer the deposed questions that were provided to you requesting that you not verify but, validate this alleged debt (See attached original validation of debt letter)

Furthermore, I.Q. DATA INTERNATIONAL, INC continued to attempt to collect on this alleged debt with a letter on January 30, 2021 that states you, I.Q. DATA INTERNATIONAL, INC, are acting on behalf of another entity to pursue collection on this alleged debt. It is being requested that you provide a copy of your IRS Form-2848 proving you have the right to collect this alleged debt for that entity

I am also requesting that you provide a copy of the Notice of Transfer letter for the alleged debt you are attempting to collect on behalf of BLANTON LEON BANKS II xxx-xx-5169. Additionally, you still need to provide the answers to all of the deposed questions in the original debt validation letter that was sent to you. I.Q. DATA INTERNATIONAL, INC, on December 12, 2020 that you not only failed to respond to, but refused to accept via registered mail

It has now been more than 45 days without a response from I.Q. DATA INTERNATIONAL, INC. The original debt validation letter clearly states that if you fail to comply, your acquiescence will be accepted that you do not have a valid claim against BLANTON LEON BANKS II xxx-xx-5169 and that you, I.Q. DATA INTERNATIONAL, INC agree to have a formal complaint with the Federal Trade Commission filed against you. I.Q. DATA INTERNATIONAL, INC for your violation of the Fair Credit Report Act (FCRA, 15 USC § 1681 et seq.), the Fair Debt Collection Practices Act (15 USC 1692 et seq.) and the FTC Opinion Letter from attorney John F. LeFevre which states that a printout of a bill or itemized document does not constitute verification

It is hereby requested that you, I.Q. DATA INTERNATIONAL, INC, null and void this entire matter, with prejudice, and remove this from the credit report of BLANTON LEON BANKS II xxx-xx-5169. If you fail to comply, a formal complaint with the Federal Trade Commission will be filed against your company. I further remind you that, as in Wenger v. Trans Union Corp., No. 95-6445 (C.D cal. Nov. 14, 1995), you may be liable for your willful non-compliance

Be aware that I am making a final goodwill attempt to have you close up this matter. You have 15 days to cure

Regards,

Blanton Leon Banks II, Authorized Representative

CC: State of Nevada Attorney General
CC: U.S. Attorney General
CC: Consumer Financial Protection Bureau
CC: Federal Trade Commission

Certified Mail No. 7020 1810 0001 4377 9954

EXHIBIT 42

IQDataER-73



## CERTIFICATE OF SERVICE

   I, Blanton Banks II, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that on this 22nd day of August, 2023, that I filed and served the foregoing document electronically with the Clerk of Court on counsel of record using the CM/ECF system and/or via U.S. Postal Mail, addressed to the following parties:

**AARGON AGENCY INC** located at 8668 SPRING MOUNTAIN ROAD, SUITE 102, LAS VEGAS, NV, 89117.

DATED this 22nd day of August 2023.

     Respectfully Submitted By: /s/ Blanton Banks II_____

IQDataER-75

1   SEAN P. FLYNN (SBN: 15408)
    **GORDON REES SCULLY MANSUKHANI**
2   300 S. 4th Street, Suite 1550
    Las Vegas, NV 89101
3   Telephone:    (775) 467-2610
    Email:        sflynn@grsm.com
4
    Attorneys for Defendant
5   IQ DATA INTERNATIONAL, INC.

6

7

8                    **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

10

11  BLANTON BANKS, II,                    CASE NO.   2:21-cv-01580-CDS-VCF

12                      Plaintiff,
                                          **REPLY IN SUPPORT OF DEFENDANT IQ**
13          vs.                           **DATA INTERNATIONAL, INC.'S MOTION**
                                          **TO DISMISS PURSUANT TO FRCP 41(B)**
14  TRANS UNION LLC, EQUIFAX              **AND 12(B)(6) AND MEMORANDUM OF**
    INFORMATION SERVICES LLC,             **POINTS AND AUTHORITIES IN SUPPORT**
15  EXPERIAN INFORMATION SOLUTIONS
    INC., FIRST PREMIER BANK, US AUTO
16  CREDIT PURCHASE, I.Q. DATA
    INTERNATIONAL INC., AD ASTRA
17  RECOVERY SERVICES INC., WELLS
    FARGO BANK, KAPS & CO USA LLC,
18  TBOM/TOTAL CARD, I.C. SYSTEM INC.,
    ASSET RECOVERY SOLUTIONS LLC,
19  and AARGON AGENCY INC .,

20                      Defendants.

21

22

23

24

25

26

27

28

*Gordon Rees Scully Mansukhani, LLP*
*300 S. 4th Street, Suite 1550*
*Las Vegas, NV 89101*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon Rees Scully Mansukhani, LLP**
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

Defendant IQ DATA INTERNATIONAL, INC. ("IQ Data") by and through its attorneys of the law firm GORDON REES SCULLY MANSUKHANI, LL, files its reply in support of its motion to dismiss under Federal Rule of Civil Procedure 41(b) and 12(b)(6). In support, IQ Data states as follows:

I.    **ARGUMENTS AND AUTHORITIES:**

    A.    **Plaintiff improperly served IQ Data.**

Plaintiff concedes that he failed to properly serve IQ Data with a summons or his Complaint, as is required by Fed. R. Civ. P. 4(c), 4(h), and 4(m). Plaintiff claims he served IQ Data by mailing a copy of the Complaint on or about January 1, 2022. *See* Resp., p. 2. Service by mail is not permitted under Nevada or federal law. *Vaughn v. Nash*, 2018 WL 6055552, at *3 (D. Nev. Oct. 29, 2018); *Campbell v. Gasper*, 102 F.R.D. 159, 161 (D. Nev. May 18, 1984) (citation omitted) ("Service by mail, even if actually effected, does not constitute personal service."). *See also* Fed. R. Civ. P. 4(e); Nev. R. Civ. P. 4.2. Where service of process is insufficient, the district court has discretion to dismiss the action. *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006). In this case, there is no question that IQ Data was not served until June 27, 2023. (Doc. No. 152).

    B.    **Good cause does not exist.**

In the Ninth Circuit, good cause "generally means: (a) service was attempted but not completed; (b) plaintiff was confused about the requirements of service; or (c) plaintiff was prevented from serving defendant by factors beyond plaintiff's control." *C.B. Fleet Co., Inc. v. Bowker*, 2013 WL 164271, at *2 (D. Nev. Jan. 14, 2013) (internal citations omitted). Excusable neglect "encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence," *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 394 (1993), and includes "omissions caused by carelessness." *Id*. at 388.

In this case, Plaintiff was responsible for service of summons and was put on notice of his failure to properly serve IQ Data. (Doc. No. 57). The Clerk's Notice on May 25, 2022 was not confusing nor does Plaintiff claim in his response brief that he was confused by it. *Id*. Plaintiff does not explain why he did not take any steps to serve IQ Data after the Clerk's

1   Notice on May 25, 2022 and merely claims that he served IQ Data by mail on January 1, 2022.

2   The notice is very clear that Plaintiff's action may be dismissed unless proof of service is filed

3   with the clerk by June 24, 2022. *Id*.

4         Plaintiff claims the Court already found that Plaintiff has established good cause for

5   failure to timely serve IQ Data. Resp., p. 8. This is inaccurate. On December 14, 2022, this

6   Court acknowledged that Plaintiff had failed to properly serve TransUnion and ICS and again

7   put Plaintiff on notice that service by mail was not permitted. (Doc. 101). The Court did not,

8   and has not, made any findings with respect to whether Plaintiff has shown good cause for

9   failing to serve IQ Data. Moreover, the Court's ruling on TransUnion's motion to dismiss was

10  on December 14, 2022. Still, Plaintiff did not bother to properly serve IQ Data until June 27,

11  2023. There is no valid explanation for Plaintiff's failure to serve IQ Data a year earlier, or at

12  the very least, shortly after the Court's December 14, 2022 order. Finally, Plaintiff does not

13  explain his response brief why this Court should find his neglect was excusable. The sheer

14  amount of time that has gone by demonstrates his neglect is inexcusable. In his response brief,

15  Plaintiff blames others for the delay because of his In Forma Pauperis (IFP) status.

16         The District of Nevada specifically provides pro se litigants with the following:

17         If IFP is granted, **YOU MUST SUBMIT AN ORIGINAL AND
           ONE COPY OF A SUMMONS PREPARED FOR EACH
18         DEFENDANT** AND the clerk will issue the summons(es) **AND
           RETURN THEM TO YOU FOR SERVICE**. **You will be
19         responsible for initiating service** of a summons and the complaint
           upon each of the other parties in accordance with Rule 4(c) of the
20         Fed.R.Civ.P, a copy of which is included in this packet. You may be
           able to serve the defendant(s) by mail with your summons and
21         complaint, **but only if the defendant(s) agree** to service by mail
           pursuant to the process for requesting a waiver of service as
22         described in Rule 4 of the Fed.R.Civ.P. If you wish to make service
           by mail, complete Form 398 (Notice of Lawsuit and Request for
23         Waiver of Service), and Form 399 (Waiver of Service of Summons),
           both of which are included in this packet. If you had requested that
24         the U. S. Marshal make service on your behalf **and the judge
           granted your request**, the court will send you various forms to
25         complete and return to the Clerk's Office. The clerk will then issue
           the summons(es) and forward the documents to the U.S. Marshal's
26

27

28

**Gordon Rees Scully Mansukhani, LLP**
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

-3-

Office for service pursuant to the Federal Rules of Civil Procedure.[1]

The Court has made it clear that IFP plaintiffs are not alleviated of their service obligations. Defendants being sued by IFP plaintiffs are not expected to waive service or voluntarily avail themselves to litigation if they have not been served. Plaintiff fails to explain in his response the necessary steps he has taken to have IQ Data served correctly, when those steps were taken, why IQ Data was not served sooner, and why he did not raise the issue with the Court if he felt he had done everything he could do to have IQ Data served a year ago.

### C.   Plaintiff's failure to prosecute this case diligently justifies dismissal.

In *Anderson v. Air W., Inc*., the Court found that no reasonable explanation was offered for one-year delay in service of process. *Anderson v. Air W., Inc*., 542 F.2d 522 (9th Cir. 1976). Prejudice is presumed especially when defendants do not participate in early discovery proceedings and are a year behind the other parties in both their knowledge of and preparation for the case. *Id*., 542 F.2d at 525.

District courts continue to cite to *Anderson* to support dismissal for failure to comply with the Court's orders.[2] In *Peak v. Hutchinson*, the Court ordered Plaintiff to file a completed non-inmate in forma pauperis application ("IFP") or pay the filing fee by no later than May 25, 2023. *Peak v. Hutchinson*, 2023 WL 5207597, at *1 (D. Nev. July 14, 2023), *report and recommendation adopted sub nom., Peak v. Hutchinson*, 2023 WL 5207625 (D. Nev. Aug. 14, 2023). In determining whether to dismiss Peak's action for lack of prosecution, failure to obey a court order, or failure to comply with local rules, the Court must considered: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives. *Id*. A Court's warning to a party that his failure to obey the Court's order will result in dismissal satisfies the "consideration of

---

[1] *See* "Filing a Complaint on Your Own Behalf" at https://www.nvd.uscourts.gov/wp-content/uploads/2017/08/Representing-Yourself-Guide.pdf (emphasis added).

[2] *Williams v. NNCC*, No. 22 CV 00464, 2023 WL 3095658, at *1 (D. Nev. Apr. 26, 2023); *Perry v. Witness*, No. 23 CV 00121, 2023 WL 2786834, at *2 (D. Nev. Apr. 5, 2023); *Davis v. W.C.S.D.F/Washoe Cnty*., No. 22 CV 00559, 2023 WL 2308276, at *2 (D. Nev. Feb. 28, 2023).

1    alternatives" requirement. *Id.* "There is no requirement that every single alternate remedy be

2    examined by the court before the sanction of dismissal is appropriate." *Anderson*, 542 F.2d 525.

3    The Court found that Peak had adequate warning that dismissal would result from his

4    noncompliance with the Court's order. *Id.* The Court also found that all factors supported

5    dismissal and "presumption of injury arises from the occurrence of unreasonable delay in filing

6    a pleading ordered by the court or prosecuting an action."

7    In this case, Plaintiff's delay is far more egregious than the plaintiff's delay in *Anderson*

8    and just like in *Peak*, Plaintiff was warned that dismissal could result for failure to comply with

9    the Court's orders and rules. No less drastic alternatives can be implemented other than

10   dismissal – discovery has long been closed and any lesser sanction would require IQ Data to try

11   this case without being able to marshal any evidence in its defense. IQ Data has not had the

12   opportunity to participate in discovery proceedings over the past 19 months as a result of

13   Plaintiff's failure to timely serve IQ Data with the Amended Complaint. The Court has grounds

14   to presume that IQ Data has been prejudiced by the delay in failing to serve IQ Data and

15   Plaintiff also does not attempt to explain in his response brief how IQ Data would not be

16   prejudiced by his delay.

**D.    To permit a delay in service undercuts the purpose of the statute of limitations provided by the FDCPA and further demonstrates how IQ Data will be prejudiced if its motion is denied.**

19   A violation of the FDCPA provides a one year statute of limitations from the date on

20   which the violation occurs. 15 U.S.C. § 1692k. Every alleged FDCPA violation triggers its

21   own one-year statute of limitations. *Brown v. Transworld Sys., Inc.*, 73 F.4th 1030 (9th Cir.

22   2023). However, there is no "continuing violation doctrine" in the FDCPA context, which

23   would allow plaintiffs to "sweep in a series of component acts that comprise a claim, if one of

24   those acts was within the limitations period. *Id.*, at 1044. In this case, Plaintiff's allegations are

25   based on IQ Data's failure to accept Plaintiff's debt validation dispute on December 18, 2020

26   and sending Plaintiff a letter with insulting language on January 30, 2021. FAC, ¶¶ 53-54.

27   Plaintiff filed the Amended Complaint on December 29, 2021, within the one year statute of

28   limitations period. However, to permit a delay in service when the complaint is served long

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

after the running of the statute of limitations undercuts the purpose served by the statute. *See Anderson*, 542 F.2d at 525. "Once the statute has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim." *Id*. "If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims." *Id*.

In this case, IQ Data was served on June 27, 2023, over two years beyond the statutory period for filing an FDCPA claim based on conduct that occurred on January 30, 2021. To allow for Plaintiff's case against IQ Data to continue would defeat the purpose of the one year statute of limitations provided by the FDCPA. This is yet another reason why IQ Data would be prejudiced if it is forced to defend this case on the merits based on conduct that allegedly occurred two and a half years ago.

### E.    Plaintiff does not respond to the several issues IQ Data raises with his pleading.

Plaintiff's Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted. In response to IQ Data's arguments, Plaintiff incorrectly alleges that in his Amended Complaint, he alleges multiple violations of the FCRA. Resp, p. 12. Plaintiff does not state a cause of action for violating the FCRA against IQ Data. Plaintiff's only FCRA counts are counts I and II and they are not alleged against IQ Data. Plaintiff goes on to argue that IQ Data does not "provide substantive documentation" and fails to provide a fact witness. Resp., p. 13.

IQ Data, however, is not required to provide any substantive evidence to refute Plaintiff's claims on a motion to dismiss. Plaintiff does not explain in his response brief why his FDCPA claim should not be dismissed despite his failure to allege false or misleading representations IQ Data made to Plaintiff. The exhibits Plaintiff included in his response brief were not filed with his Amended Complaint and should not be considered. (Doc. No. 102). Even if the exhibits are considered, the letters do not contain "insulting" language as Plaintiff alleges. The letters show IQ Data offered Plaintiff to pay off the debt for 40% off the total

**Gordon Rees Scully Mansukhani, LLP**
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

balance that was due. There is nothing misleading about the letters and Plaintiff fails to explain how he relied upon any representations in the letters to his detriment.

## II.   **CONCLUSION**

For the foregoing reasons, Moving Defendant I.Q. Data International, Inc. requests that the Court dismiss this case in its entirety with prejudice and award Defendant all further relief to which they are justly entitled.


Dated: August 29, 2023                              **GORDON REES SCULLY MANSUKHANI**


By:  _s/Sean P. Flynn_____
Sean P. Flynn
Attorneys for Defendant
IQ DATA INTERNATIONAL, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2023 I presented the foregoing **REPLY IN SUPPORT OF DEFENDANT IQ DATA INTERNATIONAL, INC.'S MOTION TO DISMISS PURSUANT TO FRCP 41(B) AND 12(B)(6)** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. Additionally, this document shall be served to Plaintiff via email and U.S. Mail (Certified Mail/Return Receipt Requested) to:

Blanton Banks II
3965 15th Street
Ecorse, Michigan, 48229
bbanks24@protonmail.com
Plaintiff

By:  *s/Sean P. Flynn*
Sean P. Flynn
Attorney for Defendant
IQ DATA INTERNATIONAL, INC.

**Gordon Rees Scully Mansukhani, LLP**
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

1276934/80945174v.2

-8-

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Blanton Banks, II, | Case No. 2:21-cv-01580-CDS-EJY |
| Plaintiff | **Omnibus Order Resolving Motions** |
| v. | |
| TransUnion, LLC, et al., | [ECF Nos. 119, 162, 163, 169, 170, 193] |
| Defendants | |

Pro se plaintiff Blanton Banks, II brings this action against more than a dozen defendants,[1] alleging that they violated the Fair Credit Reporting Act (FCRA) and the Fair Debt Collection Practices Act (FDCPA) when they inadequately responded to his complaints about disputed charges on his credit reports. There are several motions now pending: (1) defendant I.C. Systems Inc.'s motion for summary judgment, (2) defendant U.S. Auto Credit Purchase's motion to dismiss; (3) defendant I.Q. Date International Inc.'s motion to dismiss; (4) Banks' motion to strike TransUnion's answer to the amended complaint; and (5) Banks' motion for entry of clerk's default. The motions are fully briefed.

For the reasons set forth herein, I grant ICS's motion for summary judgment (ECF No. 119), grant U.S. Auto's motion to dismiss (ECF No. 162) without leave to amend, grant I.Q. Data's motion to dismiss for failing to state a claim (ECF No. 163) with leave to amend, and grant Banks' motion to strike TransUnion's affirmative defenses, but deny his request to strike the answer (ECF No. 169). Finally, Banks' motion for default judgment (ECF No. 170) is denied as procedurally defective.

---

[1] Several defendants have since been dismissed from this action. *See* ECF Nos. 101 (dismissing First Premier Bank); ECF No. 143 (joint dismissal of defendants Equifax Information Services LLC and Experian Information Solutions Inc.); ECF No. 145 (order granting stipulated dismissal of Ad Astra Recovery Services, Inc.).

**I.      Procedural history**

Banks filed a complaint and an application to proceed *in forma pauperis* (IFP) on August 26, 2021. ECF No. 1. Following screening of the application and complaint, Magistrate Judge Daniel J. Albregts granted Banks' IFP application and issued an order allowing the claims against TransUnion and Experian Information System Solutions, Inc. to proceed. *See* ECF No. 7. That order also dismissed without prejudice Banks' FCRA claims against Equifax Information Services, LLC; FDCPA claims; Privacy Act claim; and Freedom of Information Act claim. *Id.*

Banks filed an amended complaint on December 29, 2021, against defendants Aargon Agency, Inc.; Asset Recovery Solutions LLC, Ad Astra Recovery Services Inc.; Equifax Information Services, LLC; Experian Information Solutions, Inc.; First Premier Bank; I.C. System, Inc.; I.Q. Data International, Inc.; Kaps & Co. USA, LLC; TBOM/Total Card; TransUnion, LLC; U.S. Auto Credit Purchasing Center, LLC; and Wells Fargo Bank. ECF No. 12.

On February 24, 2022, defendant Ad Astra filed a motion to dismiss, or in the alternative, a motion to stay proceedings and to compel arbitration. ECF No. 25. Banks filed an opposition to this motion. ECF No. 31.

On March 1, 2022, Banks filed a motion to strike Experian's answer to his amended complaint (ECF No. 29), which Experian opposed. ECF No. 30.

On March 2, 2022, Experian and Equifax filed a joint motion for judgment on the pleadings. ECF No. 27. Banks opposed. ECF No. 34.

On May 25, 2022, the Clerk of Court provided Banks with notice of intent to dismiss without prejudice the complaint against defendants Aargon Agency, Inc.; Asset Recovery Solutions, LLC; I.C. System, Inc.; TBOM/Total Card; TransUnion, LLC; Kaps & Co. USA, LLC; First Premier Bank; U.S. Auto Credit Purchase; I.Q. Data International, Inc.; and Wells Fargo Bank. ECF No. 57. That notice explained that those defendants would be dismissed by June 24, 2022, because no proof of service was filed within the time allowed by Rule 4(m) of the Federal Rules of Civil Procedure. *Id.* Banks filed a response to the notice of intent, asserting that he

"served a copy of his First[-]Amended Complaint concurrently with a copy of his Motion for Leave to Amend his Original Complaint dated December 29, 2021, on the following Defendants[2] below, through their listed respective Registered Agent and/or attorney, via U.S. Postal Mail on January 1, 2022[,] in twelve (12) large envelopes, one to each defendant, with each envelope having a total weight ranging between 4.30 and 4.40 ounces." ECF No. 60 at 1.

Banks also filed a motion for entry of clerk's default against defendants TransUnion LLC, First Premier Bank, U.S. Auto Credit Purchase, I.Q. Data International Inc, Kaps & Co USA LLC, TBOM/Total Card Inc, I.C. System Inc, Asset Recovery Solutions LLC, and Aargon Agency Inc. on June 7, 2022. *See generally* ECF No. 61. Defendants First Premier, I.C. System, Inc., and TransUnion LLC filed an opposition to the motions. ECF Nos. 76 (First Premier); 77 (I.C. System and TransUnion).

Defendant TransUnion filed a motion to dismiss on June 14, 2022. ECF No. 63. Defendant First Premier Bank filed a motion to dismiss on June 27, 2022. ECF No. 75. Banks filed an opposition to TransUnion's motion on June 28, 2022. ECF No. 79. Banks did not file a response to First Premier's motion.

I held a hearing on June 28, 2022, during which I resolved several pending motions. Specifically, I denied as moot Banks' motion to strike the answer to the amended complaint (ECF No. 24), denied Ad Astra's motion to dismiss without prejudice but granted their motion to stay and to compel arbitration (ECF No. 25), granted Experian and Equifax's joint motion for judgment on the pleadings (ECF No. 27), denied Banks' motions to strike (ECF No. 29), denied Experian's, Equifax's, and Ad Astra's joint motion for a protective order (ECF Nos. 51, 52), and denied Banks' motion for entry of clerk's default (ECF No. 61). *See* Minutes, ECF No. 80.[3]

---

[2] Banks alleged that he served the ten defendants named in the notice, along with Ad Astra Recovery Service, Inc. and Experian Information Solutions, Inc. ECF No. 60 at 1–2.

[3] The court did not issue a written order resolving these motions. The transcript of the proceedings serves as the court's findings of fact and conclusions of law.

IQDataER-86

1    On December 14, 2022, I issued an order granting in part and denying in part

2 TransUnion's and I.C. System's motions to dismiss (ECF Nos. 63, 97) and granting First Premier

3 Bank's motion to dismiss in its entirety because Banks failed to oppose it (ECF No. 75). ECF No.

4 101.

5    On February 9, 2023, defendant I.C. Systems filed a motion for summary judgment (ECF

6 No. 119), which Banks opposes (ECF No. 126). Thereafter, defendants I.Q. Data International

7 Inc. and U.S. Auto Credit Purchase filed motions to dismiss. ECF Nos. 162; 163. Banks filed an

8 opposition to both motions. ECF Nos. 167 (response to I.Q. Data); 168 (response to U.S. Auto).

9    On August 21, 2023, Magistrate Judge Ferenbach issued an order granting defendants

10 U.S. Auto Credit Purchase, I.Q. Data International Inc., and TransUnion, LLC's motions to

11 extend time to file a response to the amended complaint. ECF No. 166. Therein, Judge Ferenbach

12 ordered Banks to file a corrected complaint amending his signature "without the disclaimer

13 'authorized representative' in his signature line." *Id.* at 2. The order explained why signing as an

14 alleged "authorized representative" is improper under the federal rules. *Id.* at 1–2. Banks was

15 ordered to file the corrected complaint on or before September 5, 2023. *Id.* at 2. The corrected

16 complaint was docketed on September 6, 2023. ECF No. 179.

17    On August 22, 2023, Banks filed a motion to strike TransUnion's answer to the amended

18 complaint. ECF No. 169. TransUnion filed an opposition to the motion on September 19, 2023.

19 ECF No. 183.[4]

20    On August 24, 2023, Banks filed a motion for entry of clerk's default against defendants

21 Aargon Agency Inc., Trans Union LLC, U.S. Auto Credit Purchase, and I.Q. Data International

22 Inc. ECF No. 170. Each defendant filed an opposition to the Banks default motion. ECF Nos. 171

23 (U.S. Auto); 175 (Aargon Agency); 181 (I.Q. Data); and 185 (TransUnion).

24

25

26 _____

[4] TransUnion filed a motion to extend time to file its oppositions to Banks' motions to strike and entry of clerk's default. ECF No. 176. Banks opposed the motion. ECF No. 182. I granted that motion nunc pro tunc and extended its time to respond to September 21, 2023. *See* ECF No. 188.

## II. Discussion

I proceed the analysis as follows: I first resolve defendant I.C. System, Inc.'s motion for summary judgment (ECF No. 119). I then resolve defendants U.S. Auto Credit Purchase's and I.Q. Data International Inc.'s motions to dismiss (ECF Nos. 162, 163). Finally, I resolve Banks' motion to strike (ECF No. 169) and motion for default (ECF No. 170).

### A.   I.C. System's motion for summary judgment is granted.

#### 1.   *Legal standard*

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp.*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

Where, as here, the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325. Once this burden is met, the party opposing the motion must set forth, by

IQDataER-88

affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The party opposing summary judgment must support its assertion that a material fact is genuinely disputed by: (1) citing to materials in the record;(2) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (3) showing that the moving party lacks admissible evidence to support its factual position. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." *Id.* at (c)(2). But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991); *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

### 2.    *Summary of the parties' arguments and evidence.*

I.C. System, Inc. moves for summary judgment, arguing that Banks' FDCPA claim fails because: (1) he lacks evidence to support his allegations; (2) ICS complied with the requirements of § 1692g; (3) he fails to identify a "material" false statement, or the allegedly false or misleading statements made by ICS; and (4) he cannot produce admissible evidence to show that ICS engaged in any unfair or unconscionable means to collect or attempt to collect debt from him. *See generally* ICS's Mot. for Summ. J., ECF No. 119.

Specifically, ICS argues that Banks submitted his request for validation for the debt long after the 30-day window set forth in 15 U.S.C. § 1692g(b). ICS's initial notice was mailed to Banks on February 25, 2017. *See* 2/25/2017 Letter, Def.'s Ex. C, ECF No. 119-3 at 2. According to ICS, that letter was not returned undeliverable nor was there any other indication that it was not successfully delivered. *See* ECF No. 119 at 8 (citing Def.'s Ex. B, ECF No. 119-2). Thereafter, for credit reporting purposes, ICS marked the debt as disputed on **June 25, 2018**. *See* ICS

6

Account Notes, Def.'s Ex. B, ECF No. 119-2 at 11, 6/25/2018, Time stamp 11:23:00 AM (changing dispute flag from "no" to "yes"). On November 8, 2018, Banks sent ICS a written request for validation. *See* Def.'s Ex. A, ECF No. 119-1 at 2, ¶ 10 (citing Def.'s Ex. D, ECF No. 119-4 at 2.) This request was received more than a year after ICS first sent notice to Banks. ICS submits that while it was not required to respond to the untimely request for validation, they nonetheless sent Banks the documents validating the account on December 6, 2018. *See* 12/4/18 Letter with relevant account information, Def.'s Ex. C, ECF No. 119-3 at 4. Four days later, ICS received another letter demanding validation of the debt from Banks on December 10, 2018. *See* 12/10/2018 Letter from Banks, Def.'s Ex. D, ECF No. 119-4 at 4. Just short of two years later, Banks sent ICS another request for debt validation. *Id.* at 6–10 (November 24, 2020 letter).[5] ICS did not respond to this letter. ECF No. 119 at 3 (citing Def.'s Ex. A, ECF No. 119-1 at ¶ 21). On February 3, 2021, ICS received another debt validation request from Banks. *See* Def.'s Ex. D, ECF No. 119-4 at 12.

Banks filed an opposition to the motion, wherein he lodges complaints regarding ICS's failure to engage in discovery, and broadly argues that he has a "valid claim based on applicable consumer protection laws and federal regulations pursuant to the Fair Credit Report Act...." ECF No. 126 at 2–3. Banks also incorporates by reference his amended complaint[6] as well as his opposition to ICS's previously filed motion to dismiss, while contending that ICS mostly repeats the same arguments raised in its previously denied motion to dismiss. *Id.* Banks does not address ICS's central argument: that Banks' request for debt validation was untimely. Instead, Banks argues that granting ICS's motion would be contrary to public policy. *Id.* at 3. He further

---

[5] ICS's motion states November 24, 2022. The court construes this as a typographical error as the letter is dated November 24, 2020. *See* Def.'s Ex. D, ECF No. 119-4 at 6.

[6] The amended complaint referenced in this motion is docketed at ECF No. 102 (sealed). Banks was later directed to refile his complaint. The most recent filing became the operative complaint. Because Banks is pro se, I nonetheless consider the exhibits attached to the prior complaint as if attached to the "corrected" complaint (ECF No. 179) because ICS's motion was filed before Banks was directed to file the new complaint. *See* Order directing Banks to file a duplicative amended complaint correcting a signature issue on August 21, 2023 (ECF No. 166). Banks complied and refiled the complaint, but he did not include the exhibits. I hereby order that the exhibits filed at ECF No. 102 are incorporated into the refiled amended complaint at ECF No. 179.

IQDataER-90

challenges the nature of the relationship between himself and ICS, arguing that there is no proof of "valid contract" between them. *Id.* at 4. In reply, ICS maintains that it is entitled to summary judgment because Banks' request for validation occurred beyond the 30-day period required by section 1692(g) and argues that Banks failed to produce any evidence in support of his opposition to the summary judgment motion. *See generally*, ICS's Reply, ECF No. 133.

### 3.    *Analysis*

The evidence shows that ICS is entitled to summary judgment in its favor. Banks brings four claims for relief against ICS alleging violations of multiple sections of the Federal Debt Credit Protect Act (15 U.SC. § 1692, *et seq.*). Am. Compl., ECF No. 179 at 15–18 (citing 15 U.S.C. §§ 1692(a), 1692e, 1692f, 1692k). But Banks only brings allegations in support of his claims, which are insufficient to survive summary judgment.

#### a.    *Banks' section 1692g claim fails as a matter of law.*

Title 15, United States Code, Section 1692g(a) requires that, within five days after initial communications with a consumer regarding the collection of any debt, that a debt collector send the consumer a written notice containing: (1) the amount of debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer challenges within thirty days after receipt of the notice the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. The fourth and fifth requirements are at issue here.

IQDataER-91

1   Banks fails to provide contrary evidence showing that his request for debt validation fell

2   within the required 30-day window. ICS's exhibit shows it sent Banks an initial notice of the

3   debt on February 25, 2017, but Banks did not send his first request for debt validation until

4   November 8, 2018. *See* Def.'s Ex. A, ECF No. 119-1 and Def.'s Ex. D, ECF No. 119-4 at 2. That was

5   over a year from Banks' own exhibit attached to the amended complaint (ECF No. 102), showing

6   his first request for debt validation was in 2020—almost three years later. ECF No. 102-13 at 18

7   (letter dated November 2020). Thus, Banks' section 1692g(a) fails as a matter of law.

8   　　　　　　*b.*　　*Banks' section 1692e claim fails as a matter of law.*

9   　　Section 1692e provides that a debt collector may not use any false, deceptive, or

10   misleading representation or means to collect any debt. *See* 15 U.S.C. § 1692e. A debt collector

11   violates this rule if it threatens to take any action that cannot legally be taken or that is not

12   intended to be taken. 15 U.S.C. § 1692(e)(5); *Eckenrode v. Rubin & Yates, LLC*, 2014 WL 4092266, at

13   *4 (D. Nev. July 28, 2014), *report and recommendation adopted*, 2014 WL 4072002 (D. Nev. Aug. 15,

14   2014). Banks only alleges that ICS failed to comply with the debt collection requirements by

15   using false and misleading representations, but fails to provide this court with any information,

16   much less evidence, regarding the alleged representations. Banks also fails to demonstrate that

17   ICS threatened to take any action against him. Thus, there is only the mere summary allegation

18   that ICS violated section 1692e: this is wholly insufficient to survive summary judgment. *See Nat'l*

19   *Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997) ("Conclusory allegations . . .

20   without factual support, are insufficient to defeat summary judgment.").

21   　　　　　　*c.*　　*Banks' section 1692f claim fails as a matter of law.*

22   　　Banks' allegation that ICS violated Section 1692f fails for the same reason. That section

23   prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to

24   collect any debt." 15 U.S.C. § 1692f. Whether conduct violates this Section is determined under

25   the least sophisticated consumer standard. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th

26   Cir. 2010). Claims must suffice a materiality requirement as a "corollary" to the least

sophisticated debtor standard. *Id.* at 1034. Section 1692f specifies eight acts that are deemed to be unfair or unconscionable:

> (1) collection of an amount that is not expressly authorized; (2) acceptance of a payment instrument postdated by more than five days in certain circumstances; (3) solicitation of a postdated payment instrument for the purpose of threatening or instituting criminal prosecution; (4) depositing or threatening to deposit any postdated payment instrument prior to its indicated date; (5) "causing charges to be made to any person for communications by concealment of the true purpose of the communication"; (6) "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property" under certain circumstances; (7) communicating about a debt by postcard; (8) using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

*See* 15 U.S.C. § 1692f(1)–(8).

Banks does not allege that ICS engaged in any one of the above-listed acts. *See* Am. Compl., ECF No. 179 at 15–18. Instead, he generically alleges that ICS failed to "use fair and conscionable means to collect or attempt to collect a debt" without providing evidence to support this allegation. *Id.* at 17. This is insufficient. *National Steel Corp.*, 121 F.3d at 502; *see also Moralez v. Wal-Mart Stores Inc.*, 2018 WL 5458767, at *2 (N.D. Cal. Oct. 28, 2018) (plaintiff's conclusory assertions are insufficient to carry her burden on summary judgment.). There is no evidence that ICS violated the FDCPA provisions set forth in the amended complaint. Accordingly, ICS's motion to summary judgment is granted.

**B.     U.S. Auto Credit's motion to dismiss is granted.**

*1.     Legal standard*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

10

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the non-movant. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). To avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555–57. However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Finally, dismissal can be "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

Pro se pleadings are to be liberally construed. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). Prior to dismissal, the court is to tell the plaintiff of deficiencies in the complaint and provide an opportunity to cure—if it appears at all possible the defects can be corrected. *See Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). If after consideration of the complaint it is determined that amendment would be futile, no leave to amend needs to be given. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996).

When reviewing a Rule 12(b)(6) motion, the court is normally limited to the complaint itself. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed. R. Civ. P. 12(b); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). However, a court may consider certain materials, that is "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908. Further, if documents are physically attached to the complaint, then a court may consider them if their "authenticity is not

11

contested" and if "the plaintiff's complaint necessarily relies on them." *Lee*, 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). Similarly, the court may consider certain documents that are incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

> a.   *Summary of the parties' arguments*

U.S. Auto argues that the court should dismiss the FDCPA claim against them as it is not a debt collector as defined by 15 U.S.C. § 1692. U.S. Auto contends that it is in the business of financing auto purchases, not debt collection. ECF No. 162 at 3. It further contends that it purchased Banks' car loan, making them a creditor not a debt collector. *Id.* As a result, U.S. Auto therefore moves for dismissal with prejudice, arguing the deficiency in the amended complaint cannot be cured. *Id.*

Banks opposes the motion, asserting that in its regular course of business, U.S. Auto "purchases alleged debts in bulk[,]" then attempts to collect on those alleged debts, making them a debt collector. *See* ECF No. 168 at 2 (citing Plf.'s Ex. A (screenshot from U.S. Auto's homepage which states in part "Program options that allow for you to collect payments or for U.S. Auto Credit to collect payments")). Banks also cites to a copy of a letter from U.S. Auto dated January 3, 2018, notifying Banks that (1) his account was past due; (2) making a demand for payment; and (3) notifying him that it is willing to work with him to settle his obligation. *See* ECF No. 168 at 20. He further argues that U.S. Auto failed to verify and validate the alleged debt owed by him as required under the FDCPA. *Id.* at 8.

IQDataER-95

1    In reply, U.S. Auto reiterates that they are a creditor attempting to collect from Banks,

2 but that this does not make it a debt collector, citing *Henson v. Santander Consumer USA Inc.*, 582

3 U.S. 79 (2017). ECF No. 172 at 2. *Henson* held that "[a] company may collect debts that it

4 purchased for its own account, like [respondent] did here, without triggering the statutory

5 definition in dispute." 582 U.S. at 79. "By defining debt collectors to include those who regularly

6 seek to collect debts 'owed … another,' the statute's plain language seems to focus on third party

7 collection agents regularly collecting for a debt owner—not on a debt owner seeking to collect

8 debts for itself." *Id.*

9              b.      *Analysis*

10    Applying *Henson*, U.S. Auto's motion to dismiss is granted. 15 U.S.C. § 1692a(6) defines

11 the term "debt collector" as "any person who uses any instrumentality of interstate commerce or

12 the mails in any business the **principal purpose** of which is the collection of any debts, or who

13 regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to

14 be owed or due another." 15 U.S.C. §1692a(6) (emphasis added). The complaint fails to provide

15 any factual basis from which to plausibly infer that the principal purpose of U.S. Auto's business

16 is debt collection. Rather, the information in the complaint, together with the evidence provided

17 by defendant, shows that U.S. Auto purchased Banks' debt. *See* 8/10/2017 Letter advising Banks

18 U.S. Auto purchased his account from AUTO CITY ORLANDO LLC, Def.'s Ex. A, ECF No. 162-1

19 at 1. The letter clearly states that U.S. Auto purchased Banks' outstanding debt and that none of

20 the terms changed, making his payment amount and due dates the same. The letter

21 demonstrates that U.S. Auto is a debt purchaser not a debt collector. A "debt purchaser … may …

22 collect debts for its own account without triggering the statutory definition" of "debt collector."

23 *Henson*, 582 U.S. at 83.

24    Accordingly, U.S. Auto's motion to dismiss is granted and the claims against U.S. Auto

25 are dismissed with prejudice and without leave to amend. Usually, dismissal without leave to

26 amend is improper "unless it is clear that the complaint could not be saved by any amendment."

IQDataER-96

1  *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (internal quotation marks omitted). "But

2  courts have discretion to deny leave to amend a complaint for futility, and futility includes the

3  inevitability of a claim's defeat on summary judgment." *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721,

4  724 (9th Cir. 1987) (citations and internal quotation marks omitted). I deny Banks' leave to

5  amend because amendment will not change that U.S. Auto Credit does not qualify as a debt

6  collector, rendering amendment futile.

7                **2.**       *I.Q. Data International Inc.'s motion to dismiss for failing to state a*

8                                  *claim is granted.*

9          I.Q. Data International, Inc. moves to dismiss the claims for failing to prosecute under

10  Federal Rule of Civil Procedure 41(b), or in the alternative, pursuant to Rule 12(b)(6) of the

11  Federal Rules of Civil Procedure for failing to state a claim upon which relief can be granted.

12  ECF No. 163. Banks opposes the motion. ECF No. 167.

13                       **a.**        *Dismissal pursuant to Rule 41(b) is unwarranted.*

14          Federal Rule of Civil Procedure 41(b) gives defendants the ability to move for dismissal

15  due to a plaintiff's failure to prosecute their case. *See* Fed. R. Civ. P. 41(b). Dismissal pursuant to

16  41(b) is a "harsh penalty." *Tillman v. Tillman*, 825 F.3d 1069, 1074 (9th Cir. 2016). The rule requires

17  that plaintiffs prosecute their claims with "reasonable diligence" to avoid dismissal. *Anderson v.*

18  *Air W., Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). Moreover, "[a] dismissal for lack of prosecution

19  must be supported by a showing of unreasonable delay." *Henderson v. Duncan*, 779 F.2d 1421, 1423

20  (9th Cir. 1986).

21          There is an insufficient showing of willful delay by Banks that would warrant a 41(b)

22  dismissal. The docket does show that Banks has struggled to comply with procedural rules,

23  including initially effectuating proper service. But this is not unlike many other pro se litigants,

24  and the Ninth Circuit has long held that the courts are to give pro se litigants "the benefit of any

25  doubt." *See Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) ("[W]e have an obligation

26  where the petitioner is pro se ... to construe the pleadings liberally and to afford the petitioner

the benefit of any doubt."). Further, Banks did comply with now-retired Magistrate Judge Ferenbach's order to serve I.Q. Data with the amended complaint by June 27, 2023. *See* Minutes ordering service of I.Q. Data and other defendants by June 26, 2023, ECF No. 143; *see also* Executed Summons for I.Q. Data, ECF No. 152-2. This motion was filed less than one month after service was effectuated. Accordingly, I.Q. Data's motion to dismiss pursuant to Rule 41(b) is denied on this basis.

> b. *Banks fails to allege a claim upon which relief can be granted against I.Q. Data.*

The court incorporates the Rule 12(b)(6) legal standard set forth above. *See supra*, Section II.B.1. Applying that standard, the court finds that dismissal of I.Q. Data is appropriate.

In the complaint, Banks alleges that on or about December 12, 2020, he sent I.Q. Data "a debt validation dispute letter via U.S. registered mail pertaining to an alleged account with I.Q. Data International reporting on his credit report[.]" ECF No. 179 at 12 (citing Plf.'s Ex. 39, ECF No. 102 at 18).[7] He further alleges that I.Q. Data refused that letter in violation of 15 U.S.C § 1692(g). *Id.* (citing Plf.'s Ex. 40, ECF No. 102 at 19). He thereafter alleges that I.Q. Data sent him debt collection notices, and that he sent a second debt validation notice on February 5, 2021, and that I.Q. Data's refusal to respond to his requests constitutes a violation 15 U.S.C. § 1692. *See generally* ECF No. 179 at 13.

I.Q. Data argues that the complaint fails to establish *when* Banks had initial contact with it, failing to establish when and if the 30-day clock under § 1692 was triggered. ECF No. 163 at 7. I agree. Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Banks' complaint is

---

[7] The court notes that while Banks cites to Exhibits 39–43 in his claim against I.Q. Data, he did not attach any of those exhibits to any filed version of his complaint. But Banks did attach those exhibits to his opposition this motion. *See* Ex. B, ECF No. 167. Because they are referenced in this complaint, the court can consider them without converting this motion into one for summary judgment. *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n. 2 (9th Cir. 2006) (finding that a court may consider "a writing referenced in the complaint but not explicitly incorporated therein" if a claim necessarily relies on the document and there is no dispute as to authenticity.).

deficient because it does not plead any information regarding *when* Banks was first contacted by I.Q. Data seeking to collect a debt, which is required to properly assert a violation of 15 U.S.C. § 1692g(a). Liberally construing Banks' opposition, it appears that he argues that he contacted I.Q. Data himself to correct alleged inaccuracies. *See* ECF No. 167 at 12. It is unclear when I.Q. Data contacted Banks regarding debt collection prior to January of 2021 (ECF No. 179 at 13), which is after the December 2020 date set forth in the amended complaint. *Id.*

Consequently, Banks' claim against I.Q. Data does not comply with Fed. R. Civ. P. 8; therefore the court cannot find that Banks properly stated a claim upon which relief can be granted because the court cannot determine if I.Q. Data either needed to or failed to comply with 15 U.S.C. § 1692g(a). *See Kinney v. Erikson*, 2012 WL 1288805, at *3 (D. Idaho Apr. 16, 2012) ("[I]n order to claim a violation of § 1692(g), a consumer must show that a debt collector either failed to timely supply the notices required by subsection (a), or continued its attempts to collect a disputed debt prior to obtaining verification of the debt and supplying such verification to the consumer, as required by subsection (b).").

Banks' claims for relief under 15 U.S.C. §§ 1692e and 1692f also fail. As discussed above, Section 1692(e) provides that a debt collector may not use any false, deceptive, or misleading representation or means to collect any debt. *See* 15 U.S.C. § 1692(e). This rule is violated when a debt collector threatens to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5). *Eckenrode*, 2014 WL 4092266, at *4. Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." But like both claims lodged against defendant ICS, these claims against I.Q. Data are insufficient. Banks' §1692e claim only alleges that I.Q. Data failed to comply with the debt collection requirements by using false and misleading representations, without pleading, much less providing the court, any information or evidence supporting this allegation. His § 1692f claim fails to specifically allege that I.Q. Data engaged in any unfair or unconscionable means to collect or attempt to collect from Banks. These mere summary allegations are insufficient to survive a

IQDataER-99

motion to dismiss. *See Iqbal*, 556 U.S. at 678 (A complaint will not survive a motion to dismiss if it "tenders naked assertions devoid of further factual enhancement."). Accordingly, I.Q. Data's motion to dismiss for failing to state a claim is granted. However, because it is unclear that amendment would be futile, these claims are dismissed without prejudice and with leave to amend.

### C.    Banks' motion to strike TransUnion's affirmative defenses is granted.

Banks moves to strike all of TransUnion's affirmative defenses set forth in its Answer to the amended complaint. ECF No. 169. TransUnion opposes the motion, arguing that their Answer—including their affirmative defenses—meet the "basic, broad federal pleading requirements." ECF No. 183 at 4. TransUnion asks this court to deny the motion to strike, or in the alternative, permit it to amend its answer. *Id.* at 5. The court is permitted to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading pursuant to Federal Rule of Civil Procedure 12(f). The purpose behind Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

A motion to strike may be granted if "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *See In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *5 (N.D. Cal. Jan. 4, 2018) (citation omitted). While motions to strike may be granted, Rule 12(f) motions are disfavored so "courts often require a showing of prejudice by the moving party before granting the requested relief." *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1122 (E.D. Cal. 2012) (quoting *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)). The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion. *California Dept. of Toxic Substances Control*, 217 F. Supp. 2d at 1033. If the court finds "any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) (citation omitted).

IQDataER-100

Federal Rule of Civil Procedure Rule 12(a) provides that a party served with a complaint **must** respond "within 21 days after being served[.]" Fed. R. Civ. P. 12(a)(1)(A)(i). Here, TransUnion was served with the amended complaint on June 27, 2023. *See* Executed Summons, ECF No. 152-3. The Answer was due on or before July 18, 2023, but TransUnion's Answer was not filed until August 8, 2023. Answer, ECF No. 164. Thus, the Answer was untimely.

But federal courts in this circuit and sister circuits generally hold that the untimeliness of an answer is not, by itself, a sufficient basis to grant a motion to strike. *See Eagle Rock Contracting, LLC v. Nat'l Sec. Techs., LLC*, 2016 WL 1555711, at *1 (D. Nev. Apr. 15, 2016) (collecting cases); *see also McCabe v. Arave*, 827 F.2d 634 (9th Cir. 1987) (concluding that a district judge did not abuse his discretion by denying the plaintiffs' request that the defendants' defenses be stricken from an answer that plaintiffs received on the day of trial); *Est. of Hirata v. Ida*, 2011 WL 3290409, at *3 (D. Haw. June 14, 2011) (declining to strike an answer that was more than nine months late where defendants "demonstrated an intent to defend the case on the merits"). Accordingly, and considering the strong judicial preference for resolving cases on their merits, the court finds that the untimeliness of TransUnion answer does not, by itself, warrant striking the pleading.

The court does however grant Banks' motion to strike TransUnion's affirmative defenses. In pleading affirmative defenses, they "may be stated in 'general terms' and need only provide the plaintiff with 'fair notice' of their nature.'" *Loi Nguyen v. Durham Sch. Servs., L.P.*, 358 F. Supp. 3d 1056, 1057 (C.D. Cal. 2019) (citing *Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015)). But a defense that alleges "a plaintiff has not met its burden of proof," or that "merely negates an element that [a plaintiff] was required to prove" is not an affirmative defense. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). Further, the court "may not resolve disputed and substantial factual or legal issues in deciding" the motion. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F. 3d 970, 973 (9th Cir. 2010).

IQDataER-101

1    The affirmative defenses set forth in TransUnion's answer fail. Some fail because they do

2 not give Banks fair notice of their nature. For example, in paragraph 84, TransUnion alleges that

3 any damages to Banks "are the result of the acts or omissions of [Banks] or others, over whom

4 Trans Union has no control and for whom Trans Union has no responsibility" (ECF No. 164 at

5 10, ¶ 84), and in paragraph 90 alleges "[a]ny alleged damages to Plaintiff ...were caused in whole

6 or in part by an intervening or superseding cause" (*id.* at 11, ¶ 90). But there is no information

7 regarding who or what constitutes the "others," "intervening," or "superseding." The remaining

8 "defenses" fail because they ask this court to resolve disputed and substantial factual or legal

9 issues. *See id.* at 10–11. Accordingly, Banks' motion to strike TransUnion's affirmative defenses is

10 granted. TransUnion's "defenses" are stricken but with leave to amend. *Wyshak v. City Nat. Bank*,

11 607 F.2d 824, 826 (9th Cir. 1979) (Where a court strikes an affirmative defense, leave to amend

12 should be freely given so long as there is no prejudice to the moving party).

13        **D.    Banks' motion for default judgment is denied.**

14        Federal Rule of Civil Procedure 55(b) authorizes a district court to grant a default

15 judgement after the clerk enters default under Rule 55(a). This ruling is granted by a judge or

16 court in favor of plaintiff if the defendant fails to appear in court or respond to a court summons.

17 Before entering a default judgment, the plaintiff must first satisfy the procedural requirements in

18 Federal Rules of Civil Procedure 54(c) and 55. If all procedural requirements are satisfied the

19 court has discretion to enter default judgment. Banks' motion for default judgment requests that

20 this court enter entry of default against Aargon Agency TransUnion, U.S. Auto, and I.Q. Data for

21 failure to appear and defend this action and/or file an answer to the amended complaint within

22 the time allowed pursuant to Fed. R. Civ. P. 12(a)(1)(A). ECF No. 170. However, his motion does

23 not meet the procedural requirements set forth in Rules 54(c) and 55.[8] Accordingly, Banks'

24 motion for default judgment is denied.

25

26 [8] Federal Rule of Civil Procedure 55(b) authorizes a district court to grant a default judgment after the
clerk enters default under Rule 55(a). This ruling is granted by a judge or court in favor of plaintiff if the
defendant fails to appear in court or respond to a court summons. Before entering a default judgment, the

### III.    Instructions for amended complaint

If Banks chooses to amend his complaint, it must be filed within 21 days of this order. It **must** be labeled "Second Amended Complaint." In addition, Banks is informed that the court cannot refer to a prior pleading to make his second amended complaint complete. Local Rule 15-1(a) requires that an amended pleading be complete in and of itself without reference to any prior pleading. This is because, generally, an amended pleading supersedes the original pleading. *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent. In other words, the original pleading no longer performs any function[.]'") (citations and internal quotation marks omitted).

The second amended complaint must not contain any claims or defendants previously dismissed (or where summary judgment was granted in favor of the defendant(s)) without leave to amend and must not contain copied allegations which the court previously has adjudicated to be insufficient. Banks may not add any defendants without leave of court. *See* Fed. R. Civ. P. 21; *see also* LR 15-1 (A "...moving party must attach the proposed amended pleading to a motion seeking leave of the court to file an amended pleading. The proposed amended pleading must be complete in and of itself without reference to the superseded pleading and must include copies of all exhibits referred to in the proposed amended pleading" and "If the court grants leave to file an amended pleading, and unless the court orders otherwise, the moving party must then file and serve the amended pleading.").

If Banks files a second amended complaint, answers are due 21 days thereafter.

### IV.    Conclusion

IT IS HEREBY ORDERED that ICS's motion for summary judgment **[ECF No. 119] is granted**. The Clerk of Court is kindly instructed to enter judgment accordingly.

---

plaintiff must satisfy the procedural requirements in Federal Rules of Civil Procedure 54(c) and 55. If all procedural requirements are satisfied the court has discretion to enter default judgment.

IQDataER-103

1    IT IS FURTHER ORDERED that U.S. Auto's motion to dismiss **[ECF No. 162] is
2    granted with prejudice and without leave to amend.** The Clerk of Court is kindly instructed
3    to enter judgment accordingly.

4    IT IS FURTHER ORDERED that I.Q. Data's motion to dismiss for failing to state a claim
5    **[ECF No. 163] is granted.** The claims against I.Q. Data are dismissed without prejudice and
6    with leave to amend.

7    IT IS FURTHER ORDERED that Banks' motion to strike TransUnion's Answer or, in
8    the alternative, to strike the affirmative defenses **[ECF No. 169] is granted in part and denied
9    in part.** Banks' request to strike the TransUnion's Answer is denied but the request to strike the
10   affirmative answers is granted. TransUnion's affirmative defenses are dismissed without
11   prejudice and with leave to amend.

12   IT IS FURTHER ORDERED that Banks' motion for default judgment **[ECF No. 170] is
13   denied**.

14   IT IS FURTHER ORDERED that Banks' status report for motions that are ripe for ruling
15   **[ECF No. 193] is DENIED as moot.**

16   IT IS FURTHER ORDERED that, pursuant to Local Rule 16-5, this matter is referred to
17   the magistrate judge for a settlement conference.

18   DATED: February 1, 2024

19
20   _____
     Cristina D. Silva
21   United States District Judge

22

23

24

25

26

21

IQDataER-104

1  SEAN P. FLYNN (SBN: 15408)
   **GORDON REES SCULLY MANSUKHANI**
2  300 S. 4th Street, Suite 1550
   Las Vegas, NV  89101
3  Telephone:    (775) 467-2610
   Email:        sflynn@grsm.com
4
   Attorneys for Defendant
5  IQ DATA INTERNATIONAL, INC.

6

7

8                   **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

10

11 BLANTON BANKS, II,                    CASE NO.   2:21-cv-01580-CDS-EJY

12                    Plaintiff,
                                         **STATUS REPORT REGARDING**
13        vs.                            **DISMISSAL**

14 TRANS UNION LLC, et al.,

15                    Defendants.

16

17        Defendant IQ Data International, Inc. ("IQ Data"), respectfully submits this Status

18 Report regarding dismissal of IQ Data.

19        On February 1, 2024, this Court filed its Omnibus Order [Dkt. #194], addressing and

20 resolving multiple motions. In the Omnibus Order, the Court Granted IQ Data's motion to

21 dismiss, with leave to amend.

22        Section III of the Order detailed the instructions and guidelines for the submission of

23 an amended Complaint. Plaintiff Blanton Banks, II ("Plaintiff") was granted a period of 21

24 days to file a "Second Amended Complaint," a deadline which has now passed without any

25 such filing.

26        Defendant acknowledges the Court's inherent authority under Rule 1 of the Federal

27 Rules of Civil Procedure to secure the just, speedy, and inexpensive determination of every

28 action and proceeding. The Court has broad discretion to manage its cases as it deems

**Gordon Rees Scully Mansukhani, LLP**
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

1    appropriate, ensuring the efficient and fair administration of justice.

2          In light of the foregoing, IQ Data requests the dismissal be converted to one with

3    prejudice, thereby terminating IQ Data from this litigation.

4

5    Dated: March 25, 2024                    **GORDON REES SCULLY MANSUKHANI**

6

7                                             By:  _s/Sean P. Flynn_____

8                                                  Sean P. Flynn
                                                   Attorneys for Defendant
9                                                  IQ DATA INTERNATIONAL, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Blanton Banks II
3965 15th Street
Ecorse, Michigan, 48229
(510) 951-9505
bbanks24@protonmail.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Blanton Banks, II, | Case # 2:21-cv-01580-CDS-EJY |
| Plaintiff, | Hon. Cristina D. Silva |
| v. | **PLAINTIFF'S RESPONSE TO DEFENDANT'S STATUS REPORT REQUEST** |
| TRANS UNION LLC, et al., | |
| Defendants. | |

COMES NOW, Plaintiff Blanton Banks, II, ("Plaintiff") In Propia Persona, and hereby submits this PLAINTIFF'S RESPONSE TO DEFENDANT'S STATUS REPORT REQUEST.

This Response is made and based upon all of the papers, pleadings and exhibits in this particular case above. The Plaintiff files this response pursuant to the <u>The Local Rules of Practice of The United States District Court, District of Nevada</u>, and <u>Federal Rules of Civil Procedure</u> in good faith and for good cause and in support thereof, respectfully states as follows:

1. Plaintiff filed this action on August 26, 2021 with attached exhibits (ECF Dkt. No. 1), in which, this case was randomly assigned to Judge Andrew P. Gordon and Magistrate Judge Daniel J. Albregts. Judge Andrew P. Gordon was either removed or recused himself without notice, at which point, the Clerk of the Court gave notice on April 14, 2022, that this case was directly re-assigned to Judge Cristina Silva.

2. Plaintiff's Original Complaint was entered by the Court and Plaintiff was granted leave to proceed In Forma Pauperis on November 4, 2021. (ECF Dkts. 7 and 8).

3. Plaintiff filed an Amended Complaint on December 29, 2021 along with attached exhibits. (ECF Dkts. No. 12 and 13) and served a copy of the Amended Complaint to defendant on January 1, 2022 in compliance with Magistrate Judge Daniel Albregts Order to serve copies of all future pleadings upon all parties in this present action. Defendant I.Q. Data International, Inc. ("IQDI" and/or "Defendant"), a debt collector pursuant to 15 U.S.C. subsection 1692a(6), by its own omissions admitted it was served a copy of Plaintiff's Amended Complaint in its Motion to Dismiss (ECF Dkt. 163).

4. On June 14, 2022, Judge Cristina Silva ordered a Motion hearing ("Motion Hearing") set for June 28, 2022 at 9:30 am. (ECF Dkt. 66).

5. On June 27, 2022, Plaintiff filed an Affidavit of Facts, which has not been disputed by any party in this present action to date. (ECF Dkt. 74).

6. On June 28, 2022 the Motion Hearing was held. Judge Silva, as part of her disposition, declared that Plaintiff could not amend his Amended Complaint as it would be futile and that the Transcript would serve as the Court's findings of fact and conclusions of law. (ECF Dkt. 80).

7. On June 29, 2022, Plaintiff filed a Notice of Appeal (ECF Dkt. 81) as Judge Silva granted Plaintiff leave to do so at the June 28, 2022 Motion Hearing. (See Court's Transcript of Motion Hearing). Plaintiff's Appeal was denied on the grounds that it was submitted prior to Judge Silva's final disposition of this entire case, however, still affording Plaintiff the right to appeal at a later date.

8. On December 14, 2022, Judge Silva Ordered the Clerk of the Court to re-file Plaintiff's Amended Complaint and all attached exhibits which supports Plaintiff's claims in his Amended Complaint. This further convoluted the record as numerous defendants had been dismissed from the case without the Amended Complaint being screened prior to any rulings being made and after several defendants appeared to defend with motions to dismiss, waiving all of their rights to assert any defense at all pursuant to the Fed. R. Civ. P.

9. On March 16, 2023, the Court randomly assigned now retired Magistrate Judge Cam Ferenbach in light of a Settlement Conference held between Plaintiff and Defendant I.C. System, Inc.

10. On April 5, 2023, Judge Ferenbach set a Motion Hearing for April 26, 2023 at 11:00 am. At the April 26, 2023 Motion Hearing, Judge Ferenbach agreed with Plaintiff that the record for this Plaintiff's present action was convoluted and that Plaintiff has accurately followed procedures throughout this case in all of his pleadings and issued a new Order governing the service of the summons and complaint upon the defendants. (ECF Dkt. 143).

11. After being properly served pursuant to Judge Ferenbach's Order (ECF Dkt. 143), defendant IQDI filed a Motion to Dismiss instead of an Answer to Plaintiff's Amended Complaint (ECF Dkt. 163), waiving all rights to file Answer and/or assert any defenses at all, leaving any and all factual disputes to be resolved only through discovery which this Court did not afford Plaintiff regarding IQDI. Further, where jurisdictional facts are intertwined with the merits, defendants must proceed under either Rule 12(b)(6) or Rule 56, and the court should resolve relevant factual disputes only after discovery. *Augustine v. U.S.*, 704 F.2d 1074, 1079 (9th Cir. 1983)(emphasis added). In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true, construe the pleadings in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the plaintiff. *Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986 (9th Cir. 2011). Documents referred to in the complaint may be considered without converting the Rule 12(b)(6) motion into a motion for summary judgment, but any ambiguity in the documents must be resolved in favor of the plaintiffs. *International Audiotex/ Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005). Plaintiffs succeed in stating a claim for relief by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a complaint alleges a plausible claim, a court must accept as true all well pled facts and draw all reasonable inferences in favor of the plaintiff. *Nemer Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). At the pleadings stage, a court may not weigh the anticompetitive effects of a restraint against a claimed

justification. See *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 291-92 (4th Cir. 2012). Further, it is requested that the court treat a Pro Per litigant with a certain level of tolerance in procedure and motions. In reviewing a pro per or pro se litigant's complaint for dismissal, the court must read the complaint less stringent than it would an attorney's. See *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Madyun v. Thompson*, 657 F.2d 868, 876 (7th Cir. 1981).

12.  Although there are still several issues that are being and have been overlooked and/or ruled on without proper due process afforded to a Pro Se litigant, as Plaintiff holds such title in this case, defendant IQDI, by its own omissions, is in agreement with Plaintiff that this Court had and has inherent authority pursuant to Fed. R. Civ. P. 1, for a just, speedy, and effective adjudication of this matter. Plaintiff has been reciting this since the inception of this case and continues to do so to avoid waiving any of his rights in this present action. Further, defendant IQDI's bold statement in its Motion Request, which it has tailored and titled as a Status Report Request, would assert that this Court has not effectively administered this present action according to the <u>Federal Rules of Civil Procedure</u>.

13.  Plaintiff did not amend his Amended Complaint because, (1) Judge Silva's disposition ruling on IQDI's motion to dismiss (ECF Dkt. 194) contradicted her disposition at the Motion Hearing (ECF Dkt. 80) and was unclear on whether or not the amending of his Amended Complaint was futile or not. Further, it would have prejudiced Plaintiff to additional lengthy and unnecessary litigation with other

//

//

//

//

//

//

//

//

//

//

//

defendants by giving other defendants in this case additional time to delay the effective adjudication and administration of this case which has been ongoing for almost three (3) years.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court denies defendant I.Q. Data International, Inc.'s Motion Request tailored as a Status Report Request and grant Plaintiff any reasonable relief he may be entitled to.

DATED this 2nd day of April, 2024.

By: /s/ Blanton Banks II,
Blanton Banks II
3965 15th Street
Ecorse, Michigan, 48229
(510) 951-9505
bbanks24@protonmail.com
In Propia Persona, *Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

     I, Blanton Banks II, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that on this 2nd day of April, 2024, that I filed the foregoing document electronically via the CM/ECF system upon all counsel of record for all parties in this present action.

DATED this 2nd day of April, 2024.

Respectfully Submitted By: <u>/s/ Blanton Banks II</u>

RECEIVED

X FILED

ENTERED

SERVED ON

12/10/2024

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA

CAH

BY:                            DEPUTY

Blanton Banks II
3965 15th Street
Ecorse, Michigan, 48229
(510) 951-9505
bbanks24@protonmail.com

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Blanton Banks, II, | Case # 2:21-cv-01580-CDS-EJY |
| Plaintiff, | Hon. Cristina D. Silva |
| v. | **PLAINTIFF'S NOTICE OF APPEAL** |
| TRANS UNION LLC, et al., | |
| Defendants, | |

_____

//

//

//

//

//

//

//

//

//

COMES NOW, Plaintiff Blanton Banks, II, In Propia Persona and hereby respectfully submits his PLAINTIFF'S NOTICE OF APPEAL in this above case.

This Notice of Appeal is made and based upon all of the papers, pleadings and exhibits in this particular case above in light of this Court abusing its discretion on questions of law, making rulings on facts that should be determined by a jury and judicial misconduct. The plaintiff files this Notice of Appeal as granted by the <u>Federal Rules of Appellate Procedure</u>.

DATED this 10th day of December, 2024.

By: */s/ Blanton Banks II*
    Blanton Banks II
    3965 15th Street
    Ecorse, Michigan, 48229
    bbanks24@protonmail.com
    Telephone: (510) 951-9505
    In Propia Persona
    *Plaintiff*

**CERTIFICATE OF SERVICE**

I, Blanton Banks II, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that on this 10th day of December, 2024, that I filed the foregoing document electronically with the Clerk of the Court to all counsel on record in this case using the CM/ECF system.

DATED this 10th day of December 2024.

Respectfully Submitted By: */s/ Blanton Banks II*

**Query    Reports    Utilities    Help    Log Out**

CLOSED,APPEAL,IFP

# United States District Court
## District of Nevada (Las Vegas)
## CIVIL DOCKET FOR CASE #: 2:21-cv-01580-CDS-EJY

Banks v. Trans Union LLC et al
Assigned to: Judge Cristina D. Silva
Referred to: Magistrate Judge Elayna J. Youchah
Case in other court:  Ninth Circuit, 22-15971
                Ninth Circuit Court of Appeals, 24-07602
Cause: 15:1681 Fair Credit Reporting Act

Date Filed: 08/26/2021
Date Terminated: 01/16/2025
Jury Demand: Both
Nature of Suit: 480 Consumer Credit
Jurisdiction: Federal Question

**Plaintiff**

**Blanton Banks, II**

represented by
**Blanton Banks, II**
3965 15th Street
Ecorse, MI 48229
510-951-9505
Email: bbanks24@protonmail.com
PRO SE

V.

**Defendant**

**Trans Union LLC**
*TERMINATED: 11/18/2024*

represented by
**Bernadette A. Rigo**
Skane Mills LLP
1120 Town Center Drive
Ste 200
Las Vegas, NV 89144
702-363-2535
Email: brigo@skanemills.com
*TERMINATED: 03/20/2024*

**Elizabeth A Skane**
SKANE MILLS LLP
1120 N. Town Center Dr., Ste 200
Las Vegas, NV 89144
702-363-2535
Fax: 702-363-2534
Email: eskane@skanemills.com

**Jennifer Marie Wade**
Troutman Pepper Hamilton Sanders LLP
100 Spectrum Center Drive
Room 1500
Irvine, CA 92618
470-832-5564
Email: jennifer.wade@troutman.com

**Jibril Greene**
Seyfarth Shaw LLP
2323 Ross Avenue
Ste 1660
Dallas, TX 75201
469-608-6745
Email: jagreene@seyfarth.com
*TERMINATED: 10/13/2023*

**Kurt R. Bonds**
Hall & Evans, LLC
1160 N. Town Center Dr.
Suite 330
Las Vegas, NV 89144
702-998-1022
Email: nvefile@hallevans.com
*TERMINATED: 08/15/2023*

**Rachael Swernofsky**
Barrett Daffin Frappier Turner & Engel LLP
4004 Belt Line Road
Suite 100
Addison, TX 75001
972-341-0511
Email: rachaels@bdfgroup.com
*TERMINATED: 10/13/2023*

**Sarai Leora Brown**
SKANE MILLS LLP
1120 N. Town Center Dr., Ste 200
Las Vegas, NV 89144
702-363-2535
Fax: 702-363-2534
Email: sbrown@skanemills.com

**Defendant**

**Equifax Information Services LLC**
*TERMINATED: 04/26/2023*

represented by **Gia Marina**
Clark Hill Plc
1700 South Pavilion Center Drive
Suite 500
Las Vegas, NV 89135
702-862-8300
Fax: 702-778-9709
Email: gmarina@clarkhill.com
*ATTORNEY TO BE NOTICED*

**Jennifer R. Brooks**
Seyfarth Shaw LLP
2323 Ross Avenue
Suite 1660
Dallas, TX 75201
469-608-6730
Email: jrbrooks@seyfarth.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Experian Information Solutions Inc**
*TERMINATED: 04/26/2023*

represented by **Paige Christie**
Jones Day
3161 Michelson Drive
Suite 800
Irvine, CA 92612
949-553-7541
Email: pchristie@jonesday.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin Bradwell Gordon**
Klinedinst PC
1180 N. Town Center Drive, #100, Las
Vegas, Nevada 8914
100
89144
Las Vegas, NV 89144
702-859-4000
Fax: 619-238-8707
Email: bgordon@wshblaw.com

**Jennifer L Braster**
Naylor & Braster
10100 W. Charleston Blvd.
Suite 120
Las Vegas, NV 89135
702-420-7000
Email: jbraster@naylorandbrasterlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Capital One Bank USA N**
*TERMINATED: 11/04/2021*

**Defendant**

**First Premier Bank**
*TERMINATED: 12/14/2022*

represented by **Joel Edward Tasca**
Greenberg Traurig, LLP
Litigation
10845 Griffith Peak Drive
Suite 600
Las Vegas, NV 89135
702-792-3773
Email: Joel.Tasca@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Clark**
Littler Mendelson
3960 Howard Hughes Parkway
Ste 300
Las Vegas, NV 89169

702-862-7734
Email: asclark@littler.com
*TERMINATED: 12/30/2022*

**Defendant**

**US Auto Credit Purchase**
*TERMINATED: 04/22/2024*

represented by **Brandon D Kartchner**
Wright Finlay & Zak
8337 W. Sunset Rd.
Ste 220
Las Vegas, NV 89113
949-477-5050
Email: bkartchner@wrightlegal.net

**Defendant**

**I.Q. Data International Inc**
*TERMINATED: 07/08/2024*

represented by **Sean Flynn**
Gordon Rees Scully Mansukhani, LLP
1 E. Liberty Street
Suite 424
Reno, NV 89501
775-467-2610
Email: sflynn@grsm.com

**Defendant**

**Ad Astra Recovery Services Inc**
*TERMINATED: 05/02/2023*

represented by **Mary E Bacon**
Spencer Fane LLP
300 S. Fourth Street, Ste. 1600
Las Vegas, NV 89101
702-408-3402
Fax: 702-938-8648
Email: mbacon@spencerfane.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wells Fargo Bank**
*TERMINATED: 04/22/2024*

**Defendant**

**Kaps & Co USA LLC**
*TERMINATED: 04/22/2024*

**Defendant**

**TBOM/Total Card**
*TERMINATED: 04/22/2024*

**Defendant**

**I.C. System Inc**
*TERMINATED: 04/22/2024*

represented by **Kurt R. Bonds**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Client Services Inc**
*TERMINATED: 12/29/2021*

**Defendant**

**Asset Recovery Solutions LLC**
*TERMINATED: 04/22/2024*

**Defendant**

**Aargon Agency Inc.**
*TERMINATED: 07/24/2024*

represented by **Armand Fried**
Armand Fried
8668 Spring Mountain Road
Suite 102
Las Vegas, NV 89074
702-781-1999
Fax: 702-829-5383
Email: armandfried@msn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/26/2021 | | Case randomly assigned to Judge Andrew P. Gordon and Magistrate Judge Daniel J. Albregts. (MR) (Entered: 08/26/2021) |
| 08/26/2021 | 1 | APPLICATION for Leave to Proceed in forma pauperis by Plaintiff Blanton Banks, II. (Attachments: # 1 Complaint, # 2 Index of Exhibits, # 3 Exhibit Part 1, # 4 Exhibit Part 2, # 5 Exhibit Part 3) (MR) (Entered: 08/26/2021) |
| 08/26/2021 | 2 | Consent for Electronic Service of Documents by Plaintiff Blanton Banks, II. (MR) (Entered: 08/26/2021) |
| 08/26/2021 | 3 | ADVISORY LETTER to litigant. (MR) (Entered: 08/26/2021) |
| 09/01/2021 | 4 | MOTION for Leave to File Audio File, by Plaintiff Blanton Banks, II. (MR) (Entered: 09/01/2021) |
| 09/16/2021 | 5 | ORDER Denying 1 Application for Leave to Proceed in forma pauperis. IFP/Filing fees due 9/30/2021. Signed by Magistrate Judge Daniel J. Albregts on 9/16/2021. (Attachments: # 1 IFP Instructions/Form) (Copies have been distributed pursuant to the NEF - *IFP Instructions/Form attached for P* - MR) (Entered: 09/16/2021) |
| 09/21/2021 | 6 | APPLICATION for Leave to Proceed in forma pauperis by Plaintiff Blanton Banks, II. (Attachments: # 1 Complaint) (MR) (Entered: 09/22/2021) |

| 11/04/2021 | 7 | ORDER. IT IS ORDERED that 6 Plaintiff's application to proceed in forma pauperis is GRANTED.<br>IT IS FURTHER ORDERED that Plaintiff's Fair Credit Reporting Act claims will proceed against Defendants TransUnion, LLC and Experian Information Solutions, Inc.<br>IT IS FURTHER ORDERED that the Clerk of Court is kindly directed to file 6 -1 Plaintiff's complaint. The Clerk of Court is also kindly directed to issue summonses to Defendants: TransUnion, LLC and Experian Information Solutions, LLC.<br>IT IS FURTHER ORDERED that 4 Plaintiff's motion for leave to file audio file is DENIED as moot.<br>See Order for details/deadlines. Signed by Magistrate Judge Daniel J. Albregts on 11/4/2021. (Copies have been distributed pursuant to the NEF - MR) (Entered: 11/04/2021) |
| 11/04/2021 | 8 | COMPLAINT against Defendants by Blanton Banks, II. (MR) (Entered: 11/04/2021) |
| 11/04/2021 | 9 | SUMMONS ISSUED as to Experian Information Solutions Inc, Trans Union LLC re 8 Complaint. (MR) (Entered: 11/04/2021) |
| 11/29/2021 | 10 | MOTION to Extend Time (First Request) by Plaintiff Blanton Banks, II. (DRS) (Entered: 11/29/2021) |
| 12/03/2021 | 11 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Daniel J. Albregts on 12/3/2021.<br><br>ORDER granting 10 Motion to Extend Time. Having found good cause appearing therein, IT IS ORDERED that Plaintiff's Motion for a 30 Day Enlargement of Time is GRANTED. Plaintiff shall have until **December 29, 2021** within which to file an amended complaint.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - KL) (Entered: 12/03/2021) |
| 12/29/2021 | 12 | AMENDED COMPLAINT with Jury Demand against Aargon Agency Inc., Ad Astra Recovery Services Inc, Asset Recovery Solutions LLC, Equifax Information Services LLC, Experian Information Solutions Inc, First Premier Bank, I.C. System Inc, I.Q. Data International Inc, Kaps & Co USA LLC, TBOM/Total Card, Trans Union LLC, US Auto Credit Purchase, Wells Fargo Bank by Blanton Banks, II. Removes parties. (DRS) Modified on 1/3/2022 (MR). (Entered: 01/03/2022) |
| 12/29/2021 | 13 | MOTION to Amend/Correct 12 Amended Complaint, by Plaintiff Blanton Banks, II. Responses due by 1/17/2022. (Attachments: # 1 List of Exhibits, # 2 Exhibits marked 1-3, # 3 Exhibits marked 3-9, # 4 Exhibits marked 10-12, # 5 Exhibits marked 12-16, # 6 Exhibits marked 17-19, # 7 Exhibits marked 19-21, # 8 Exhibits marked 22-25, # 9 Exhibits marked 25-27, # 10 Exhibits marked 28-32, # 11 Exhibits marked 32-37, # 12 Exhibits marked 44-47, # 13 Exhibits marked 48-51, # 14 Exhibits marked 52-58) (DRS) Modified to correct filing date on 1/3/2022 (MR). (Entered: 01/03/2022) |
| 01/27/2022 | 14 | First MOTION to Extend Time (First Request) *to Answer* re 12 Amended Complaint, by Defendant Equifax Information Services LLC. (Attachments: # 1 Proposed Order) (Marina, Gia) (Entered: 01/27/2022) |
| 01/27/2022 | 15 | CERTIFICATE of Interested Parties by Equifax Information Services LLC that identifies all parties that have an interest in the outcome of this case. Corporate Parent Equifax Inc. for Equifax Information Services LLC added. (Marina, Gia) (Entered: 01/27/2022) |
| 01/31/2022 | 16 | RESPONSE to 14 Motion to Extend/Shorten Time by Plaintiff Blanton Banks, II. Replies due by 2/7/2022. (HAM) (Entered: 01/31/2022) |

| | | |
|---|---|---|
| 01/31/2022 | 17 | ANSWER to 12 Amended Complaint, filed by Experian Information Solutions Inc. Discovery Plan/Scheduling Order due by 3/17/2022.(Gordon, Benjamin)<br><br>NOTICE of Certificate of Interested Parties requirement: Under Local Rule 7.1-1, a party must immediately file its disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court. (Entered: 01/31/2022) |
| 01/31/2022 | 18 | REPLY to Response to 14 Motion to Extend/Shorten Time by Defendant Equifax Information Services LLC. (Marina, Gia) (Entered: 01/31/2022) |
| 01/31/2022 | 19 | CERTIFICATE of Interested Parties by Experian Information Solutions Inc that identifies all parties that have an interest in the outcome of this case. Corporate Parent Experian plc, Other Affiliate Central Source LLC, Other Affiliate Online Data Exchange LLC, Other Affiliate New Management Services LLC, Other Affiliate Vantagescore Solutions LLC, Other Affiliate Opt-Out Services LLC for Experian Information Solutions Inc added. (Gordon, Benjamin) (Entered: 01/31/2022) |
| 02/02/2022 | 20 | ORDER Denying as moot 13 Motion to Amend/Correct 12 Amended Complaint. ORDER Granting 14 Motion to Extend Time to Answer 12 Amended Complaint. Equifax Information Services LLC answer due 3/2/2022. Signed by Magistrate Judge Daniel J. Albregts on 2/2/2022. (Copies have been distributed pursuant to the NEF - KF) (Entered: 02/02/2022) |
| 02/07/2022 | 21 | MOTION/VERIFIED PETITION for Permission to Practice Pro Hac Vice by Paige Christie and DESIGNATION of Local Counsel Jennifer Braster (Filing fee $ 250 receipt number 0978-6787425) by Defendant Experian Information Solutions Inc. (Braster, Jennifer) (Entered: 02/07/2022) |
| 02/08/2022 | 22 | ANSWER to 12 Amended Complaint, filed by Ad Astra Recovery Services Inc.(Bacon, Mary) (Entered: 02/08/2022) |
| 02/08/2022 | 23 | ORDER Granting 21 Verified Petition for Permission to Practice Pro Hac Vice for Attorney Paige Christie for Experian Information Solutions Inc and approving Designation of Local Counsel. Signed by Judge Andrew P. Gordon on 2/8/2022. Any Attorney not yet registered with the Court's CM/ECF System shall submit a Registration Form on the Court's website www.nvd.uscourts.gov<br>(Copies have been distributed pursuant to the NEF - KF) (Entered: 02/08/2022) |
| 02/22/2022 | 24 | MOTION to Strike 17 Answer to Amended Complaint by Plaintiff Blanton Banks, II. Responses due by 3/8/2022. (KF) (Entered: 02/23/2022) |
| 02/24/2022 | 25 | MOTION to Dismiss by Defendant Ad Astra Recovery Services Inc. Responses due by 3/10/2022. (Bacon, Mary) (Entered: 02/24/2022) |
| 02/24/2022 | 26 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Andrew P. Gordon on 2/24/2022. Regarding the Requirements of *Klingele v. Eikenberry* and *Rand v. Rowland* as to 25 Motion to Dismiss. Opposition due 14 days from the date of this Minute Order, and reply due seven 7 days after the filing of the opposition. (Copies have been distributed pursuant to the NEF - MR) (Entered: 02/24/2022) |
| 03/01/2022 | 28 | NOTICE of Change of Address by Plaintiff Blanton Banks, II. Address updated to 9599 W. Charleston Blvd, Unit 2151, Las Vegas, NV, 89117. (KF) (Entered: 03/02/2022) |
| 03/01/2022 | 29 | MOTION to Strike 22 Answer to Amended Complaint by Plaintiff Blanton Banks, II. Responses due by 3/15/2022. (KF) (Entered: 03/02/2022) |
| 03/02/2022 | 27 | Joint MOTION for Judgment *on the Pleadings by Equifax Information Services, LLC and* by Defendant Experian Information Solutions Inc. Responses due by 3/16/2022. (Braster, |

| | | Jennifer) (Entered: 03/02/2022) |
|---|---|---|
| 03/08/2022 | 30 | RESPONSE to 24 Motion to Strike by Defendant Experian Information Solutions Inc. Replies due by 3/15/2022. (Attachments: # 1 Declaration of Paige Christie with Exhibits 1-7, # 2 Exhibit 8) (Braster, Jennifer) (Entered: 03/08/2022) |
| 03/10/2022 | 31 | RESPONSE to 25 Motion to Dismiss by Plaintiff Blanton Banks, II. Replies due by 3/17/2022. (KF) (Entered: 03/11/2022) |
| 03/15/2022 | 32 | RESPONSE to 29 Motion to Strike by Defendant Ad Astra Recovery Services Inc. Replies due by 3/22/2022. (Bacon, Mary) (Entered: 03/15/2022) |
| 03/15/2022 | 33 | CERTIFICATE of Interested Parties by Ad Astra Recovery Services Inc. There are no known interested parties other than those participating in the case (Bacon, Mary) (Entered: 03/15/2022) |
| 03/15/2022 | 34 | RESPONSE to 27 Motion for Judgment by Plaintiff Blanton Banks, II. Replies due by 3/22/2022. (KF) (Entered: 03/16/2022) |
| 03/15/2022 | 35 | REPLY to Response to 24 Motion to Strike by Plaintiff Blanton Banks, II. (KF) (Entered: 03/16/2022) |
| 03/16/2022 | 36 | REPLY to Response to 25 Motion to Dismiss by Defendant Ad Astra Recovery Services Inc. (Bacon, Mary) (Entered: 03/16/2022) |
| 03/22/2022 | 37 | REPLY to Response to 27 Motion for Judgment by Defendant Experian Information Solutions Inc. (Gordon, Benjamin) (Entered: 03/22/2022) |
| 03/22/2022 | 38 | REPLY to Response to 29 Motion to Strike by Plaintiff Blanton Banks, II. (DRS) (Entered: 03/23/2022) |
| 03/25/2022 | 39 | **VIEW Corrected Image 42 re:** Proposed Discovery Plan and Scheduling Order by Defendant Experian Information Solutions Inc. (Gordon, Benjamin) Modified on 3/28/2022 (SLD). (Entered: 03/25/2022) |
| 03/28/2022 | 40 | CLERK'S NOTICE. Attorney Action Required to ECF No. 39 . ERROR: Judge's signature block is on a separate page. Pursuant to LR IA 6-2: The signature block must not begin on a separate page; it must appear approximately 1 inch below the last typewritten matter on the right-hand side of the last page of the stipulation or ex parte or unopposed motion.<br><br>Attorney Benjamin Gordon is advised to file the corrected image using the document event *Notice of Corrected Image/Document* and link to 39 . **(no image attached)** (SLD) (Entered: 03/28/2022) |
| 03/28/2022 | 41 | CLERK'S NOTICE Regarding Local Rule IC 2-1. Attorney Paige Christie is in violation of Local Rule IC 2-1(a) and 2-1(d). You are required to register to file documents electronically in the Court's electronic filing system (CM/ECF) and the electronic service of pleadings and other papers. Please visit the Court's website to complete the registration for CM/ECF.<br>**(no image attached)** (SLD) (Entered: 03/28/2022) |
| 03/28/2022 | 42 | NOTICE of Corrected Image/Document re 39 Discovery Plan and Scheduling Order by Defendant Experian Information Solutions Inc. (Service of corrected image is attached.) (Gordon, Benjamin) (Entered: 03/28/2022) |
| 03/29/2022 | 43 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Daniel J. Albregts on 3/29/2022. |

| | | |
|---|---|---|
| | | ORDER denying 39 Discovery Plan and Scheduling Order. Having reviewed Defendants' discovery plan and scheduling order, the Court declines to grant the scheduling order without Plaintiff's input at this time. IT IS THEREFORE ORDERED that the discovery plan and scheduling order 39 is DENIED without prejudice.<br><br>IT IS FURTHER ORDERED that Plaintiff shall have until **Tuesday, April 5, 2022** to reconvene the conference.<br><br>IT IS FURTHER ORDERED that the parties shall have until **Tuesday, April 12, 2022** to file either a stipulated discovery plan and scheduling order or for Defendants to re-file their separate discovery plan and scheduling order if Plaintiff does not cooperate in the Federal Rule of Civil Procedure 26(f) conference process.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - KL) (Entered: 03/29/2022) |
| 04/12/2022 | 44 | Proposed Discovery Plan and Scheduling Order by Defendant Experian Information Solutions Inc. (Gordon, Benjamin) (Entered: 04/12/2022) |
| 04/12/2022 | 45 | Proposed Discovery Plan and Scheduling Order by Plaintiff Blanton Banks, II. (LOE) (Entered: 04/13/2022) |
| 04/14/2022 | 46 | Joint MOTION or Request for Scheduling Conference re 43 Order on Discovery Plan and Scheduling Order,,,, Minute Order,,, by Defendant Experian Information Solutions Inc. Responses due by 4/28/2022. (Gordon, Benjamin) (Entered: 04/14/2022) |
| 04/14/2022 | 47 | CLERK'S NOTICE that in order to create a caseload for U.S. District Judge Cristina D. Silva, this case is reassigned to Judge Cristina D. Silva for all further proceedings. All further documents must bear the correct case number **2:21-cv-01580-CDS-DJA**. **(no image attached)** (ABG) (Entered: 04/14/2022) |
| 04/14/2022 | 48 | SCHEDULING ORDER granting in part and denying in part 44 Discovery Plan and Scheduling Order and 45 Discovery Plan and Scheduling Order. Discovery due by 8/1/2022. Motions due by 8/31/2022. Proposed Joint Pretrial Order due by 9/30/2022. See order for further details.<br>Signed by Magistrate Judge Daniel J. Albregts on 4/14/2022. (Copies have been distributed pursuant to the NEF - KF) (Entered: 04/14/2022) |
| 04/14/2022 | 49 | NOTICE PURSUANT TO LOCAL RULE IB 2-2: In accordance with 28 USC § 636(c) and FRCP 73, the parties in this action are provided with a link to the "AO 85 Notice of Availability, Consent, and Order of Reference - Exercise of Jurisdiction by a U.S. Magistrate Judge" form on the Court's website - www.nvd.uscourts.gov. **AO 85 Consent forms should NOT be electronically filed.** Upon consent of all parties, counsel are advised to manually file the form with the Clerk's Office. (A copy of form AO 85 has been mailed to parties not receiving electronic service.) **(no image attached)** (KF) (Entered: 04/14/2022) |
| 04/18/2022 | 50 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Daniel J. Albregts on 4/18/2022.<br><br>Re: 46 Joint Motion or Request for Scheduling Conference. Having reviewed Defendants' motion, the Court finds that it is moot given the Court's order granting Defendants' and Plaintiff's previous discovery plan and scheduling orders in part. (ECF No. 48 ). IT IS THEREFORE ORDERED that Defendants' motion 46 is denied as moot.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - KL) (Entered: 04/18/2022) |

| 05/11/2022 | 51 | **View Corrected Image at 52 :** Joint MOTION for Protective Order by Defendant Experian Information Solutions Inc. (Braster, Jennifer) Modified on 5/11/2022 (DRS). (Entered: 05/11/2022) |
|---|---|---|
| 05/11/2022 | 52 | NOTICE of Corrected Image/Document re 51 Motion for Protective Order by Defendant Experian Information Solutions Inc. (Service of corrected image is attached.) (Braster, Jennifer) (Entered: 05/11/2022) |
| 05/13/2022 | 54 | NOTICE OF ERRATA to 53 Response by Plaintiff Blanton Banks, II. (KF) (Entered: 05/13/2022) |
| 05/13/2022 | 55 | NOTICE of Corrected Image/Document re 53 Response by Plaintiff Blanton Banks, II. (Service of corrected image is attached.) (KF) (Entered: 05/13/2022) |
| 05/16/2022 | 56 | REPLY to Response to 51 Motion for Protective Order by Defendant Experian Information Solutions Inc. (Gordon, Benjamin) (Entered: 05/16/2022) |
| 05/25/2022 | 57 | NOTICE of intent to dismiss pursuant to FRCP 4(m). The * Amended Complaint* in this action was filed on* 12/29/2021.* To date no proper proof of service has been filed as to*Aargon Agency Inc, Asset Recovery Solutions LLC, I.C. System Inc, TBOM/Total Card, Trans Union LLC, Kaps & Co USA LLC, First Premier Bank, US Auto Credit Purchase, I.Q. Data International Inc. and Wells Fargo Bank,.* FRCP 4(m) dismissal deadline set for 6/24/2022. (DRS) (Entered: 05/25/2022) |
| 05/27/2022 | 59 | NOTICE of Change of Phone Number by Plaintiff Blanton Banks, II. Docket updated. (KF) (Entered: 06/01/2022) |
| 06/01/2022 | 58 | CERTIFICATE of Interested Parties by Ad Astra Recovery Services Inc that identifies all parties that have an interest in the outcome of this case. Corporate Parent Curo Intermediate Holdings Corp., Corporate Parent Curo Group Holdings Corp. for Ad Astra Recovery Services Inc added. (Bacon, Mary) (Entered: 06/01/2022) |
| 06/07/2022 | 60 | AFFIDAVIT of Service re 12 Amended Complaint, by Plaintiff Blanton Banks, II. (KF) (Entered: 06/08/2022) |
| 06/07/2022 | 61 | MOTION for Entry of Clerk's Default by Plaintiff Blanton Banks, II. Responses due by 6/21/2022. (Attachments: # 1 Affidavit) (KF) (Entered: 06/10/2022) |
| 06/14/2022 | 62 | NOTICE of Appearance by attorney Rachael Swernofsky on behalf of Defendant Trans Union LLC. (Swernofsky, Rachael) (Entered: 06/14/2022) |
| 06/14/2022 | 63 | MOTION to Dismiss by Defendant Trans Union LLC. Responses due by 6/28/2022. (Swernofsky, Rachael) (Entered: 06/14/2022) |
| 06/14/2022 | 64 | CERTIFICATE of Interested Parties by Trans Union LLC that identifies all parties that have an interest in the outcome of this case. Corporate Parent TransUnion Intermediate Holdings, Inc., Corporate Parent TransUnion, Other Affiliate T. Rowe Price Group, Inc. for Trans Union LLC added. (Swernofsky, Rachael) (Entered: 06/14/2022) |
| 06/14/2022 | 65 | MINUTE ORDER IN CHAMBERS of the Honorable District Judge Cristina D. Silva on 6/14/2022. Regarding the Requirements of *Klingele v. Eikenberry* and *Rand v. Rowland* as to 63 Motion to Dismiss. Opposition due 14 days from the date of this Minute Order, and reply due seven 7 days after the filing of the opposition. (Copies have been distributed pursuant to the NEF - DRS) (Entered: 06/14/2022) |
| 06/14/2022 | 66 | MINUTE ORDER IN CHAMBERS of the Honorable District Judge Cristina D. Silva on 6/14/2022. |

Pending before the Court are the Plaintiff Blanton Banks, II's 24 Motion to Strike 17 Answer to Amended Complaint; 29 Motion to Strike 22 Answer to Amended Complaint; and 61 Motion for Entry of Clerk's Default. Also pending before the Court are the 25 Motion to Dismiss filed by Defendant Ad Astra Recovery Services Inc; the 27 Joint Motion for Judgment on the Pleadings filed by Equifax Information Services, LLC and by Defendant Experian Information Solutions Inc.; and the 51 (found at corrected image 52 ) Defendants' Joint Motion for Protective Order filed by Defendants Experian Information Solutions, Inc., Equifax Information Services, LLC, and Ad Astra Recovery Services, Inc.

Accordingly, **IT IS HEREBY ORDERED** that these matters are set for hearing on June 28, 2022 at 9:30 a.m. before Judge Cristina D. Silva in LV Courtroom 6B.

**(no image attached)** (Copies have been distributed pursuant to the NEF - JLB) (Entered: 06/14/2022)

| | | |
|---|---|---|
| 06/16/2022 | 67 | NOTICE of Appearance by attorney Jennifer Rebecca Bergh on behalf of Defendant Equifax Information Services LLC. (Bergh, Jennifer) (Entered: 06/16/2022) |
| 06/16/2022 | 68 | MOTION for Leave to Appear via Zoom, Attorney Jennifer R. Bergh, by Defendant Equifax Information Services LLC. (Marina, Gia) (Entered: 06/16/2022) |
| 06/17/2022 | 69 | MOTION for Leave to Appear Remotely, Attorney Rachael Swernofsky, by Defendant Trans Union LLC. (Attachments: # 1 Proposed Order) (Swernofsky, Rachael) (Entered: 06/17/2022) |
| 06/17/2022 | 70 | ORDER Granting 69 Motion for Leave to Appear Remotely at Hearing as to Defendant Trans Union LLC. See Order for further details. Signed by District Judge Cristina D. Silva on 6/17/2022.(Copies have been distributed pursuant to the NEF - KF) (Entered: 06/21/2022) |
| 06/21/2022 | 71 | MOTION for Leave to Appear Remotely at the Hearing, by Plaintiff Blanton Banks, II. Responses due by 7/5/2022. (Attachments: # 1 Proposed Order) (KF) (Entered: 06/21/2022) |
| 06/21/2022 | 72 | ORDER Granting 71 Motion or Leave to Appear Remotely at the Hearing. Signed by District Judge Cristina D. Silva on 6/21/2022.(Copies have been distributed pursuant to the NEF - KF) (Entered: 06/21/2022) |
| 06/21/2022 | 73 | MINUTE ORDER IN CHAMBERS of the Honorable District Judge Cristina D. Silva on 6/21/2022.<br><br>Pending before the Court is the 68 Motion for Leave to Appear via Zoom filed by Equifax Information Services LLC ("Defendant"). In the motion, Defendant requests the opportunity to appear remotely due to ongoing concerns regarding the uptick in Covid-19. Accordingly, for good cause shown, **IT IS HEREBY ORDERED** that Defendant's Motion is hereby **GRANTED**.<br><br>The courtroom administrator will provide counsel with the Zoom link to attend via video conference. If additional participants need to appear, counsel is directed to contact the courtroom administrator Denise Saavedra at denise_saavedra@nvd.uscourts.gov.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - JLB) (Entered: 06/21/2022) |
| 06/27/2022 | 74 | AFFIDAVIT of Facts by Plaintiff Blanton Banks, II. (KF) (Entered: 06/27/2022) |

| 06/27/2022 | 75 | MOTION to Dismiss 12 Amended Complaint, 8 Complaint by Defendant First Premier Bank. Responses due by 7/11/2022. Discovery Plan/Scheduling Order due by 8/11/2022. (Attachments: # 1 Exhibit 1) (Tasca, Joel)<br><br>NOTICE of Certificate of Interested Parties requirement: Under Local Rule 7.1-1, a party must *immediately* file its disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court. (Entered: 06/27/2022) |
|---|---|---|
| 06/27/2022 | 76 | RESPONSE to 61 Motion for Entry of Clerks Default by Defendant First Premier Bank. Replies due by 7/4/2022. (Tasca, Joel) (Entered: 06/27/2022) |
| 06/27/2022 | 77 | RESPONSE to 61 Motion for Entry of Clerks Default by Defendants I.C. System Inc, Trans Union LLC. Replies due by 7/4/2022. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Bonds, Kurt) (Entered: 06/27/2022) |
| 06/28/2022 | 78 | CERTIFICATE of Interested Parties by First Premier Bank that identifies all parties that have an interest in the outcome of this case. Corporate Parent United National Corporation for First Premier Bank added. (Clark, Andrew) (Entered: 06/28/2022) |
| 06/28/2022 | 79 | RESPONSE to 63 Motion to Dismiss, by Plaintiff Blanton Banks, II. Replies due by 7/5/2022. (KF) Modified link to proper MTD 63 by TransUnion rather than 75 by First Premier on 7/22/2022 (DRS). (Entered: 06/29/2022) |
| 06/28/2022 | 80 | MINUTES OF PROCEEDINGS - Motion Hearing held on 6/28/2022 before District Judge Cristina D. Silva. Crtrm Administrator: *D. Saavedra*; Pla Counsel: *Blanton Banks, Pro Se appearing by video conference*; Def Counsel: *Jennifer Braster for Experian, Mary Bacon for Ad Astra, Jennifer Bergh for Equifax appearing by video conference, Rachael Swernofsky for Trans Union appearing by video conference, Gia Marina for Equifax appearing by video conference, Benjamin Gordon for Experian, Paige Christie for Experian, Nicholas Psyk for IC System Inc. appearing by video conference, Andrew Clark for First Premier Bank*; Court Reporter: *Samantha McNett*; Time of Hearing: *9:38 a.m. - 11:06 a.m.*; Courtroom: *6B*;<br><br>Parties are present by video conference and in-person. The Court made preliminary remarks are heard representations of counsel regarding plaintiffs' motion to strike #17 answer to amended complaint 24 , defendants' Ad Astra motion to dismiss or stay proceedings and compel arbitration 25 , defendant's joint motion for judgment on the pleadings 27 , motion to strike #22 answer to amended complaint 29 , defendants' joint motion for protective order 51 / 52 , plaintiff's motion for entry of clerk's default 61 . The Court places her findings and conclusions on the record. As stated on the record, plaintiffs' motion to strike #17 answer to amended complaint 24 is denied as moot, defendants Ad Astra motion to dismiss is denied without prejudice as to the motion to stay and compel arbitration is granted 25 . The matter is stayed for a period of six months. The Court grants defendant's joint motion for judgment on the pleadings 27 , motion to strike #22 answer to amended complaint 29 is denied without prejudice, defendants' joint motion for protective order 51 / 52 is denied as moot, and plaintiff's motion for entry of clerk's default 61 is denied.<br><br>The transcript will serve as the Court's findings of fact and conclusion of law.<br><br>Status Hearing set for 1/26/2023 at 10:00 AM in LV Courtroom 6B before District Judge Cristina D. Silva.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DXS) (Entered: 06/29/2022) |

| 06/29/2022 | 81 | NOTICE OF APPEAL by Plaintiff Blanton Banks, II. (Filing fee $ 505 - NOT PAID) E-mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit. (KF) (Entered: 06/30/2022) |
|---|---|---|
| 06/30/2022 | 83 | USCA ORDER for Time Schedule as to 81 Notice of Appeal filed by Blanton Banks, II. **USCA Case Number 22-15971**. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 07/14/2022) |
| 07/05/2022 | 82 | REPLY to Response to 63 Motion to Dismiss by Defendant Trans Union LLC. (Swernofsky, Rachael) (Entered: 07/05/2022) |
| 07/28/2022 | 84 | TRANSCRIPT DESIGNATION by Plaintiff Blanton Banks, II re 81 Notice of Appeal, 80 Minutes re Motion Hearing. (KF) (Entered: 07/28/2022) |
| 08/11/2022 | 85 | STATUS REPORT by Defendant First Premier Bank.. (Attachments: # 1 Exhibit A (Proposed Discovery Plan))(Clark, Andrew) (Entered: 08/11/2022) |
| 08/12/2022 | 86 | CLERK'S NOTICE. Attorney Action Required to ECF No. 85 . In Order to be in compliance with LR IC 2-2(b) and LR IC 2-2(c) by filing two separate documents for each request or purpose, Counsel is kindly directed to extract and file the Exhibit attached at 85 as a Proposed Stipulated Discovery Plan. **(no image attached)** (DRS) (Entered: 08/12/2022) |
| 08/12/2022 | 87 | Submission of PROPOSED Discovery ORDER on 85 Status Report by Defendant First Premier Bank. (Clark, Andrew) Modified title on 8/12/2022 (DRS). (Entered: 08/12/2022) |
| 08/17/2022 | 89 | ORDER of USCA, Ninth Circuit, DISMISSED as to 81 Notice of Appeal filed by Blanton Banks, II. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 08/22/2022) |
| 08/18/2022 | 88 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Daniel J. Albregts on 8/18/2022.<br><br>Re: 87 Submission of proposed discovery order. Having reviewed First Premier Bank's status report (ECF No. 85 ) and proposed discovery order (ECF No. 87 ), the Court finds that a discovery plan and scheduling order is unnecessary for two reasons. First, Plaintiff has appealed his case. (ECF No. 83 ). Second, there is already a discovery plan and scheduling order that governs discovery in this matter. (ECF No. 48 ). It appears that the deadline for a discovery plan and scheduling order generated in the docket text (ECF No. 75 ) was in error. Because a new discovery plan and scheduling order is unnecessary, the Court denies First Premier Bank's request to enter one.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - KL) (Entered: 08/18/2022) |
| 09/01/2022 | 90 | MOTION for Production of Reporter's Hearing Transcript at Government Expense re 80 Minutes of Proceeding, by Plaintiff Blanton Banks, II. Responses due by 9/15/2022. (KF) (Entered: 09/02/2022) |
| 09/01/2022 | 91 | NOTICE of Change of Address by Plaintiff Blanton Banks, II. Address updated to 3965 15th Street, Ecorse, MI, 48229. (KF) (Entered: 09/02/2022) |
| 09/08/2022 | 92 | ORDER Denying 90 Motion for Production of Reporter's Hearing Transcript at Government Expense. Signed by Magistrate Judge Daniel J. Albregts on 9/8/2022. (Copies have been distributed pursuant to the NEF - TRW) (Entered: 09/08/2022) |
| 09/08/2022 | 93 | MANDATE of USCA, Ninth Circuit, as to 89 USCA Order, DISMISSED, re 81 Notice of Appeal filed by Blanton Banks, II. (Copies have been distributed pursuant to the NEF - |

| | | JQC) (Entered: 09/16/2022) |
|---|---|---|
| 09/16/2022 | 95 | ORDER on Mandate as to Plaintiff Blanton Banks, II re 89 USCA Order and 93 USCA Mandate. IT IS ORDERED that the mandate be spread upon the records of this Court. The appeal is dismissed. Signed by Judge Cristina D. Silva on 9/16/2022. (Copies have been distributed pursuant to the NEF - TRW) (Entered: 09/16/2022) |
| 09/26/2022 | 96 | CERTIFICATE of Interested Parties by I.C. System Inc. There are no known interested parties other than those participating in the case. (Bonds, Kurt) (Entered: 09/26/2022) |
| 09/26/2022 | 97 | MOTION to Dismiss by Defendant I.C. System Inc. Responses due by 10/10/2022. Discovery Plan/Scheduling Order due by 11/10/2022. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Bonds, Kurt)<br><br>NOTICE of Certificate of Interested Parties requirement: Under Local Rule 7.1-1, a party must immediately file its disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court. (Entered: 09/26/2022) |
| 09/27/2022 | 98 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Cristina D. Silva on 9/27/2022. Regarding the Requirements of *Klingele v. Eikenberry* and *Rand v. Rowland* as to 97 Motion to Dismiss,. Opposition due 14 days from the date of this Minute Order, and reply due seven 7 days after the filing of the opposition. (Copies have been distributed pursuant to the NEF - KF) (Entered: 09/27/2022) |
| 10/10/2022 | 99 | RESPONSE to 97 Motion to Dismiss by Plaintiff Blanton Banks, II. Replies due by 10/17/2022. (TRW) (Entered: 10/11/2022) |
| 10/17/2022 | 100 | REPLY to Response to 97 Motion to Dismiss, by Defendant I.C. System Inc. (Bonds, Kurt) (Entered: 10/17/2022) |
| 12/14/2022 | 101 | ORDER.<br>IT IS ORDERED that the Clerk of Court re-file plaintiff's amended complaint (ECF No. 12 ) with all exhibits filed by plaintiff at ECF No. 13 within 3 days of this order. The refiled complaint with the exhibits will serve as the operative complaint.<br>IT IS FURTHER ORDERED that defendant TransUnion's motion to dismiss [ECF No. 63 ] is GRANTED IN PART and DENIED IN PART.<br>IT IS FURTHER ORDERED that defendant ICS's motion to dismiss [ECF No. 97 ] is GRANTED IN PART and DENIED IN PART.<br>IT IS FURTHER ORDERED that defendant First Premier's motion to dismiss [ECF No. 75 ] is GRANTED.<br>See Order for further details.<br>Signed by Judge Cristina D. Silva on 12/14/2022. (Copies have been distributed pursuant to the NEF - KF) (Entered: 12/15/2022) |
| 12/14/2022 | 102 | COMPLAINT against Defendants by Blanton Banks, II. Proof of service due by 3/14/2023. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit) (Filed per 101 Order - KF) (Entered: 12/15/2022) |
| 12/28/2022 | 103 | WAIVER OF SERVICE Returned Executed by I.C. System Inc. I.C. System Inc waiver sent on 11/4/2021, answer due 1/3/2022. (Bonds, Kurt) (Entered: 12/28/2022) |
| 12/28/2022 | 104 | MOTION to Withdraw as Attorney by Andrew S. Clark for Defendant First Premier Bank. Responses due by 1/11/2023. (Tasca, Joel) (Entered: 12/28/2022) |
| 12/29/2022 | 105 | NOTICE *of Stay* by Ad Astra Recovery Services Inc.. (Bacon, Mary) (Entered: 12/29/2022) |

| 12/30/2022 | 106 | ORDER Granting 104 Motion to Withdraw as Attorney. Andrew Clark withdrawn from the case. Signed by Magistrate Judge Daniel J. Albregts on 12/30/2022.(Copies have been distributed pursuant to the NEF - KF) (Entered: 12/30/2022) |
|---|---|---|
| 12/30/2022 | 107 | ORDER Directing parties to participate in Settlement Conference. IT IS ORDERED that this case is REFERRED to the magistrate judge for a mandatory settlement conference between Banks and ICS only. Signed by Judge Cristina D. Silva on 12/30/2022. (Copies have been distributed pursuant to the NEF - LOE) (Entered: 12/30/2022) |
| 01/05/2023 | 108 | ORDER setting Settlement Conference. Settlement Conference set for 3/13/2023 at 10:00 AM in LV Courtroom 3A before Magistrate Judge Daniel J. Albregts. See Order for further details. Signed by Magistrate Judge Daniel J. Albregts on 1/5/2023. (Copies have been distributed pursuant to the NEF - KF) (Entered: 01/06/2023) |
| 01/18/2023 | 109 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Cristina D. Silva on 1/18/2023. By Deputy Clerk: D. Saavedra.<br><br>Status Hearing set for 1/26/2023 at 10:00 AM is RESCHEDULED to **10:30 AM** in LV Courtroom 6B before Judge Cristina D. Silva.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DXS) (Entered: 01/18/2023) |
| 01/19/2023 | 110 | MOTION for Leave to Appear Remotely at Status Hearing, Attorney Rachael Swernofsky, by Defendant Trans Union LLC. Responses due by 2/2/2023. (Attachments: # 1 Proposed Order)(Swernofsky, Rachael) (presiding) (Entered: 01/19/2023) |
| 01/19/2023 | 111 | ORDER Granting 110 Motion for Leave to Appear Remotely. Counsel for Trans Union LLC is granted leave to appear at the Status Hearing set for 1/26/2023, at 10:30 a.m. (PT) in the above-captioned civil action via videoconference.<br>Signed by Judge Cristina D. Silva on 1/19/2023.(Copies have been distributed pursuant to the NEF - KF) (Entered: 01/19/2023) |
| 01/19/2023 | 112 | MOTION for Leave to Appear Remotely at the Hearing by Plaintiff Blanton Banks, II. Responses due by 2/2/2023. (Attachments: # 1 Proposed Order)(KF) (Entered: 01/20/2023) |
| 01/19/2023 | 113 | MOTION for Continuance of Status Check Hearing on Arbitration, by Plaintiff Blanton Banks, II. Responses due by 2/2/2023. (Attachments: # 1 Proposed Order)(KF) (Entered: 01/20/2023) |
| 01/19/2023 | 114 | MOTION Requesting Issuance ad Service of Summons, by Plaintiff Blanton Banks, II. Responses due by 2/2/2023. (KF) (Entered: 01/20/2023) |
| 01/20/2023 | 115 | ORDER Granting 113 Motion to Continue Status Check Hearing on Arbitration. Status Conference set for 2/28/2023 at 11:30 AM in LV Courtroom 6B before Judge Cristina D. Silva. Signed by Judge Cristina D. Silva on 1/20/2023. (Copies have been distributed pursuant to the NEF - KF) (Entered: 01/23/2023) |
| 01/23/2023 | 116 | ORDER.<br>IT IS ORDERED that plaintiff's motion for leave to appear remotely [ECF No. 112 ] is granted. Plaintiff Blanton Banks is granted leave to appear telephonically at the status hearing set for 2/28/2023.<br>Signed by Judge Cristina D. Silva on 1/23/2023.(Copies have been distributed pursuant to the NEF - KF) (Entered: 01/24/2023) |
| 02/07/2023 | 117 | NOTICE of Appearance by attorney Kurt R. Bonds on behalf of Defendant Trans Union LLC. (Bonds, Kurt) (Entered: 02/07/2023) |

| 02/09/2023 | 118 | ANSWER to 102 Complaint, filed by I.C. System Inc.(Bonds, Kurt) (Entered: 02/09/2023) |
|---|---|---|
| 02/09/2023 | 119 | MOTION for Summary Judgment by Defendant I.C. System Inc. Responses due by 3/2/2023. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Bonds, Kurt) (Entered: 02/09/2023) |
| 02/10/2023 | 120 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Cristina D. Silva on 2/10/2023. Regarding the Requirements of *Klingele v. Eikenberry* and *Rand v. Rowland* as to 119 Motion for Summary Judgment. Opposition due 21 days from the date of this Minute Order, and reply due 14 days after the filing of the opposition. (Copies have been distributed pursuant to the NEF - KF) (Entered: 02/10/2023) |
| 02/28/2023 | 121 | MOTION/VERIFIED PETITION for Permission to Practice Pro Hac Vice by Jibril Greene and DESIGNATION of Local Counsel Kurt R. Bonds (Filing fee $ 250 receipt number ANVDC-7219688) by Defendant Trans Union LLC. (Bonds, Kurt) (Entered: 02/28/2023) |
| 02/28/2023 | 122 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Cristina D. Silva on 2/28/2023.<br><br>I defer ruling on the verified petition to practice pro hac vice (ECF No. 121 ) as it does not comply with this district's local rules. Counsel failed to attach the required "certification issued within six months before the date of filing of the verified petition [showing] that the applicant's membership is in good standing from the state bar or from the clerk of court of the supreme court or highest admitting court of every state, territory, or insular possession of the United States in which the applicant has been admitted to practice law." LR IA 11-2(b)(3). Counsel is advised to correct the aforementioned deficiency on an amended petition and then file it using the "Notice of Corrected Image/Document" event to link it to the existing filing (ECF No. 121 ). Counsel has until March 17, 2023, to do so without incurring additional filing fees. Counsel's failure to amend by that date will result in the repayment of the relevant fees.<br><br>(no image attached) (Copies have been distributed pursuant to the NEF - JLB) (Entered: 02/28/2023) |
| 02/28/2023 | 123 | NOTICE of Corrected Image/Document re 121 Motion for Permission to Practice Pro Hac Vice - Verified Petition for attorney Jibril Greene, by Defendant Trans Union LLC. (Service of corrected image is attached.). (Bonds, Kurt) (Entered: 02/28/2023) |
| 02/28/2023 | 125 | MINUTES OF PROCEEDINGS - Status Conference held on 2/28/2023 before Judge Cristina D. Silva. Crtrm Administrator: *D. Saavedra*; Pla Counsel: *Blanton Banks, Pro Se by Zoom video conference*; Def Counsel: *Nicholas Psyk, Linda Williams; Jibril Greene by zoom-video conference*; Court Reporter: *Samantha McNett*; Time of Hearing: *11:47 a.m. - 11:53 a.m.*; Courtroom: *6B*; Parties are present in person and by zoom video conference. The Court makes preliminary remarks and hears representations from parties. Status hearing is set for 6/29/2023 at 10:00 AM in LV Courtroom 6B before Judge Cristina D. Silva. **(no image attached)** (Copies have been distributed pursuant to the NEF - DXS) (Entered: 03/01/2023) |
| 03/01/2023 | 124 | ORDER Granting 121 Verified Petition for Permission to Practice Pro Hac Vice for Attorney Jibril Greene for Trans Union LLC and approving Designation of Local Counsel as to Kurt R. Bonds. Signed by Judge Cristina D. Silva on 3/1/2023.<br>Any Attorney not yet registered with the Court's e-filng system shall register on the PACER website www.pacer.gov<br>(Copies have been distributed pursuant to the NEF - KF) (Entered: 03/01/2023) |

| 03/02/2023 | 126 | RESPONSE to 119 Motion for Summary Judgment by Plaintiff Blanton Banks, II. Replies due by 3/16/2023. (KF) (Entered: 03/03/2023) |
|---|---|---|
| 03/03/2023 | 127 | First STIPULATION *and Order for Leave to Conduct Settlement Conference Remotely* by Defendant I.C. System Inc. (Attachments: # 1 Exhibit)(Bonds, Kurt) (other) (settlement) (Entered: 03/03/2023) |
| 03/03/2023 | 128 | NOTICE of Corrected Image/Document re 127 Stipulation by Defendant I.C. System Inc. (Service of corrected image is attached.). (Attachments: # 1 Exhibit)(Bonds, Kurt) (Entered: 03/03/2023) |
| 03/07/2023 | 129 | ORDER Granting 127 Stipulation for Leave to Conduct Settlement Conference Remotely. Signed by Magistrate Judge Daniel J. Albregts on 3/7/2023. (Copies have been distributed pursuant to the NEF - KF) (Entered: 03/07/2023) |
| 03/10/2023 | 130 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Daniel J. Albregts on 3/10/2023.<br><br>Re: 128 Stipulation to conduct settlement conference remotely. The parties have requested authority to appear at the March 13, 2023 settlement conference via videoconference. The Court has granted this request 129 and takes this opportunity to remind the parties that, although the conference is proceeding via videoconference, the same decorum expected at in-person hearings will be expected here. Specifically, the parties are expected to appear via video (not just via audio) and must not engage in any distracting behavior like driving, walking around, and completing other tasks. The Court may end the conference if the parties do not abide by this directive.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - TG) (Entered: 03/10/2023) |
| 03/13/2023 | 131 | MINUTES OF PROCEEDINGS - Settlement Conference held on 3/13/2023 before Magistrate Judge Daniel J. Albregts. Crtrm Administrator: *J. Ries*; Def Counsel: *Nicholas Psyk*; Recording start and end times: *10:06 - 11:50*; Courtroom: *3A*; Also present were Blanton Banks and Christine Leick. The court heard presentations from counsel and the parties present and met with each side in caucuses. Offers and counteroffers were exchanged. A settlement was not reached. Counsel may jointly contact the court to request an additional settlement conference if they agree that additional negotiations would be helpful. ORDERED this court recuses itself and directs the clerk of court to randomly reassign another magistrate judge to this case. **(no image attached)** (Copies have been distributed pursuant to the NEF - JAR) (Entered: 03/13/2023) |
| 03/16/2023 | 132 | CLERK'S NOTICE that this case is randomly reassigned to Magistrate Judge Cam Ferenbach for all further proceedings consistent with his jurisdiction. All further documents must bear the correct case number **2:21-cv-01580-CDS-VCF. (no image attached)** (WJ) (Entered: 03/16/2023) |
| 03/16/2023 | 133 | REPLY to Response to 119 Motion for Summary Judgment by Defendant I.C. System Inc. (Bonds, Kurt) (Entered: 03/16/2023) |
| 04/05/2023 | 134 | ORDER Re: 114 Motion. Motion Hearing set for 4/26/2023 at 11:00 AM in LV Courtroom 3D before Magistrate Judge Cam Ferenbach. Signed by Magistrate Judge Cam Ferenbach on 4/5/2023. (Copies have been distributed pursuant to the NEF - KF) (Entered: 04/06/2023) |
| 04/12/2023 | 135 | Motion for ~~NOTICE of~~ Voluntary Dismissal with Prejudice as to Ad Astra Recovery Services Inc, by Plaintiff Blanton Banks, II. (KF) Modified on 4/13/2023 (WJ) (Entered: 04/13/2023) |

| 04/13/2023 | 136 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Cristina D. Silva on 4/13/2023.<br><br>Pro se plaintiff Blanton Banks II moves for voluntary dismissal of defendant Ad Astra Recovery Services, Inc. ECF No. 135 . However, a plaintiff may only voluntarily dismiss an action by filing a notice of dismissal "before the opposing party serves either an answer or a motion for summary judgment[.]" Fed. R. Civ. P. 41(a)(1)(A)(i). Here, Ad Astra has already filed an answer. ECF No. 22 . Accordingly, IT IS HEREBY ORDERED that Banks's motion for voluntary dismissal of Ad Astra (ECF No. 135 ) is DENIED. The parties must file a joint stipulation to dismiss, or a joint status report addressing the status of dismissal documents, on or before May 5, 2023.<br><br>(no image attached) (Copies have been distributed pursuant to the NEF - JLB) (Entered: 04/13/2023) |
| --- | --- | --- |
| 04/19/2023 | 137 | MOTION for Leave to Appear Remotely, re 134 Order re 114 Motion by Plaintiff Blanton Banks, II. Responses due by 5/3/2023. (KF) (Entered: 04/20/2023) |
| 04/21/2023 | 138 | ORDER Granting 137 Motion for Leave to Appear Telephonically. See Order for Details. Signed by Magistrate Judge Cam Ferenbach on 4/21/2023. (Copies have been distributed pursuant to the NEF - JQC) (JQC). (Entered: 04/21/2023) |
| 04/25/2023 | 139 | MOTION for Leave to Appear Attorney Jibril Greene, re 134 Order by Defendant Trans Union LLC. Responses due by 5/9/2023. (Attachments: # 1 Proposed Order)(Bonds, Kurt) (presiding) (Entered: 04/25/2023) |
| 04/25/2023 | 140 | MOTION for Leave to Appear Telephonically, Attorney Nicholas Psyk, re 134 Order by Defendant I.C. System Inc. Responses due by 5/9/2023. (Attachments: # 1 Proposed Order)(Bonds, Kurt) (presiding) (Entered: 04/25/2023) |
| 04/25/2023 | 141 | ORDER Granting 139 Motion for Leave to Appear Telephonically. See Order for Details. Signed by Magistrate Judge Cam Ferenbach on 4/25/2023. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 04/25/2023) |
| 04/25/2023 | 142 | ORDER Granting 140 Motion for Leave to Appear Telephonically. See Order for Details. Signed by Magistrate Judge Cam Ferenbach on 4/25/2023. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 04/25/2023) |
| 04/26/2023 | 143 | MINUTES OF PROCEEDINGS - Motion Hearing held on 4/26/2023 before Magistrate Judge Cam Ferenbach. Crtrm Administrator: *T. Renfro*; Pla Counsel: *Blanton Banks, Pro Se*; Def Counsel: *Jennifer Braster, Gia Marina, Mary Bacon, Jibril Greene, Nicholas Psyk*; Recording start and end times: *11:16 - 11:43 am*; Courtroom: *3D*;<br><br>The Court makes preliminary remarks and hears representations of the parties. Parties agree that Defendants Equifax and Experian should be terminated as defendants of this case. IT IS ORDERED that 114 is GRANTED in PART and DENIED in PART. It is Granted to the extent that the Plaintiff may serve Transunion LLC, First Premier Bank, US Auto Credit Purchase, I.Q. Data International, KAPS & Co USA, LLC, TBOM/Total Card Inc., Asset Recovery Solutions, LLC and Aargon Agency, Inc. Proof of Service is due June 26, 2023.<br><br>(Copies have been distributed pursuant to the NEF - TR) (Entered: 04/26/2023) |
| 04/27/2023 | 144 | Joint STIPULATION FOR DISMISSAL *of Ad Astra Recovery Services, Inc.* by Defendant Ad Astra Recovery Services Inc. (Bacon, Mary) (dismissal) (Entered: 04/27/2023) |

| 05/02/2023 | 145 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Cristina D. Silva on 5/2/2023.<br><br>The parties jointly stipulate to dismiss the claims against defendant Ad Astra Recovery Services, Inc. under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). ECF No. 144 . Because the parties reached a settlement resolving the plaintiff's claims against Ad Astra, IT IS THEREFORE ORDERED that the joint stipulation for dismissal of Ad Astra (ECF No. 144 ) is GRANTED with prejudice and with no fees or costs to either party.<br><br>(no image attached) (Copies have been distributed pursuant to the NEF - JLB) (Entered: 05/02/2023) |
| --- | --- | --- |
| 06/14/2023 | 146 | SUMMONS ISSUED as to Aargon Agency Inc., I.Q. Data International Inc, Kaps & Co USA LLC, TBOM/Total Card, Trans Union LLC, US Auto Credit Purchase. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons) (CAH) (Entered: 06/14/2023) |
| 06/26/2023 | 149 | MOTION FOR A 3 DAY ENLARGEMENT OF TIME by Plaintiff Blanton Banks, II. Responses due by 7/10/2023. (CAH) (misc) (Entered: 06/28/2023) |
| 06/27/2023 | 147 | MOTION for Leave to Appear Telephonically, Attorney Kurt R. Bonds, by Defendant Trans Union LLC. Responses due by 7/11/2023. (Attachments: # 1 Proposed Order) (Bonds, Kurt) (presiding) (Entered: 06/27/2023) |
| 06/27/2023 | 148 | MOTION for Leave to Appear Telephonically, Attorney Kurt R. Bonds, by Defendant I.C. System Inc. Responses due by 7/11/2023. (Attachments: # 1 Proposed Order)(Bonds, Kurt) (presiding) (Entered: 06/27/2023) |
| 06/27/2023 | 150 | ORDER **granting** ECF No. 147 Motion for Leave to Appear Remotely at Status Hearing. IT IS ORDERED that counsel for Trans Union LLC is granted leave to appear by video conference at the status hearing set for June 29, 2023, at 10:00 a.m. (PT) in the above-captioned civil action. Counsel is kindly **directed** to email the Courtroom Administrator, Denise Saavedra at denise_saavedra@nvd.uscourts.gov, to obtain access information. Signed by Judge Cristina D. Silva on 6/27/2023.(Copies have been distributed pursuant to the NEF - DLS) (Entered: 06/28/2023) |
| 06/27/2023 | 151 | MOTION for Leave to Appear Telephonically, by Plaintiff Blanton Banks, II. Responses due by 7/11/2023. (CAH) (presiding) (Entered: 06/28/2023) |
| 06/27/2023 | 152 | SUMMONS Returned Executed by Blanton Banks, II. Aargon Agency Inc. served on 6/22/2023; I.Q. Data International Inc served on 6/27/2023; Trans Union LLC served on 6/27/2023; US Auto Credit Purchase served on 6/22/2023. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons)(CAH) (Entered: 06/28/2023) |
| 06/28/2023 | 153 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Cristina D. Silva on 6/28/2023.<br><br>Pro se plaintiff Blanton Banks II and defendant I.C. System Inc. separately move for leave to appear remotely at the status hearing set for June 29, 2023, at 10:00 a.m. ECF Nos. 148 , 151 . Banks also seeks a 3-day "enlargement" of time in this case (ECF No. 149 ), which I liberally construe as a request to continue the status hearing. Because Banks and defendant Ad Astra Recovery Services, Inc. reached a settlement resolving Banks's claims against Ad Astra, the June 29, 2023, hearing on the status of their arbitration is VACATED.<br><br>IT IS THEREFORE ORDERED that Banks's motions (ECF Nos. 149 , 151 ) are DENIED as moot. IT IS FURTHER ORDERED that I.C. System's motion (ECF No. 151 |

| | | |
|---|---|---|
| | | ) is also DENIED as moot.<br><br>(no image attached) (Copies have been distributed pursuant to the NEF - JLB) (Entered: 06/28/2023) |
| 07/17/2023 | 154 | NOTICE of Appearance by attorney Brandon D Kartchner on behalf of Defendant US Auto Credit Purchase. (Kartchner, Brandon) (Entered: 07/17/2023) |
| 07/17/2023 | 155 | MOTION to Extend Time (First Request) *to Respond* re 12 Amended Complaint, by Defendant US Auto Credit Purchase. Responses due by 7/31/2023. (Kartchner, Brandon) (answer) (Entered: 07/17/2023) |
| 07/18/2023 | 156 | MOTION to Extend Time (First Request) re 8 Complaint by Defendant I.Q. Data International Inc. Responses due by 8/1/2023. (Flynn, Sean) (answer) (Entered: 07/18/2023) |
| 07/18/2023 | 157 | MOTION to Extend Time (First Request) re 12 Amended Complaint, by Defendant Trans Union LLC. Responses due by 8/1/2023. (Bonds, Kurt) (answer) (Entered: 07/18/2023) |
| 07/20/2023 | 158 | CERTIFICATE of Interested Parties by US Auto Credit Purchase that identifies all parties that have an interest in the outcome of this case. Corporate Parent Scott-McRae Automotive Group, LLLP, Other Affiliate Auto Credit Purchasing Center, LLC for US Auto Credit Purchase added.. (Kartchner, Brandon) (Entered: 07/20/2023) |
| 07/31/2023 | 159 | OPPOSITION TO 155 , 156 , and 157 DEFENDANTS MOTION FOR AN ENLARGEMENT OF TIME by Plaintiff Blanton Banks, II. Replies due by 8/7/2023. (CAH) Modified on 8/1/2023 (CAH). (Entered: 08/01/2023) |
| 08/07/2023 | 160 | STIPULATION *[order] for Substitution of Counsel* by Defendant Trans Union LLC. (Brown, Sarai) (other) (attorney) (Entered: 08/07/2023) |
| 08/07/2023 | 161 | REPLY to Response to 156 Motion to Extend/Shorten Time by Defendant I.Q. Data International Inc. (Flynn, Sean) (Entered: 08/07/2023) |
| 08/08/2023 | 162 | MOTION to Dismiss by Defendant US Auto Credit Purchase. Responses due by 8/22/2023. (Attachments: # 1 Exhibit A)(Kartchner, Brandon) (Entered: 08/08/2023) |
| 08/08/2023 | 163 | MOTION to Dismiss by Defendant I.Q. Data International Inc. Responses due by 8/22/2023. (Flynn, Sean) (Entered: 08/08/2023) |
| 08/08/2023 | 164 | ANSWER to 12 Amended Complaint, filed by Trans Union LLC.(Brown, Sarai) (Entered: 08/08/2023) |
| 08/15/2023 | 165 | ORDER Granting 160 Stipulation for Substitution of Counsel. Attorney Sarai L. Thornton substituted as counsel in the place of Attorney Kurt R. Bonds. Attorney Kurt R. Bonds terminated. Signed by Judge Cristina D. Silva on 8/15/2023. (Copies have been distributed pursuant to the NEF - RGDG) (Entered: 08/16/2023) |
| 08/21/2023 | 166 | ORDER Granting 155 Motion to Extend Time, Granting 156 Motion to Extend Time, Granting 157 Motion to Extend Time.<br><br>IT IS FURTHER ORDERED, sua sponte, that by Tuesday, September 5, 2023, plaintiff must correct the deficient signature on his amended complaint (ECF No. 12 ) by filing a CORRECTIVE NOTICE with a duplicate amended complaint that contains his signature, without the disclaimer authorized representative in his signature line.<br><br>Corrective Notice by 9/5/2023. Signed by Magistrate Judge Cam Ferenbach on 8/21/2023. (Copies have been distributed pursuant to the NEF - RGDG) (Entered: 08/22/2023) |

| | | |
|---|---|---|
| 08/22/2023 | 167 | RESPONSE to 163 Motion to Dismiss by Plaintiff Blanton Banks, II. Replies due by 8/29/2023. (CAH) (Entered: 08/24/2023) |
| 08/22/2023 | 168 | RESPONSE to 162 Motion to Dismiss by Plaintiff Blanton Banks, II. Replies due by 8/29/2023. (CAH) (Entered: 08/24/2023) |
| 08/22/2023 | 169 | MOTION to Strike 164 Defendant's Answer to Amended Complaint by Plaintiff Blanton Banks, II. Responses due by 9/5/2023. (CAH) (answer) (Entered: 08/24/2023) |
| 08/24/2023 | 170 | MOTION for Entry of Clerk's Default by Plaintiff Blanton Banks, II. Responses due by 9/7/2023. (Attachments: # 1 Affidavit)(CAH) (Entered: 08/24/2023) |
| 08/28/2023 | 171 | RESPONSE to 170 Motion for Entry of Clerks Default by Defendant US Auto Credit Purchase. Replies due by 9/4/2023. (Kartchner, Brandon) (Entered: 08/28/2023) |
| 08/29/2023 | 172 | REPLY to 168 Response to 162 Motion to Dismiss by Defendant US Auto Credit Purchase. (Kartchner, Brandon) Modified - Linked to 168 Response on 8/29/2023 (KF). (Entered: 08/29/2023) |
| 08/29/2023 | 173 | REPLY to 167 Response to 163 Motion to Dismiss by Defendant I.Q. Data International Inc. (Flynn, Sean) Modified - Linked to 167 Response on 8/30/2023 (KF). (Entered: 08/29/2023) |
| 08/31/2023 | 174 | NOTICE of Appearance by attorney Armand Fried on behalf of Defendant Aargon Agency Inc.. (Fried, Armand) (Entered: 08/31/2023) |
| 08/31/2023 | 175 | RESPONSE to 170 Motion for Entry of Clerks Default by Defendant Aargon Agency Inc.. (Fried, Armand) (Entered: 08/31/2023) |
| 09/04/2023 | 177 | NOTICE OF ERRATA TO DEFENDANTS NOTICE OF STAY by Blanton Banks, II. (CAH) (Entered: 09/06/2023) |
| 09/05/2023 | 176 | First MOTION to Extend Time (First Request) *to Respond to Plaintiff's Motion to Strike and Motion for Entry of Clerk's Default* re 169 Motion to Strike by Defendant Trans Union LLC. Responses due by 9/19/2023. (Brown, Sarai) (nondispositive) (Entered: 09/05/2023) |
| 09/06/2023 | 178 | NOTICE OF ERRATA TO PLAINTIFFS CORRECTIVE NOTICE by Blanton Banks, II. (CAH) (Entered: 09/07/2023) |
| 09/06/2023 | 179 | CORRECTIVE NOTICE TO AMENDED COMPLAINT by Blanton Banks, II. (CAH) (Entered: 09/07/2023) |
| 09/06/2023 | 180 | PLAINTIFFS REPLY IN SUPPORT OF PLAINTIFFS MOTION FOR ENTRY OF CLERKS DEFAULT by Plaintiff Blanton Banks, II. (CAH) (Entered: 09/07/2023) |
| 09/07/2023 | 181 | RESPONSE to 170 Motion for Entry of Clerks Default by Defendant I.Q. Data International Inc. (Flynn, Sean) (Entered: 09/07/2023) |
| 09/13/2023 | 182 | Plaintiff's RESPONSE/OPPOSITION to Defendant's 176 Motion to Extend/Shorten Time by Plaintiff Blanton Banks, II. Replies due by 9/20/2023. (CT) (Entered: 09/13/2023) |
| 09/19/2023 | 183 | RESPONSE to 169 Motion to Strike by Defendant Trans Union LLC. Replies due by 9/26/2023. (Brown, Sarai) (Entered: 09/19/2023) |
| 09/19/2023 | 184 | RESPONSE to 170 Motion for Entry of Clerks Default by Defendant Trans Union LLC. (Brown, Sarai) (Entered: 09/19/2023) |

| 09/20/2023 | 185 | First UNOPPOSED MOTION FOR CHANGE OF ATTORNEY DESIGNATION by Defendant Trans Union LLC. Responses due by 10/4/2023. (Brown, Sarai) (attorney) (Entered: 09/20/2023) |
|---|---|---|
| 09/26/2023 | 186 | Plaintiff's REPLY to Response to 169 Motion to Strike by Plaintiff Blanton Banks, II. (CT) (Entered: 09/27/2023) |
| 10/13/2023 | 187 | ORDER granting 185 Unopposed Motion FOR CHANGE OF ATTORNEY DESIGNATION. Rachael Swernofsky and Jibril Greene are no longer associated with this case. Signed by Judge Cristina D. Silva on 10/13/2023.(Copies have been distributed pursuant to the NEF - CAH) (Entered: 10/13/2023) |
| 10/16/2023 | 188 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Cristina D. Silva on 10/16/2023.<br><br>Defendant Trans Union LLC moves for an extension of time to respond to plaintiff Blanton Banks' motion to strike (ECF No. 169 ) and motion for entry of clerk's default (ECF No. 170 ). Trans Union requests a two-week extension, which would move the response deadlines to September 19, 2023, and September 21, 2023, respectively. ECF No. 176 at 3. Trans Union filed its responses to the motion to strike and motion for entry of clerk's default on September 19, 2023. ECF Nos. 183 , 184 . Accordingly, Trans Union's motion requesting an extension of time (ECF No. 176 ) is GRANTED, *nunc pro tunc*, to the date of the request. The deadline for Trans Union to respond to the motion to strike is extended to September 19, 2023; and the deadline for Trans Union to respond to the motion for entry of clerk's default is extended to September 21, 2023.<br><br>(no image attached)(Copies have been distributed pursuant to the NEF - JLB) (Entered: 10/16/2023) |
| 10/25/2023 | 189 | MOTION/VERIFIED PETITION for Permission to Practice Pro Hac Vice by Jennifer Wade and DESIGNATION of Local Counsel Sarai Thornton (Filing fee $ 250 receipt number BNVDC-7471745) by Defendant Trans Union LLC. (Brown, Sarai) (Entered: 10/25/2023) |
| 10/25/2023 | 190 | NOTICE of Appearance by attorney Bernadette A. Rigo on behalf of Defendant Trans Union LLC. (Rigo, Bernadette) (Entered: 10/25/2023) |
| 10/25/2023 | 191 | ORDER granting 189 Verified Petition for Permission to Practice Pro Hac Vice as to Attorney Jennifer Wade for Trans Union LLC and approving Designation of Local Counsel Sarai L. Thornton. Signed by Judge Cristina D. Silva on 10/25/2023.<br>Any Attorney not yet registered with the Court's e-filng system shall register on the PACER website www.pacer.gov<br>(Copies have been distributed pursuant to the NEF - CAH) (Entered: 10/26/2023) |
| 01/12/2024 | 192 | CLERK'S NOTICE that due to the retirement of Magistrate Judge Cam Ferenbach, this case is randomly reassigned to Magistrate Judge Elayna J. Youchah for all further proceedings. All further documents must bear the correct case number **2:21-cv-01580-CDS-EJY. (no image attached)** (AF) (Entered: 01/12/2024) |
| 01/31/2024 | 193 | MOTION for a Status Report regarding the Pleadings 119 Motion for Summary Judgment, 162 Motion to Dismiss, 170 Motion for Entry of Clerks Default, and 163 Motion to Dismiss by Plaintiff Blanton Banks, II. Responses due by 2/14/2024. (CAH) (Entered: 01/31/2024) |
| 02/01/2024 | 194 | ORDER<br><br>Granting 119 Motion for Summary Judgment. The Clerk of Court is kindly instructed to enter judgment accordingly. |

| | | |
|---|---|---|
| | | Granting with prejudice and without leave to amend 162 Motion to Dismiss. The Clerk of Court is kindly instructed to enter judgment accordingly.<br><br>Granting 163 Motion to Dismiss. The claims against I.Q. Data are dismissed without prejudice and with leave to amend.<br><br>Granting in part and Denying in part 169 Motion to Strike. Banks' request to strike the TransUnion's Answer is denied but the request to strike the affirmative answers is granted. TransUnion's affirmative defenses are dismissed without prejudice and with leave to amend.<br><br>Denying 170 Motion for Entry of Clerks Default.<br><br>Denying as moot 193 Motion for Status Report.<br><br>IT IS FURTHER ORDERED that, pursuant to Local Rule 16-5, this matter is referred to the magistrate judge for a settlement conference.<br><br>Signed by Judge Cristina D. Silva on 2/1/2024. (Copies have been distributed pursuant to the NEF - RJDG) (Entered: 02/02/2024) |
| 02/02/2024 | 195 | JUDGMENT in favor of I.C. System Inc against Blanton Banks, II. Signed by Clerk of Court Debra K. Kempi on 2/2/2024. (Copies have been distributed pursuant to the NEF - RJDG) (Entered: 02/02/2024) |
| 02/02/2024 | 196 | JUDGMENT in favor of US Auto Credit Purchase against Blanton Banks, II. Signed by Clerk of Court Debra K. Kempi on 2/2/2024. (Copies have been distributed pursuant to the NEF - RJDG) (Entered: 02/02/2024) |
| 02/06/2024 | 197 | ORDER setting Settlement Conference. Settlement Conference set for 4/30/2024 at 09:00 AM in Room 3005 before Magistrate Judge Elayna J. Youchah. Signed by Magistrate Judge Elayna J. Youchah on 2/6/2024. (Copies have been distributed pursuant to the NEF - ALZ) (Entered: 02/07/2024) |
| 02/22/2024 | 198 | AMENDED ANSWER to 102 Complaint, filed by Trans Union LLC.(Wade, Jennifer) (Entered: 02/22/2024) |
| 03/19/2024 | 199 | MOTION/NOTICE *Defendant Trans Union LLC's Notice Of Disassociation Of Counsel* by Trans Union LLC. (Brown, Sarai) Modified on 3/20/2024 (WJ). (Entered: 03/19/2024) |
| 03/20/2024 | 200 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Elayna J. Youchah on 3/20/2024. By Judicial Assistant: E. Santiago.<br><br>Before the Court is Defendant Trans Union LLC's Notice of Disassociation of Counsel. ECF No. 199 . Counsel for Defendant states Bernadette Rigo has left the firm Skane Mills LLP. Defendant will continue to be represented by Sarai L. Thornton of Skane Mills LLP. Thus, the Notice of Disassociation of Counsel is not to withdraw, but to remove Ms. Rigo from the electronic service system as she is no longer with the firm retained as Defendant Trans Union's counsel.<br><br>Accordingly, IT IS HEREBY ORDERED that the Notice of Disassociation of Counsel (ECF No. 199 ) is GRANTED. The Clerk of Court must remove Bernadette Rigo's name from CM/ECF and the docket so that she no longer receives electronic service of materials filed in this case. |

| | | |
|---|---|---|
| | | **(no image attached)** (Copies have been distributed pursuant to the NEF - ES) (Entered: 03/20/2024) |
| 03/22/2024 | 201 | **MOTION** ~~NOTICE~~ *of Petition of Defendant Trans Union LLC to Unseal Exhibits 1 through 10 of Plaintiff's First Amended Complaint Pursuant to Local Rule 1A 10-5(c) and (d)* by Trans Union LLC re 102 Complaint,. (Wade, Jennifer) Modified docket event on 3/25/2024 (KMB). (Entered: 03/22/2024) |
| 03/25/2024 | 202 | STATUS REPORT *regarding Dismissal* by Defendant I.Q. Data International Inc. (Flynn, Sean) (Entered: 03/25/2024) |
| 04/02/2024 | 203 | RESPONSE to 201 Motion to Unseal Exhibits 1 through 10 by Plaintiff Blanton Banks, II. Replies due by 4/9/2024. (CAH) (Entered: 04/03/2024) |
| 04/02/2024 | 204 | RESPONSE to 202 Status Report by Plaintiff Blanton Banks, II. (CAH) (Entered: 04/03/2024) |
| 04/04/2024 | 205 | REPLY to 203 Response to 201 Motion by Defendant Trans Union LLC. (Wade, Jennifer) Modified - Linked to 201 Motion on 4/4/2024 (KMB). (Entered: 04/04/2024) |
| 04/19/2024 | 206 | MOTION /Request to be Excused from Appearance at Settlement Conference by Defendant I.Q. Data International Inc. Responses due by 5/3/2024. (Flynn, Sean) (misc) (referral) (Entered: 04/19/2024) |
| 04/22/2024 | 207 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Elayna J. Youchah on 4/22/2024. By Judicial Assistant: E. Santiago.

IT IS HEREBY ORDERED that the settlement conference currently scheduled for April 30, 2024 is vacated and is rescheduled to **July 18, 2024**. The parties must report to the chambers of the undersigned United States Magistrate Judge at **9:00 a.m.**

IT IS FURTHER ORDERED that the confidential settlement briefs shall be due in chambers on **July 11, 2024**. Delivery **must** be made electronically to **Emily_Santiago@nvd.uscourts.gov by 3:00 p.m.** Except as stated herein, the prior terms of the Order (ECF No. 197 ) issued on February 6, 2024 remain in full force and effect.

IT IS FURTHER ORDERED that Defendant IQ Data International's Request to be Excused from Appearing at the Settlement Conference (ECF No. 206 ) is DENIED as moot.

**(no image attached)** (Copies have been distributed pursuant to the NEF - ES) (Entered: 04/22/2024) |
| 04/22/2024 | 208 | ORDER. Accordingly, IT IS HEREBY ORDERED that Trans Union LLCs Motion to Unseal Exhibits 1 through 10 of Plaintiffs First Amended Complaint ECF No. 201 is DENIED. IT IS FURTHER ORDERED that Exhibits 1 through 13 attached to ECF No. 102 must be immediately sealed by the Clerk of Court. IT IS FURTHER ORDERED that the Clerk of Court must email a copy of Exhibits 1 through 13 to counsel for Defendants Trans Union LLC and I.Q. Data International Inc. only. All other Defendants have been dismissed. Signed by Magistrate Judge Elayna J. Youchah on 4/22/2024. (Copies have been distributed pursuant to the NEF cc Emailed to Def. Counsel for I.Q. and TransUnion - CAH) (Entered: 04/22/2024) |
| 04/25/2024 | 209 | MOTION to Alter, Amend or Correct 208 Order on Motion by Plaintiff Blanton Banks, II. Responses due by 5/9/2024. (CAH) (Entered: 04/26/2024) |

| 04/26/2024 | 210 | ORDER granting 209 Motion to Amend/Correct. IT IS FURTHER ORDERED that the Clerk of Court must email a copy of Exhibits 1 through 13 attached to ECF No. 102 to counsel for Defendant Aargon Agency Inc. as this entity remains a party in this action. IT IS FURTHER ORDERED that the Clerk of Court must correct the docket to reflect that Defendant Aargon Agency Inc. is not a terminated party in this case. Signed by Magistrate Judge Elayna J. Youchah on 4/26/2024. (Copies have been distributed pursuant to the NEF cc Def Counsel - CAH) (Entered: 04/29/2024) |
| 05/09/2024 | 211 | RESPONSE to 209 Motion to Alter, Amend or Correct by Defendant Aargon Agency Inc.. Replies due by 5/16/2024. (Fried, Armand) Modified - linked to 209 Motion on 5/10/2024 (KMB). (Entered: 05/09/2024) |
| 05/09/2024 | 212 | ANSWER to 102 Complaint, filed by Aargon Agency Inc..(Fried, Armand) (Entered: 05/09/2024) |
| 05/16/2024 | 213 | REPLY to 211 Response to 209 Motion to Alter, Amend or Correct by Plaintiff Blanton Banks, II. (CAH) (Entered: 05/16/2024) |
| 05/28/2024 | 214 | MOTION for Judgment *on the Pleadings and Memorandum of Points and Authorities in Support* by Defendant Trans Union LLC. Responses due by 6/11/2024. (Wade, Jennifer) (Entered: 05/28/2024) |
| 05/29/2024 | 215 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Cristina D. Silva on 5/29/2024. Regarding the Requirements of *Klingele v. Eikenberry* and *Rand v. Rowland* as to 214 Motion for Judgment. Opposition due 14 days from the date of this Minute Order, and reply due seven 7 days after the filing of the opposition. (Copies have been distributed pursuant to the NEF - CAH) (Entered: 05/29/2024) |
| 05/30/2024 | 216 | MOTION to Strike DEFENDANTS ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS AMENDED COMPLAINT by Plaintiff Blanton Banks, II. Responses due by 6/13/2024. (CAH) (Entered: 05/30/2024) |
| 06/11/2024 | 217 | RESPONSE to 214 Motion for Judgment by Plaintiff Blanton Banks, II. Replies due by 6/18/2024. (CAH) (Entered: 06/11/2024) |
| 06/13/2024 | 218 | RESPONSE to 216 Motion to Strike by Defendant Aargon Agency Inc.. Replies due by 6/20/2024. (Fried, Armand) (Entered: 06/13/2024) |
| 06/18/2024 | 219 | REPLY to Response to 214 Motion for Judgment by Defendant Trans Union LLC. (Wade, Jennifer) (Entered: 06/18/2024) |
| 06/21/2024 | 220 | REPLY to Response to 216 Motion to Strike by Plaintiff Blanton Banks, II. (CAH) (Entered: 06/21/2024) |
| 06/25/2024 | 221 | NOTICE of Errata to Plaintiff's Corrective Notice by Blanton Banks, II. (CAH) (Entered: 06/25/2024) |
| 07/02/2024 | 222 | ORDER Plaintiff's Motion to Strike Defendant's Answer and Affirmative Defenses to Plaintiff's Amended Complaint is GRANTED in part and DENIED in part.<br>IT IS FURTHER ORDERED that Plaintiffs Motion to Strike Defendant Aagron's Answer is DENIED.<br>IT IS FURTHER ORDERED that Plaintiffs Motion to Strike Defendant Aargon's ten affirmative defenses is DENIED as to Aargon's Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, and Tenth Affirmative Defenses.<br>IT IS FURTHER ORDERED that Plaintiffs Motion to Strike Defendant Aargon's first ten Affirmative Defense is GRANTED in part as stated in the body of this Order.<br>IT IS FURTHER ORDERED that Plaintiffs Motion to Strike Defendant Aargon's Sixth Affirmative Defenses is GRANTED. Signed by Magistrate Judge Elayna J. Youchah on |

| | | 7/2/2024. (Copies have been distributed pursuant to the NEF - CT) Modified on 7/3/2024 to correct docket text. NEF regenerated. (CT). (Entered: 07/02/2024) |
|---|---|---|
| 07/03/2024 | 223 | MOTION /Request to be Excused from Appearance at Settlement Conference by Defendant I.Q. Data International Inc. Responses due by 7/17/2024. (Flynn, Sean) (misc) (referral) (Entered: 07/03/2024) |
| 07/05/2024 | 224 | MOTION To be Excused from Settlement Conference, or in the Alternative, Continue by Defendant Trans Union LLC. Responses due by 7/19/2024. (Wade, Jennifer) (misc) (settlement) (Entered: 07/05/2024) |
| 07/08/2024 | 225 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Elayna J. Youchah on 7/8/2024. By Judicial Assistant: E. Santiago.<br><br>Pending before the Court are Defendants IQ Data International, Inc. and Trans Union LLC's Requests to be Excused from Appearance at Settlement Conference (ECF Nos. 223 , 224 ). The Court understands the positions taken by IQ Data and Trans Union LLC; however, these entities remain parties to this case. Further, if IQ Data seeks to be dismissed, it must do so through a motion submitted to the district judge. None is presently pending. In sum, to conduct a settlement that does not include all parties is inefficient for the Court.<br><br>Given some of the parties that remain in this case are out of state, the Court will allow **all parties and their counsel** to appear on **July 18, 2024 at 9 a.m. via the Zoom video conference platform**. This means that Plaintiff and lead counsel for the remaining Defendants **must** email Elvia Garcia, Courtroom Deputy for the undersigned Magistrate Judge no later than **12 noon on July 16, 2024, at Elvia_Garcia@nvd.uscourts.gov**, and provide the email addresses of themselves and their respective participants. The courtroom deputy will email all participants with the Zoom link.<br><br>IT IS FURTHER ORDERED that the confidential settlement briefs **must** be **delivered by email** no later than **3 p.m. Pacific Time July 11, 2024 to Emily_Santiago@nvd.uscourts.gov**. Except as stated herein, the prior terms of the Order (ECF No. 197 ) issued on February 6, 2024 remain in full force and effect.<br><br>IT IS FURTHER ORDERED that IQ Data International, Inc.'s Request to be Excused from Appearance at Settlement Conference (ECF No. 223 ) is DENIED.<br><br>IT IS FURTHER ORDERED that Trans Union LLC's Motion to be Excused from the Settlement Conference (ECF No. 224 ) is DENIED.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - ES) (Entered: 07/08/2024) |
| 07/08/2024 | 226 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Cristina D. Silva on 7/8/2024.<br><br>On February 1, 2024, the court granted defendant I.Q. Data's motion to dismiss (ECF No. 163 ) and dismissed the claims against I.Q. Data without prejudice and with leave to amend. ECF No. 194 . Plaintiff Blanton Banks, II had until February 22, 2024 to file an amended complaint, but did not. ECF No. 202 . Consequently, I dismiss I.Q. Data from this action and excuse its appearance at the July 18, 2024 settlement conference. The Clerk of Court is kindly instructed enter judgment accordingly and to terminate I.Q. Data.<br><br>(no image attached)(Copies have been distributed pursuant to the NEF - JLB) (Entered: 07/08/2024) |

| 07/08/2024 | 227 | JUDGMENT in favor of I.Q. Data International Inc against Blanton Banks, II. Signed by Clerk of Court Debra K. Kempi on 7/8/2024. (Copies have been distributed pursuant to the NEF - CAH) (Entered: 07/08/2024) |
|---|---|---|
| 07/09/2024 | 228 | AMENDED MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Elayna J. Youchah on 7/09/2024. **This Minute Order amends the July 8, 2024 Minute Order entered at ECF No. 225** .<br><br>On July 8, 2024, the Court ordered all remaining parties, including IQ Data, to appear at a settlement conference set for **July 18, 2024**. Subsequent to that Minute Order, the Court dismissed IQ Data from this case and entered judgment accordingly. ECF Nos. 226 , 227 . Thus, Plaintiff, Trans Union, and Aargon Agency, LLC are the only parties that remain in this action.<br><br>Accordingly, in an effort to bring this matter to a full and final resolution, Plaintiff, Trans Union, and Aargon Agency LLC **must** appear at the settlement conference on **July 18, 2024 at 9 a.m. via the Zoom video conference platform**.<br><br>IT IS HEREBY ORDERED that Plaintiff and lead counsel for Trans Union and Aargon **must** email Elvia Garcia, Courtroom Deputy for the undersigned Magistrate Judge no later than **12 noon on July 16, 2024, at Elvia_Garcia@nvd.uscourts.gov**, and provide the email addresses for themselves and their respective participants. The courtroom deputy will email all participants with the Zoom link.<br><br>IT IS FURTHER ORDERED that the confidential settlement briefs **must be delivered by email** no later than **3 p.m. Pacific Time July 11, 2024 to Emily_Santiago@nvd.uscourts.gov**. Except as stated herein, the prior terms of the Order (ECF No. 197 ) issued on February 6, 2024 remain in full force and effect.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - ES) (Entered: 07/09/2024) |
| 07/18/2024 | 229 | MINUTES OF PROCEEDINGS - Zoom Settlement Conference held on 7/18/2024 before Magistrate Judge Elayna J. Youchah. Crtrm Administrator: *E. Garcia*; Pla Counsel: *Blanton Banks, Pro Se*; Def Counsel: *Armand Fried, Duane Christy, Melaine Kemp and Jennifer Saltzman for Aargon Agency Inc.; Jennifer Wade, Charlotte Long and Sarai Thornton for Trans Union LLC*; Time of Hearing: *9:00a.m. - 10:37a.m.*; Courtroom: *3D*;<br><br>All parties appeared via Zoom. A settlement conference was conducted before Magistrate Judge Elayna J. Youchah commencing at 9:00 a.m. on July 18, 2024. Discussions concluded at approximately 10:37 a.m. A settlement was reached with Aargon Agency Inc., the terms of which are confidential.<br><br>Parties are unable to reach a settlement at this time with Trans Union LLC. Therefore, the case of Trans Union LLC is returned to the normal litigation track.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - EMG) (Entered: 07/18/2024) |
| 07/24/2024 | 230 | Joint STIPULATION FOR DISMISSAL by Defendant Aargon Agency Inc.. (Fried, Armand) (dismissal) (Entered: 07/24/2024) |
| 07/24/2024 | 231 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Cristina D. Silva on 7/26/2024. |

| | | |
|---|---|---|
| | | Plaintiff Blanton Banks, II and defendant Aargon Agency, Inc. jointly stipulate to dismiss Aargon from this action under Rule 41 of the Federal Rules of Civil Procedure, requesting dismissal with prejudice. ECF No. 230 . Case law concerning stipulated dismissals under Rule 41(a)(1)(A)(ii) is clear that the entry of such a stipulation of dismissal is effective automatically and does not require judicial approval. *Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1077 (9th Cir. 1999). Accordingly, defendant Aargon Agency, Inc. is terminated.<br><br>(no image attached) (Copies have been distributed pursuant to the NEF - JLB) (Entered: 07/26/2024) |
| 11/15/2024 | 232 | ORDER. IT IS THEREFORE ORDERED that Trans Unions motion for judgment on the pleadings ECF No. 214 is GRANTED and Bankss claims against Trans Union are dismissed with prejudice. The Clerk of Court is kindly instructed to terminate Trans Union as a defendant. Signed by Judge Cristina D. Silva on 11/15/2024.(Copies have been distributed pursuant to the NEF - CAH) (Entered: 11/18/2024) |
| 12/10/2024 | 233 | NOTICE OF APPEAL by Plaintiff Blanton Banks, II. Filing fee $ 605. E-mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit.<br><br>Designation of Transcripts and Transcript Order forms and instructions for appeal can be found on the Court's website at www.nvd.uscourts.gov.<br><br>(CAH) (Entered: 12/11/2024) |
| 12/17/2024 | 234 | USCA, Ninth Circuit Appellate Case Number **24-7602** assigned to 233 Notice of Appeal. (ALZ) (Entered: 12/19/2024) |
| 12/17/2024 | 235 | USCA ORDER for Time Schedule as to 233 Notice of Appeal, filed by Blanton Banks, II. **USCA Case Number 24-7602**. (Copies have been distributed pursuant to the NEF - ALZ) (Entered: 12/19/2024) |
| 12/18/2024 | 236 | REFERRAL NOTICE of USCA, Ninth Circuit, as to 233 Notice of Appeal, filed by Blanton Banks, II. This matter is referred to USDC for the limited purpose of determining whether IFP status should continue for this appeal or whether the appeal is frivolous or taken in bad faith. If USDC elects to revoke IFP status, the USDC is requested to notify the USCA and the parties of such determination within 21 days of the date of this referral. USCA Case No. **24-7602**. (Copies have been distributed pursuant to the NEF - ALZ) (Entered: 12/19/2024) |
| 12/23/2024 | 237 | TRANSCRIPT DESIGNATION by Plaintiff Blanton Banks, II re 233 Notice of Appeal, 80 Minute Order, 125 Status Conference, 143 Minute Order. (CAH) (Entered: 12/27/2024) |
| 12/23/2024 | 238 | MOTION for Production of Transcripts at Government Expense by Plaintiff Blanton Banks, II. Responses due by 1/6/2025. (CAH) (Entered: 12/27/2024) |
| 01/06/2025 | 239 | ORDER re 236 Referral Notice of USCA. District Court's Response to Ninth Circuit's Referral Notice. **See Order for additional information.** Signed by Judge Cristina D. Silva on 1/6/2025. (Copies have been distributed pursuant to the NEF. CC: Ninth Circuit Court of Appeals. - RJDG) (Entered: 01/07/2025) |
| 01/08/2025 | 240 | TRANSCRIPT of Proceedings, 80 Order on Motion to Strike, Order on Motion to Dismiss, Order on Motion for Judgment, Order on Motion for Protective Order, Order on Motion for Entry of Clerks Default, Motion Hearing, held on 06/28/2022, before Judge Cristina D. Silva. Court Reporter/Transcriber: Samantha McNett, Samantha_McNett@nvd.uscourts.gov. Recording start and end times: 9:38 a.m. - 11:06 a.m.. Any Redaction Request is due by 1/29/2025. Release of the Transcript Restriction is |

| | | |
|---|---|---|
| | | set for 4/8/2025. Before release date, the transcript may be viewed at the court public terminal or purchased through the court reporter. After release date, it may be obtained through the court reporter or PACER.<br><br>**THIS TRANSCRIPT MUST NOT BE ATTACHED AS AN EXHIBIT OR MADE PART OF AN APPENDIX. See Local Rule IA 10-3.(b).**<br>(SNM) (Entered: 01/08/2025) |
| 01/08/2025 | 241 | TRANSCRIPT of Proceedings, 143 Order on Motion, Motion Hearing, held on 04/26/2023, before Cam Ferenbach. Court Reporter/Transcriber: Samantha McNett, Samantha_McNett@nvd.uscourts.gov. Recording start and end times: 11:16 a.m. - 11:43 a.m.. Any Redaction Request is due by 1/29/2025. Release of the Transcript Restriction is set for 4/8/2025. Before release date, the transcript may be viewed at the court public terminal or purchased through the court reporter. After release date, it may be obtained through the court reporter or PACER.<br><br>**THIS TRANSCRIPT MUST NOT BE ATTACHED AS AN EXHIBIT OR MADE PART OF AN APPENDIX. See Local Rule IA 10-3.(b).**<br>(SNM) (Entered: 01/08/2025) |
| 01/10/2025 | 242 | ORDER granting 238 Motion for Production of Transcripts at government expense. Signed by Judge Cristina D. Silva on 1/10/2025.(Copies have been distributed pursuant to the NEF - DLS) (Entered: 01/13/2025) |
| 01/14/2025 | 244 | Mail Returned as Undeliverable re 239 Order, addressed to Benjamin Bradwell Gordon. Reason: "Attempted - Not Known. Gone." (RJDG) (Entered: 01/16/2025) |
| 01/15/2025 | 243 | TRANSCRIPT of Proceedings, 125 Status Conference, held on 02/28/2023, before Judge Cristina D. Silva. Court Reporter/Transcriber: Samantha McNett, Samantha_McNett@nvd.uscourts.gov. Recording start and end times: 11:47 a.m. - 11:53 a.m.. Any Redaction Request is due by 2/5/2025. Release of the Transcript Restriction is set for 4/15/2025. Before release date, the transcript may be viewed at the court public terminal or purchased through the court reporter. After release date, it may be obtained through the court reporter or PACER.<br><br>**THIS TRANSCRIPT MUST NOT BE ATTACHED AS AN EXHIBIT OR MADE PART OF AN APPENDIX. See Local Rule IA 10-3.(b).**<br>(SNM) (Entered: 01/15/2025) |
| 01/16/2025 | 245 | Order Closing Case - This matter is currently on appeal with the United States Court of Appeals for the Ninth Circuit. ECF No. 235. However, because all of the underlying claims have been dismissed, the Clerk of Court is instructed to close this case. Signed by Judge Cristina D. Silva on 1/16/2025. (Copies have been distributed pursuant to the NEF - DLS) (Entered: 01/16/2025) |
| 01/16/2025 | 246 | USCA ORDER for Time Schedule as to 233 Notice of Appeal, filed by Blanton Banks, II. **USCA Case Number 24-7602.** (Copies have been distributed pursuant to the NEF - ALZ) (Entered: 01/17/2025) |
| 01/16/2025 | 247 | ORDER of USCA, Ninth Circuit, as to 233 Notice of Appeal, filed by Blanton Banks, II. **USCA Case Number 24-7602.** (Copies have been distributed pursuant to the NEF - ALZ) (Entered: 01/17/2025) |
| 01/27/2025 | 248 | Mail Returned as Undeliverable re 245 Order Closing Case addressed to Benjamin Bradwell Gordon. (CAH) (Entered: 01/27/2025) |
| 01/29/2025 | 249 | Mail Returned as Undeliverable re 242 Order on Motion addressed to Benjamin Bradwell Gordon. (CAH) (Entered: 01/29/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/05/2025 12:00:30 | | | |
| **PACER Login:** | smperlegos | **Client Code:** | IQDBR-1276934 |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cv-01580-CDS-EJY |
| **Billable Pages:** | 24 | **Cost:** | 2.40 |